UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

```
FILED

OCT 1 7 2007

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY              DEPUTY
```

EXCEPTIONAL INNOVATIONS, LLC,

                         Plaintiff,

vs.

                                 Case No. 2:07CV-724
                                 District Judge Sargus
                                 Magistrate Judge Abel

KONTRON AMERICA, INC.,

                         Defendant.        '07 CV 2041      LAB WMc

## OPINION AND ORDER

    Plaintiff Exceptional Innovations, Inc. (Plaintiff or Exceptional) originally

filed this action on July 7, 2007, in the Court of Common Pleas of Delaware County,

Ohio, (Case No. 07-CVH-06-0765) against Defendant Kontron America, Inc. (De-

fendant or Kontron) seeking declaratory judgment that Kontron had "materially

breached" a certain contract with Exceptional for the purchase of goods and that,

consequently, Exceptional was "excused from any further performance or liability to

Kontron" thereunder.  Doc. 2-2, p. 7.  The Complaint also sought attorney fees and

costs.  Ibid.  Copies of Exceptional's two Purchase Requests dated May 12, 2005,

allegedly accepted by Kontron to create the contracts in question, were attached to

the Complaint.  Id. at 4.

    On July 27, 2007, Defendant Kontron filed Notice of Removal of the case to

this court pursuant to the provisions of 29 U.S.C. §§ 1441, 1446, and 1332(a)(1), as-

serting that Plaintiff is an "Ohio limited liability company with its principle place of

business in Westerville, Ohio" while Defendant is a "Delaware corporation with its

principle place of business in Poway, California" and that the amount in contro-

versy exceeds $75,000. Doc. 2, pp. 1-2. Within a week, "[p]ursuant to 28 U.S.C.

§ 1404(a) and Rule 12(b)(3) of the Federal Rules of Civil Procedure" Defendant

then filed a Motion To Transfer Venue to the United States District Court for the

Southern District of California, based primarily on an alleged "forum selection

clause" in the contract in question. Doc. 6, p. 1.[1] The case is now before the Court

for consideration of that motion to transfer together with the supporting and op-

posing memoranda and related materials filed by the parties. Docs. 11, 14.

The Court first notes that Rule 12(b)(3) authorizes raising the defense of "im-

proper venue" by motion, but that Defendant nowhere suggests this Court lacks

jurisdiction or that the case should be dismissed. Further, as the party who pro-

cured its removal, Defendant could scarcely argue that it should now be remanded.

In any event, the alleged "forum selection clause" in this case does not approach the

specificity required to waive either parties' otherwise-available right to remove the

case here. See Regis Associates v. Rank Hotels (Management) Ltd., 894 F.2d 193,

195 (6th Cir. 1990) ("Although the right to remove can be waived, the case law

makes it clear that such waiver must be clear and unequivocal.")   Further, based

on the allegations of the Complaint and clearly applicable Supreme Court and Sixth

Circuit authority discussed below, it appears that only the Court's discretionary

§1404(a) authority to transfer the case to another district where it might have been

brought is involved here, and not Rule 12(b)(3).

---

1. On the same day, August 3rd, Defendant also filed its Answer and Counterclaim
to Plaintiff's Complaint. Doc. 7.

2

The "forum selection clause" upon which Kontron relies in arguing for the transfer it seeks appears as paragraph 19 of its general Terms and Conditions of Sales, allegedly incorporated in its Sales Quotes to Exceptional that became the sales agreements in question in this case. Affidavit of Anthony T. Hallett, Doc. 6-2, p. 3. That paragraph provides as follows:

> 19. **Governing Law and Venue.** This agreement shall be con-
> strued and enforced according to the laws of the State of California re-
> garding contracts made and wholly performed in California. Kontron
> and BUYER irrevocably submit to the jurisdiction of the state and/or
> federal courts in San Diego County, California for any action or pro-
> ceeding regarding this Agreement.

Doc. 6-2, (attmt, p. 11). For purposes of deciding the present motion to transfer, Exceptional does not dispute the applicability of this provision to the sales agree-ments in question. Doc. 11, p. 1, n.1.

In support of its motion, Kontron relies primarily on law set out in, or fol-lowing, two seminal opinions. In <u>Stewart Organization, Inc. v. Ricoh Corporation</u>, 487 U.S. 22 (1988), the Supreme Court states at 29-30:

> Section 1404(a) is intended to place discretion in the district
> court to adjudicate motions for transfer according to an "individ-
> ualized, case-by-case consideration of convenience and fairness." *Van
> Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945
> (1964). A motion to transfer under § 1404(a) thus calls on the district
> court to weigh in the balance a number of case-specific factors. The
> presence of a forum-selection clause such as the parties entered into in
> this case will be a significant factor that figures centrally in the dis-
> trict court's calculus. In its resolution of the § 1404(a) motion in this
> case, for example, the District Court will be called on to address such
> issues as the convenience of a Manhattan forum given the parties'
> expressed preference for that venue, and the fairness of transfer in
> light of the forum-selection clause and the parties' relative bargaining
> power. The flexible and individualized analysis Congress prescribed
> in § 1404(a) thus encompasses consideration of the parties' private ex-
> pression of their venue preferences.

3

In Kerobo v. Southeastern Clean Fuels, Corp., 285 F.3d 531 (6th Cir. 2002), the case was much like this one in that it involved a very similar forum-selection clause[2] and a complaint for, among others, breach of contract, filed in a state court other than the one selected in that clause, which case had then been removed on diversity grounds to federal court, and a motion filed for dismissal under Rule 12(b)(3) or for transfer pursuant to §1404(a).  Noting that the case was "in all material respects indistinguishable from *Ricoh*" (285 F.3d 533), the circuit court reversed the lower court's dismissal under Rule 12(b)(3) and remanded for a determination, consistent with Ricoh and its own opinion, of the "appropriate effect under federal law of the parties' forum-selection clause on the defendants' 28 U.S.C. §1404(a) motion." Id. at 539.

Plaintiff Exceptional's argument in opposition to the transfer is based primarily on its assertion that:

> The relevant clause [of the parties' agreement] is merely a permissive forum selection clause and is not a substantial factor in the analysis of whether to transfer the case.  The fact that a California court might *also* be *an* appropriate venue is irrelevant because Kontron's sole objection to *this* venue fails.

Doc. 11, p. 1 (emphasis in the original).  Plaintiff also argues that: "Kontron points to only one factor in support of its request for transfer, the permissive forum selection clause." Id. at 5.  The Court finds neither argument is entirely accurate or

---

2.  The licensing agreement in Kerobo provided: "This agreement shall be interpreted, construed, and governed by the laws of the State of California.  Jurisdiction for any action for breach, damages or default shall be within the County of Orange, State of California."  285 F.3d 532-33.

4

sufficiently supported by the individualized, case-specific factors present to per-

suade the Court's exercise of discretion in this case.

Plaintiff's argument that the "relevant clause . . . is merely a permissive

forum selection clause" is not fully supported by the facts. The meaning of what

Plaintiff terms the "relevant clause" is necessarily affected by the context in which

it appears, and that contract paragraph is entitled, in bold and underlined: "**Gov-**

**erning Law and Venue**," and the first of its two sentences is an unequivocal

choice of the "laws of the State of California regarding contracts made and wholly

performed in California" as the law to be applied in construing and enforcing the

agreement.[3] Thus, the pertinent paragraph is, first and foremost, a choice-of-law

provision, and as Defendant points out (Doc. 6, p. 11; Doc. 13, p. 2), the California

Code of Civil Procedure (as might be expected) apparently makes provision for such

proceedings as these only in the courts of California. See Cal. Code of Civ. Pro. §§

395 and 395.5.[4] In this context, then, the irrevocable submission of the parties to

"the jurisdiction of the state and/or federal courts in San Diego County, California"

found in the second sentence's so-called "relevant clause" amounts to a choice of

---

3. In view of this provision, it appears that even if the proceeding were to remain in
Ohio, this or any other court with jurisdiction would still be called upon to decide
the case in accordance with the law of the State of California. See Jarvis v. Ashland
Oil, Inc., 17 Ohio St.3d 189 (1985); Tele-Save Merchandising Co. v. Consumers Dis-
tributing Co., Ltd., 814 F.2d 1120 (6th Cir. 1987)

4. Section 395.5 provides: "A corporation or association may be sued in the county
where the contract is made or is to be performed, or where the obligation or liability
arises, or the breach occurs; or in the county where the principal place of business of
such corporation is situated, subject to the power of the court to change the place of
trial as in other cases."

particular forums within the State of California, the law of which has already been chosen to resolve disputes arising out of the agreement in question.

It has not been suggested that this contractual provision constitutes a waiver of Plaintiff's right under Ohio's Long-Arm Statute (Ohio Revised Code §2307.382) to initiate this proceeding in the Delaware County, Ohio, Court of Common Pleas; and, as noted above, the provision is also not sufficient to waive Defendant's right under federal law to remove the proceeding to this Court. But, neither of those jurisdictional circumstances determines resolution of the different and more limited venue question now presented by Defendant's motion to transfer the proceeding to another district in which it might also have been brought. As the parties' arguments suggest, answering that question requires the Court to consider whether, and if so how much, the contractual provisions present in the parties' agreement should influence the Court's discretionary ruling on the motion.

In the circumstances of this case, however, the the Court does not consider it necessary (as the parties' arguments also suggest) to resolve the question whether, as part of a purely California contract to be interpreted under California law, that provision is an exclusive, or merely a permissive, choice of a California forum.[5] As part of a commercial contract between business entities, in the absence of fraud or overreaching or a showing that enforcement would be unreasonable or unjust

---

5. The Court does not agree with Plaintiff's argument or its lower court authority suggesting that such a determination is required in order to properly decide, much less necessarily controls, the Court's exercise of discretion in deciding whether a transfer should be ordered under authority of §1404(a) in the particular circumstances of this case.

6

(and none of those is suggested to be present here), the clause is valid. See Pre-
ferred Capital, Inc. v. Associates in Urology, 453 F.3d 718, 721 (6th Cir. 2006).  The
parties appear of roughly equivalent bargaining power, and it cannot be argued
successfully that Plaintiff would effectively be denied its day in Court by transfer of
the case to a federal district court in California.  Whether exclusive or permissive,
the clause therefore remains a significant statement of forum agreement, included
by the parties in the contract in question.  As such, it should  be given appropriate
consideration along with other "case-specific factors" as called for by the Ricoh and
Karobo opinions, in reaching the Court's decision whether to order a §1404(a) trans-
fer of this case.

Such other case-specific factors the Court is called upon to consider include
convenience of parties and witnesses, public-interest factors of systemic integrity,
and private concerns falling under the heading interest of justice.  Kerobo, at 537
(quoting Ricoh at 30).  As shown by the Complaint and the memoranda and sup-
porting affidavits filed in connection with the present motion, this case involves al-
leged breach of the contract that arose from Ohio Plaintiff Exceptional's order for
Defendant Kontron of San Diego County, California, to produce certain computer
modules to be shipped to Exceptional in Westerville, Ohio, for integration into home
entertainment and automation systems it designs and sells.  Thus, in this contracts
case, with a manufacturer/buyer (and its witnesses and relevant records) located in
Ohio and a manufacturer/seller (and its witnesses and relevant records) located in

7

California, on the basis of what is before the Court on this motion to transfer pro-
ceedings from Ohio to California, with but one exception, none of the above, other
case-specific factors indicates a particular ruling here.

The significant exception in the circumstances of this case (whether or not
characterized as public interest in systemic integrity) is the clear choice-of-law
provision in the parties' contract. In Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509
(1947), the Supreme Court, ruling as to an earlier, more restrictive standard for
change of venue, never-the-less observed:

> . . . . There is an appropriateness, too, in having the trial of a diver-
> sity case in a forum that is at home with the state law that must
> govern the case, rather than having a court in some other forum un-
> tangle problems in conflict of laws, and in law foreign to itself.

The potential significance of this factor in ruling on requests for transfer has been
recognized by other district court decisions in our circuit

> Another relevant factor is the district court's familiarity with
> the applicable law. Here, it is undisputed that the option agreement
> is to be 'interpreted and enforced under the laws of the State of Ohio'
> (Exhibit B, p. 8, doc. 10), and it cannot be denied that there is an ad-
> vantage in having a district court apply the law of the state in which it
> sits. See Vector Company, Inc., [v. Urban Systems Development Corp.,
> 360 F.Supp. 864, 865 (E.D. Tenn. 1972)]

Artisan Devel. Div. of Kaiser Aetna v. Mountain States Devel. Corp., 402 F.Supp.
1312, 1316 (S.D. Ohio 1975). The Court finds that the presence here of this case-
specific factor is sufficient to outweigh Plaintiff's initial choice of forum and to per-
suade the Court that the discretionary §1404(a) transfer sought by Defendant
should be granted.

8

Consistent with the foregoing, it is therefore ORDERED that Defendant's Motion To Transfer Venue (Doc. 6) is GRANTED and that this proceeding is hereby TRANSFERRED to the United States District Court for the Southern District of California at San Diego.

The Clerk of this Court is authorized and directed to take all administrative step necessary to carry out this Order.

IT IS SO ORDERED.


10-11-2007
Dated

Edmund A. Sargus, Jr.
United States District Judge


I CERTIFY THAT THIS IS A
TRUE AND CORRECT COPY OF THE
ORIGINAL FILED IN MY OFFICE
ON 10-11-07
JAMES BONINI, CLERK
BY:
                          Deputy Clerk
DATE: 10-11-07

CLOSED, JURY

# U.S. District Court
## Southern District of Ohio (Columbus)
### CIVIL DOCKET FOR CASE #: 2:07-cv-00724-EAS-MRA
#### Internal Use Only

| | |
|---|---|
| Exceptional Innovation, LLC v. Kontron America, Inc. | Date Filed: 07/27/2007 |
| Assigned to: Edmund A Sargus | Date Terminated: 10/11/2007 |
| Referred to: Mark R. Abel | Jury Demand: Both |
| Case in other court: Court of Common Pleas Delaware | Nature of Suit: 190 Contract: Other |
| County, Ohio, 07-CVH-06-00765 | Jurisdiction: Diversity |
| Cause: 28:1441 Petition for Removal | |

**Plaintiff**

**Exceptional Innovation, LLC**    represented by    **Nelson Marlin Reid**
Bricker & Eckler - 2
100 S Third Street
Columbus, OH 43215-4291
614-227-2300
Fax: 614-226-8812
Email: nreid@bricker.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Philomena M Dane**
Squire Sanders & Dempsey
41 S High Street
Suite 1300
Columbus, OH 43215
614-365-2840
Fax: (614) 365-2499
Email: pdane@ssd.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sommer Lynn Sheely**
Baker & Hostetler LLP
65 East State Street
Suite 2100
Columbus, OH 43215
614-462-2663
Fax: 614-462-2616
Email: ssheely@bricker.com
*ATTORNEY TO BE NOTICED*

I CERTIFY THAT THIS IS A
TRUE AND CORRECT COPY OF THE
ORIGINAL FILED IN MY OFFICE
ON
JAMES BONINI, CLERK
BY:
Deputy Clerk
DATE: 10-11-07

V.

**Defendant**

**Kontron America, Inc.**                    represented by    **Philomena M Dane**
                                                               Squire Sanders & Dempsey
                                                               1300 Huntington Center
                                                               41 S High Street
                                                               Suite 1300
                                                               Columbus, OH 43215
                                                               614-365-2840
                                                               Fax: (614) 365-2499
                                                               Email: pdane@ssd.com
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Jessica Diane Goldman**
                                                               Squire Sanders & Dempsey
                                                               41 South High Street
                                                               Suite 1300
                                                               Columbus, OH 43215
                                                               614-365-2717
                                                               Fax: 614-365-2499
                                                               Email: jgoldman@ssd.com
                                                               *ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Kontron America, Inc.**                    represented by    **Philomena M Dane**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Jessica Diane Goldman**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**Exceptional Innovation, LLC**              represented by    **Nelson Marlin Reid**
                                                               (See above for address)
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Sommer Lynn Sheely**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 07/27/2007 | 1 | Civil and Supplemental Cover Sheet (sr) (Entered: 07/30/2007) |

| 07/27/2007 | 2 | NOTICE OF REMOVAL filed by Defendant Kontron America, Inc. from Court of Common Pleas Delaware County, Ohio, case number 07-CVH-06-0765. ( Filing fee $ 350) (Attachments: # 1 Exhibit State Complaint) (sr) (Entered: 07/30/2007) |
| --- | --- | --- |
| 07/27/2007 | 3 | COMPLAINT filed in Court of Common Pleas Delaware County, Ohio by Plaintiff Exceptional Innovation, LLC against Defendant Kontron America, Inc. (sr) (Entered: 07/30/2007) |
| 07/27/2007 | 4 | Corporate Disclosure Statement filed by Kontron America, Inc. (sr) (Entered: 07/30/2007) |
| 07/27/2007 |  | Notice of Removal Filing fee: $ 350, receipt number 257318 (sr) (Entered: 07/30/2007) |
| 07/30/2007 | 5 | NOTICE OF DOCKETING in a Removal. (sr) (Entered: 07/30/2007) |
| 08/03/2007 | 6 | MOTION to Change Venue by Defendant Kontron America, Inc.. (Attachments: # 1 Affidavit) (Goldman, Jessica) (Entered: 08/03/2007) |
| 08/03/2007 | 7 | ANSWER to Complaint with Jury Demand, COUNTERCLAIM against Exceptional Innovation, LLC by Defendant Kontron America, Inc., Plaintiff Exceptional Innovation, LLC. (Attachments: # 1 Exhibit # 2 Exhibit # 3) (Goldman, Jessica) (Entered: 08/03/2007) |
| 08/03/2007 | 8 | Defendant Kontron America, Inc.'s Notice of Filing Notice of Removal. (sr) (Entered: 08/06/2007) |
| 08/03/2007 |  | Remark: State Court Record Received (07-CV-H-06-0765). (sr) (Entered: 08/06/2007) |
| 08/15/2007 | 9 | NOTICE of Hearing: Preliminary Pretrial Conference set for 10/4/2007 @ 9:30 AM before Mark R. Abel. Conf of the parties due by 9/6/07; Rule 26f report due by 9/27/07. (sh1, ) (Entered: 08/15/2007) |
| 08/23/2007 | 10 | ANSWER to Counterclaim by Counter Defendant Exceptional Innovation, LLC. (Reid, Nelson) (Entered: 08/23/2007) |
| 08/24/2007 | 11 | RESPONSE in Opposition re 6 MOTION to Change Venue filed by Plaintiff Exceptional Innovation, LLC. (Attachments: # 1 Exhibit 1) (Reid, Nelson) (Entered: 08/24/2007) |
| 09/06/2007 | 12 | Corporate Disclosure Statement by Exceptional Innovation, LLC. (Reid, Nelson) (Entered: 09/06/2007) |
| 09/07/2007 | 13 | RESPONSE in Support re 6 MOTION to Change Venue filed by Plaintiff Exceptional Innovation, LLC. (Dane, Philomena) (Entered: 09/07/2007) |
| 09/07/2007 | 14 | REPLY to Response to Motion re 6 MOTION to Change Venue filed by Defendant Kontron America, Inc. (kch) (Entered: 09/10/2007) |
| 09/10/2007 |  | (Court only) ***Former docket #13 (Response in Support of Motion) filed by Philomena Dane, deleted and re-filed by Clerk as current docket #14 (Reply to Response to Motion) to correct ECF filing event. (kch) (Entered: 09/10/2007) |

| 09/27/2007 | ⊕15 | RULE 26(f) REPORT by Plaintiff Exceptional Innovation, LLC, Defendant Kontron America, Inc.. (Reid, Nelson) (Entered: 09/27/2007) |
| 10/04/2007 | ⊕ | Minute Entry for proceedings held before Judge Mark R. Abel : Initial Pretrial Conference held on 10/4/2007. (mra2, ) (Entered: 10/09/2007) |
| 10/11/2007 | ⊕16 | OPINION AND ORDER granting 6 Defendant's Motion to Transfer Venue. This proceeding is transferred to the United States District Court for the Southern District of California at San Diego. Signed by Judge Edmund A Sargus on 10/11/07. (dh) (Entered: 10/11/2007) |
| 10/11/2007 | ⊕ | (Court only) ***Civil Case Terminated. (dh) (Entered: 10/11/2007) |

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| Exceptional Innovation, LLC | Kontron America, Inc. |

**(b)** County of Residence of First Listed Plaintiff    Delaware
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    San Diego
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Nelson M. Reid
Sommer L. Sheely
Bricker & Eckler LLP
100 South Third Street . . Suite
Columbus, OH  43215

Attorneys (If Known)
Squire, Sanders & Dempsey LL
1300 Huntington Center
Philomena M. Dane    41 South High Street
Jessica D. Goldman   Columbus, OH  43215

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1  Original Proceeding
- ☒ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1441 & 1446
Brief description of cause:
Declaratory Action Regarding Contract

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Declaratory Judgment

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY:
(See instructions):
JUDGE                         DOCKET NUMBER

DATE  7/27/2007

SIGNATURE OF ATTORNEY OF RECORD    J.D.Goldman

FOR OFFICE USE ONLY

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____

## SUPPLEMENTAL CIVIL COVER SHEET
## FOR CASES REMOVED FROM STATE COURT

*This form must be attached to the Civil Cover Sheet at the time*
*the case is filed in the United States District Court*

State Court County: __Delaware__

Case number and caption:

__07CVH060765__          Exceptional Innovation LLC vs          Kontron America, Inc.
Case Number                  Plaintiff(s)                          Defendant(s)

Jury Demand Made in State Court:                                    ☒  Yes      ☐  No

If "Yes," by which party and on what Date:

__Exceptional Innovation, LLC__                          __June 27, 2007__
Party                                                       Date

| | | |
|---|---|---|
| Were there parties not served prior to removal? | ☐ Yes | ☒ No |
| Were there parties dismissed/terminated prior to removal? | ☐ Yes | ☒ No |
| Were there answers filed in State Court? | ☐ Yes | ☒ No |
| Is there a pending TRO in State Court? | ☐ Yes | ☒ No |

*If you have answered "yes" to any of the above please list parties not served, the parties dismissed/terminated and the parties that filed their answers on the reverse of this page.*

*On the reverse of this page please list all Plaintiff(s), Defendant(s), Intervenor(s), Counterclaimant(s), Crossclaimant(s) and Third Party Claimant(s) still remaining in the case and indicate their party type. Please list the attorney(s) of record for each party named and include their bar number, firm name, correct mailing address and phone number, including area code.*

Are copies of all state case pleadings attached to your removal?          ☒  Yes      ☐  No

If your answer is "No", when will they be filed: _____

List the parties that are removing the case:
__Kontron America, Inc.__

| Parties Not Served | Parties Dismissed | Answers Filed |
|---|---|---|
| *I.E. Defendant John Doe* | *I.E. Defendant John Doe* | *I.E. Defendant John Doe* |

| Party and Type | Attorney(s) |
|---|---|
| *I.E.*   *Plaintiff John Doe*<br><br>Defendant Kontron America, Inc. | *I.E.*   *Attorney(s) Name*<br>*Firm*<br>*Address*<br>*City, State, Zip*<br>*Telephone and Fax Number*<br>*Supreme Court Number*<br><br>Philomena M. Dane (0044064)<br>Jessica D. Goldman (0077049)<br>Squire, Sanders & Dempsey, LLP<br>1300 Huntington Center<br>41 South High Street<br>Columbus, OH  43215<br>Phone: (614) 365-2700<br>Fax: (614) 365-2499 |

**USE A SEPARATE SHEET OF PAPER IF NECESSARY**

FILED
JAMES BONINI

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION
07 JUL 27 PM 1: 56

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO

| | |
|---|---|
| EXCEPTIONAL INNOVATION, LLC | ) |
| 480 Olde Worthington Road, Suite 350 | ) |
| Westerville, Ohio 43082, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| KONTRON AMERICA, INC. | ) |
| 14118 Stowe Drive | ) |
| Poway, California 92064, | ) |
| | ) |
| Defendant. | ) |

Case No. 2:07-cv-724

Judge **JUDGE SARGUS**

Magistrate Judge **MAGISTRATE JUDGE ABEL**

---

## NOTICE OF REMOVAL

---

Pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant Kontron America, Inc. removes this action from the Court of Common Pleas, Delaware County, Ohio, Civil Division, to the United States District Court for the Southern District of Ohio, Eastern Division, and states as follows:

1.      On June 27, 2007, Plaintiff filed a Complaint against Kontron America, Inc. in the Delaware Court of Common Pleas, Case No. 07-CV-H-06-0765. Defendant was served with a copy of the Summons and Complaint on June 29, 2007. A copy of the Complaint and all process, pleadings, and orders that have been served as of the time of this filing are attached to this Notice of Removal as Exhibit A in accordance with 28 U.S.C. § 1446(a).

2.      This Court has original diversity jurisdiction over all claims set forth in the Complaint pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff Exceptional Innovation is an Ohio limited liability company with its principal place of business in Westerville, Ohio. See Complaint, ¶ 1. Defendant Kontron America, Inc. is a Delaware corporation with its principal

place of business in Poway, California. See Complaint, ¶ 2. The amount in controversy exceeds $75,000. See Complaint, ¶ 37, 44.

3.    This Notice of Removal is timely as it is filed within thirty (30) days after receipt of a copy of the Complaint by Defendant in accordance with 28 U.S.C. § 1446(b).

4.    Defendant will, promptly after the filing of this Notice of Removal, give written notice of this Notice of Removal to Plaintiff and will file a copy of this Notice of Removal with the Clerk of the Court of Common Pleas of Delaware County, Ohio.

5.    This action is not one which is described in 28 U.S.C. § 1445.

6.    By filing this Notice of Removal, Defendant does not waive its right to demand enforcement of the parties' forum selection clause, object to venue or otherwise assert any and all defenses available to it, all of which Defendant expressly reserves.

WHEREFORE, Defendant prays that this action be removed from the Court of Common Pleas, Delaware County, Ohio, Civil Division, to this Court pursuant to 28 U.S.C. § 1441(a).

Respectfully submitted,

_____

Philomena M. Dane (0044064)
(Trial Attorney)
Jessica D. Goldman (0077049)
SQUIRE, SANDERS & DEMPSEY, LLP
1300 Huntington Center
41 South High Street
Columbus, Ohio  43215
(614) 365-2700
(614) 365-2499
pdane@ssd.com
jgoldman@ssd.com

Attorneys for Defendant

- 2 -

## CERTIFICATE OF SERVICE

I certify that, on July 27, 2007, I caused this Notice of Removal to be served via regular

U.S. mail, postage prepaid, to the following individuals:

Nelson M. Reid
Sommer L. Sheely
Bricker & Eckler LLP
100 South Third Street
Columbus, Ohio 43215

Attorneys for Plaintiff

_____
One of the Attorneys for Defendant

Common Pleas Court
Delaware Co., Ohio
I hereby certify the within be a tru
copy of the original on file in this off
Jan Antonoplos, Clerk of Court
By _____
Deput[

IN THE COURT OF COMMON PLEAS
DELAWARE COUNTY, OHIO

EXCEPTIONAL INNOVATION, LLC          :
480 Olde Worthington Road, Suite 350 :      CASE NO. 07-CV-H-06-0765
Westerville, Ohio 43082,             :
                                     :
          Plaintiff,                 :      JUDGE      W. DUNCAN WHITNEY
                                     :
     vs.                             :
                                     :
KONTRON AMERICA, INC.                :      JURY DEMAND ENDORSED HEREON
14118 Stowe Drive                    :
Poway, CA 92064                      :
                                     :
          Defendant.                 :

## COMPLAINT FOR DECLARATORY JUDGMENT

Now comes Plaintiff Exceptional Innovation, LLC ("Exceptional Innovation"), by and

through counsel, and for its Complaint against Defendant Kontron America, Inc. ("Kontron")

states the following:

### The Parties

1.    Exceptional Innovation is now and was at all relevant times an Ohio limited

liability company with its principal place of business in Westerville, Delaware County, Ohio.

2.    Upon information and belief, Kontron is now and was at all relevant times a

Delaware corporation with its principal place of business in Poway, San Diego County,

California. Upon information and belief, Kontron maintains and maintained at relevant times to

this action a place or places of business in the State of Ohio. Kontron does business throughout

the United States and worldwide.

### Jurisdiction and Venue

3.    The Court has personal jurisdiction over Kontron, among other reasons, under

2070573v2

Ohio's Long-Arm Statute, specifically, Ohio Revised Code §§ 2307.382(A)(1), (2), and (5).

4.      Venue is proper in this Court pursuant to, *inter alia*, Civil Rule 3(B)(3), and (6) and Civil Rule 3(B) as Kontron conducted activity in Delaware County, Ohio, that gave rise to a claim for relief, and all or part of Exceptional Innovation's claim for relief arose in Delaware County, Ohio.

Statement of Facts

5.      This case concerns a contract dispute between Exceptional Innovation, a final product manufacturer, and Kontron, one of its component vendors.

6.      Exceptional Innovation is, in part, in the business of designing and selling state-of-the-art digital home entertainment and automation systems.   These systems offer user convenience and efficiency by integrating various home entertainment systems onto a single network.  In the course of its business, Exceptional Innovation designs and sells both software and hardware.

7.      Kontron is in the business of selling embedded standard and custom computer technology.   Kontron's products are components intended for integration into other systems. The relevant Kontron product to this action is a particular type of embedded internal computer module, which Exceptional Innovation expected to use in certain new hardware devices.

8.      At a trade show in or about September 2004, Exceptional Innovation's President and Chief Executive Officer, Seale Moorer, was approached by Matthias Huber, Kontron's representative, who offered basic information about the nature of Kontron's products.

9.      After the trade show, Mr. Moorer asked Kyle Virgin, Hardware Design Engineer for Exceptional Innovation, to explore further whether Kontron's technology may be an appropriate solution for integration into Exceptional Innovation's emerging hardware products.

10.     As a result, Mr. Virgin made some information requests on Kontron's website.

11.     Kontron's internal salesman, Tony Hallett, responded to these requests by telephoning Mr. Virgin.  In their conversation, Mr. Hallett provided some additional background on Kontron's products.

12.     Mr. Virgin informed Kontron, among other things, of the nature of the solution he was seeking, the nature of Exceptional Innovation's product lines, and Exceptional Innovation's anticipated production timetable for the new hardware devices.

13.     Shortly thereafter, Kontron instructed its local agent, Jerome Rozek, to contact Exceptional Innovation to work toward developing an appropriate solution.

14.     Upon information and belief, during the entire time Exceptional Innovation dealt with Mr. Rozek, he maintained an office as Kontron's employee and agent in North Royalton, Ohio, and listed both his office and mobile telephone numbers as within the 440 area code (suburban Cleveland).   Mr. Rozek's email address was at all relevant times jerome.rozek@us.kontron.com.

15.     In late 2004 and early 2005, Exceptional Innovation viewed and tested various sample products sent by Kontron both in Ohio and during visits to Kontron in California.  Mr. Rozek also met with Exceptional Innovation in its Delaware County facility on four or five separate occasions.

16.     A series of products Kontron offered in late 2004 and early 2005 was not acceptable for Exceptional Innovation's needs.

17.     Finally, in April 2005, Kontron presented Exceptional Innovation with a module Exceptional Innovation felt would meet its needs, both in terms of technology and timeframe. This module is known by the Kontron name ETX Express (hereinafter "the Modules").

18.    Among the features that were key to Exceptional Innovation's decision to order the Modules was their One Gigabit Ethernet product, which was far more advanced than other products on the market at the time. Exceptional Innovation communicated to Kontron that using state-of-the-art technology was critical to the hardware products it was developing.

19.    Kontron also promised it would have the Modules ready by June 2005, which fit Exceptional Innovation's planned production timeframe.

20.    On or about May 12, 2005, Exceptional Innovation submitted two purchase requests to Kontron for approximately $1.5 million worth of several Kontron products, including approximately $912,000 worth of the Modules. (True and correct copies of the purchase requests are attached hereto as Exhibit A).

21.    The purchase requests were accepted by Kontron, forming a binding contract for the goods ordered therein (the "Contract").

22.    Consistent with Kontron's representations, the Contract indicated the "required date" for the Modules was June 15, 2005. The Contract also contains the following notation: "300 units requested ASAP. The rest to follow within the next 12 months based upon demand."

23.    In fact, Kontron seriously misrepresented the date on which it could perform by delivering working Modules.

24.    Beginning immediately after contracting, Kontron began to stall and to inform Exceptional Innovation of problems it was having in producing working Modules.

25.    In the summer and fall of 2005, Kontron shipped only small quantities of Modules to Exceptional Innovation, which failed due to a variety of technical issues.

26.    Exceptional Innovation promptly notified Kontron of these failures and returned the Modules to Kontron.

27.    Exceptional Innovation also conducted extensive in-house testing on the Modules to aid Kontron in diagnosing problems with the Modules.

28.    From the time of contracting until December – a period of six months – Mr. Virgin and others at Exceptional Innovation devoted substantial time on a daily basis to working with Kontron to refine the Modules; testing, rejecting and returning the few, faulty Modules Kontron did ship; and demanding performance under the Contract.

29.    Not until December 2005 did Kontron finally begin to deliver Modules in any substantial quantity.

30.    Even once Kontron began delivering greater numbers of Modules in or about December 2005, they still did not work properly.

31.    For another four to five months, Exceptional Innovation repeatedly rejected Modules, devoted its resources to diagnosing their issues and failures, and persistently demanded delivery of conforming goods from Kontron. Kontron responded with additional excuses, and delays continued.

32.    Finally, in or about April 2006, Kontron started to deliver working Modules, nearly a year after promised and after significant resources expended by Exceptional Innovation engineers to help Kontron solve the many technical difficulties with the Modules.

33.    In June 2006, Mr. Huber of Kontron sent a letter to Exceptional Innovation admitting the Modules were faulty. As a result, each Module had to be individually repaired and reconfigured, causing further delay.

34.    By the time Kontron delivered the quantity of Modules required by the Contract in or about November 2006, they had become outdated and were replaced by more advanced technology.

2070573v2                                            5

35.    Exceptional Innovation requested to substitute the Modules for more advanced models in light of Kontron's lengthy delays and failures to provide the state-of-the art goods for which Exceptional Innovation contracted, but Kontron refused.

36.    To date, Exceptional Innovation has paid in excess of $1 million to Kontron for the Modules and the other products that were part of the Contract.

37.    Nonetheless, Kontron is now demanding in excess of $200,000 in additional payments from Exceptional Innovation.

38.    As set forth herein, Exceptional Innovation has declined to pay any additional sums for the Modules.

39.    Kontron materially breached the agreement by its lengthy and disruptive failures to deliver working, state-of-the-art Modules.

40.    Exceptional Innovation has been damaged by Kontron's breaches.    These damages include but are not limited to:

- Exceptional Innovation expended significant time and funds attempting to help Kontron cure defects in the Modules; and

- Kontron's failure to timely deliver the Modules contributed to delays in Exceptional Innovation's production schedule; and

- Exceptional Innovation is now left with a product that does not fulfill its original goal of building its new hardware devices with the most state-of-the-art technology possible.

## COUNT I – Declaratory Judgment

41.    Exceptional Innovation realleges and incorporates herein each and every allegation set forth above.

42.    Kontron materially breached the Contract by engaging in the conduct as set forth above.

2070573v2                                              6

43.    By virtue of Kontron's breaches, Exceptional Innovation is excused from further performance under the Contract, including payment of any additional sums.

44.    Notwithstanding Kontron's material breaches of the Contract, which have in turn excused Exceptional Innovation's obligations to perform under the Contract, Kontron is demanding sums in excess of $200,000 from Exceptional Innovation.

45.    Thus, there is a real and justiciable controversy between the parties as to whether the Exceptional Innovation has any further obligation to remit payment to Kontron in light of Kontron's material breaches of the Contract.

46.    Under Ohio Rev. Code § 2721.03, Exceptional Innovation is entitled to a declaration construing the parties' rights and obligations under the Contract.

47.    Speedy relief is necessary to preserve Exceptional Innovation's rights that may otherwise be impaired or lost.

48.    Exceptional Innovation is entitled to a declaration that (1) Kontron materially breached the Contract and (2) that Exceptional Innovation is excused from further performance under the Contract as a result of said breach and thus has no liability to Kontron.

WHEREFORE, Exceptional Innovation, LLC hereby demands judgment and relief against Defendant Kontron America, Inc., as follows:

A.    For a declaration that Kontron materially breached the Contract, and Exceptional Innovation is excused from any further performance or liability to Kontron under the Contract; and

B.    For attorney fees and expenses; and

C.    For costs and such other remedy as the Court deems just and proper.

Respectfully submitted,

*Nelson M. Reid*

Nelson M. Reid          (0068434)
Sommer L. Sheely      (0076071)
BRICKER & ECKLER LLP
100 South Third Street
Columbus, Ohio 43215
Telephone:    (614) 227-2300
Facsimile:    (614) 227-
Email:        nreid@bricker.com
              ssheely@bricker.com
*Attorneys for Plaintiff Exceptional
Innovation, LLC*

## JURY DEMAND

Plaintiff Exceptional Innovation, LLC hereby demands a jury trial as to all issues so triable.

*Nelson M. Reid*

Nelson M. Reid          (0068434)

## IN THE COURT OF COMMON PLEAS DELAWARE COUNTY, OHIO

## SUMMONS

Case Number: 07 CV H 06 0765

| Plaintiff(s): | | Defendant(s): |
|---|---|---|
| EXCEPTIONAL INNOVATION LLC | VS | KONTRON AMERICA INC |
| 480 OLDE WORTHINGTON ROAD | | 14118 STOWE DRIVE |
| SUITE 350 | | POWAY, CA 92064 |
| WESTERVILLE, OH 43082 | | |

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned that a complaint (a copy of which is hereto attached and made a part hereof) has been filed against you in this court by the plaintiff(s) named herein.

You are required to serve upon the plaintiff(s) attorney, or upon the plaintiff(s) if he/she/they have/has no attorney of record, a copy of your answer to the complaint within twenty-eight (28) days after service of this summons upon you, exclusive of the day of service. Said answer must be filed with this court within three (3) days after service on plaintiff(s) attorney.

The name and address of the plaintiff(s) attorney is as follows:

NELSON M REID
100 SOUTH THIRD STREET
COLUMBUS OHIO 43215

If you fail to appear and defend, judgment by default will be taken against you for the relief demanded in the complaint.

Date: June 27, 2007
CERTIFIED MAIL: 1699

Jan Antonoplos
Delaware County Clerk of Courts

_____
Deputy Clerk

**Exceptional Innovation**

## Purchase Request

| Reference Number: | Priority: | Date Requested: |
|---|---|---|
| JLH051305A | High | 5/12/2005 |

| Charge To: | Date Required: |
|---|---|
| Exceptional Innovation | 6/1/2005 |

**Submitted By**

| Name: | Address Line 1: |
|---|---|
| Kyle Virgin | 480 Olde Worthington Rd. |
| Department: | Address Line 2: |
| Engineering | Suite 350 |
| E-mail Address: | City: |
| kvirgin@exceptionalinnovation.com | Westerville |
| Telephone Number: | State/Province: / Postal Code: |
| 614-901-8899 x50207 | Ohio / 43082 |
| | Country/Region: |
| | USA |

## Suggested Supplier Information

| Company Name: | Telephone Number: |
|---|---|
| Kontron | 800-523-2320 |
| Web Site Address: | Fax Number: |
| www.kontron.com | 858-677-0898 |

## Shipping Information

☑ Allow Partial Shipment

☑ Ship to Address Listed Above

Ship Method:
Two-day air

## Itemized List

Currency: USD ($)

Summary:
EI Controller

| Item Number | Description | | | | | Total with Tax ($) |
|---|---|---|---|---|---|---|
| | Part Number | Quantity | Unit Price ($) | Tax (%) | Pre-Tax Price ($) | |
| 1 | ETX-PM 1.8GHz Celeron-M | | | | | 503,000.00 |
| | | 1,000 | 503.00 | 0.000 | 503,000.00 | |
| 2 | IC 512MB DDR SDRAM SODIMM PC2 | | | | | 125,000.00 |
| | | 1,000 | 125.00 | 0.000 | 125,000.00 | |
| 3 | HSP-PM Threaded Stand Off | | | | | |

| | | | 5.000 | 14.00 | 0.000 | 14,000.00 | 14,000.00 |
|---|---|---|---|---|---|---|---|

| | |
|---|---|
| Subtotal ($) | 642,000.00 |
| Tax ($) | 0.00 |
| Shipping/Handling Cost ($) | 0.00 |
| Total ($) | 642,000.00 |

## Notes

Attn: Tony Hallett - 300 units requested ASAP. The rest to follow within next
12 months based upon demand. Reference Sales Quote#1011431SQ. Quote
date 5/12/2005 Customer#193271

## Signatures

Sign and print your name.

*Kyle Virgin* Kyle Virgin          5-12-2005
Employee Signature                 Date

*Jeannie Heffner*                  5-13-05
*per Susie Moore*
Approver Signature                 Date

**Exceptional Innovation**

## Purchase Request

| | | |
|---|---|---|
| **Reference Number:** JLH0513058 | **Priority:** High | **Date Requested:** 5/12/2005 |
| **Charge To:** Exceptional Innovation | | **Date Required:** 6/15/2005 |

### Submitted By

| | |
|---|---|
| **Name:** Kyle Virgin | **Address Line 1:** 480 Olde Worthington Rd. |
| **Department:** Engineering | **Address Line 2:** Suite 350 |
| **E-mail Address:** kvirgin@exceptionalinnovation.com | **City:** Westerville |
| **Telephone Number:** 614-901-8899 x50207 | **State/Province:** Ohio    **Postal Code:** 43082 |
| | **Country/Region:** USA |

## Suggested Supplier Information

| | |
|---|---|
| **Company Name:** Kontron | **Telephone Number:** 800-523-2320 |
| **Web Site Address:** www.kontron.com | **Fax Number:** 858-677-0898 |

## Shipping Information

☑ Allow Partial Shipment
☑ Ship to Address Listed Above

**Ship Method:** Two-day air

## Itemized List

**Currency:** USD ($)

**Summary:** EI WALLPANEL/SET-TOP BOX

| Item Number | Description | | | | | Total with Tax ($) |
|---|---|---|---|---|---|---|
| | Part Number | Quantity | Unit Price ($) | Tax (%) | Pre-Tax Price ($) | |
| 1 | ETXexpress-PM Module 760-2GHz | | | | | $81,000.00 |
| | | 1,000 | 681.00 | 0.000 | 681,000.00 | |
| 2 | 1024MB DDR2-DIMM | | | | | 156,000.00 |
| | | 1,000 | 156.00 | 0.000 | 156,000.00 | |
| 3 | ETX-Express Heatspreader | | | | | |

| | | 1,000 | 16.00 | 8,000 | 14,000.00 | 16,000.00 |

| | |
|---|---|
| Subtotal ($) | 1,053,000.00 |
| Tax ($) | 0.00 |
| Shipping/Handling Cost ($) | 0.00 |
| Total ($) | 1,053,000.00 |

## Notes

Attn: Tony Hallett - 300 units requested ASAP. The rest to follow within next 12 months based upon demand. Reference Sales Quote#101142250. Quote date 5/12/2005 Customer#193271

## Signatures

Sign and print your name.

_Kyle Virgin_ Kyle Virgin                    5-12-2005
Employee Signature                          Date

_Jeannie Hoffman_                           5-13-05
Approval Signature    per Dale Moore         Date

Common Pleas Court
Delaware Co., Ohio
I hereby certify the within be a tru
copy of the original on file in this off
Jan Antonoplos, Clerk of Court
By_____
                              Deputy

IN THE COURT OF COMMON PLEAS
DELAWARE COUNTY, OHIO

EXCEPTIONAL INNOVATION, LLC        :
480 Olde Worthington Road, Suite 350   :    CASE NO. 07-CV-H- 06 -0765
Westerville, Ohio 43082,           :
                                   :
        Plaintiff,                 :    JUDGE    W. DUNCAN WHITNEY
                                   :
    vs.                            :
                                   :
KONTRON AMERICA, INC.              :    JURY DEMAND ENDORSED HEREON
14118 Stowe Drive                  :
Poway, CA 92064                    :
                                   :
        Defendant.                 :

2007 JUN 27 AM 9:17
JAN ANTONOPLOS CLERK
COMMON PLEAS COURT
DELAWARE COUNTY, OHIO
FILED

## COMPLAINT FOR DECLARATORY JUDGMENT

Now comes Plaintiff Exceptional Innovation, LLC ("Exceptional Innovation"), by and

through counsel, and for its Complaint against Defendant Kontron America, Inc. ("Kontron")

states the following:

### The Parties

1.    Exceptional Innovation is now and was at all relevant times an Ohio limited

liability company with its principal place of business in Westerville, Delaware County, Ohio.

2.    Upon information and belief, Kontron is now and was at all relevant times a

Delaware corporation with its principal place of business in Poway, San Diego County,

California. Upon information and belief, Kontron maintains and maintained at relevant times to

this action a place or places of business in the State of Ohio. Kontron does business throughout

the United States and worldwide.

### Jurisdiction and Venue

3.    The Court has personal jurisdiction over Kontron, among other reasons, under

2070573v2

Ohio's Long-Arm Statute, specifically, Ohio Revised Code §§ 2307.382(A)(1), (2), and (5).

4.     Venue is proper in this Court pursuant to, *inter alia*, Civil Rule 3(B)(3), and (6) and Civil Rule 3(B) as Kontron conducted activity in Delaware County, Ohio, that gave rise to a claim for relief, and all or part of Exceptional Innovation's claim for relief arose in Delaware County, Ohio.

Statement of Facts

5.     This case concerns a contract dispute between Exceptional Innovation, a final product manufacturer, and Kontron, one of its component vendors.

6.     Exceptional Innovation is, in part, in the business of designing and selling state-of-the-art digital home entertainment and automation systems. These systems offer user convenience and efficiency by integrating various home entertainment systems onto a single network. In the course of its business, Exceptional Innovation designs and sells both software and hardware.

7.     Kontron is in the business of selling embedded standard and custom computer technology. Kontron's products are components intended for integration into other systems. The relevant Kontron product to this action is a particular type of embedded internal computer module, which Exceptional Innovation expected to use in certain new hardware devices.

8.     At a trade show in or about September 2004, Exceptional Innovation's President and Chief Executive Officer, Seale Moorer, was approached by Matthias Huber, Kontron's representative, who offered basic information about the nature of Kontron's products.

9.     After the trade show, Mr. Moorer asked Kyle Virgin, Hardware Design Engineer for Exceptional Innovation, to explore further whether Kontron's technology may be an appropriate solution for integration into Exceptional Innovation's emerging hardware products.

10.     As a result, Mr. Virgin made some information requests on Kontron's website.

11.     Kontron's internal salesman, Tony Hallett, responded to these requests by telephoning Mr. Virgin. In their conversation, Mr. Hallett provided some additional background on Kontron's products.

12.     Mr. Virgin informed Kontron, among other things, of the nature of the solution he was seeking, the nature of Exceptional Innovation's product lines, and Exceptional Innovation's anticipated production timetable for the new hardware devices.

13.     Shortly thereafter, Kontron instructed its local agent, Jerome Rozek, to contact Exceptional Innovation to work toward developing an appropriate solution.

14.     Upon information and belief, during the entire time Exceptional Innovation dealt with Mr. Rozek, he maintained an office as Kontron's employee and agent in North Royalton, Ohio, and listed both his office and mobile telephone numbers as within the 440 area code (suburban Cleveland).    Mr. Rozek's email address was at all relevant times jerome.rozek@us.kontron.com.

15.     In late 2004 and early 2005, Exceptional Innovation viewed and tested various sample products sent by Kontron both in Ohio and during visits to Kontron in California. Mr. Rozek also met with Exceptional Innovation in its Delaware County facility on four or five separate occasions.

16.     A series of products Kontron offered in late 2004 and early 2005 was not acceptable for Exceptional Innovation's needs.

17.     Finally, in April 2005, Kontron presented Exceptional Innovation with a module Exceptional Innovation felt would meet its needs, both in terms of technology and timeframe. This module is known by the Kontron name ETX Express (hereinafter "the Modules").

18.    Among the features that were key to Exceptional Innovation's decision to order the Modules was their One Gigabit Ethernet product, which was far more advanced than other products on the market at the time. Exceptional Innovation communicated to Kontron that using state-of-the-art technology was critical to the hardware products it was developing.

19.    Kontron also promised it would have the Modules ready by June 2005, which fit Exceptional Innovation's planned production timeframe.

20.    On or about May 12, 2005, Exceptional Innovation submitted two purchase requests to Kontron for approximately $1.5 million worth of several Kontron products, including approximately $912,000 worth of the Modules. (True and correct copies of the purchase requests are attached hereto as Exhibit A).

21.    The purchase requests were accepted by Kontron, forming a binding contract for the goods ordered therein (the "Contract").

22.    Consistent with Kontron's representations, the Contract indicated the "required date" for the Modules was June 15, 2005. The Contract also contains the following notation: "300 units requested ASAP. The rest to follow within the next 12 months based upon demand."

23.    In fact, Kontron seriously misrepresented the date on which it could perform by delivering working Modules.

24.    Beginning immediately after contracting, Kontron began to stall and to inform Exceptional Innovation of problems it was having in producing working Modules.

25.    In the summer and fall of 2005, Kontron shipped only small quantities of Modules to Exceptional Innovation, which failed due to a variety of technical issues.

26.    Exceptional Innovation promptly notified Kontron of these failures and returned the Modules to Kontron.

27.     Exceptional Innovation also conducted extensive in-house testing on the Modules to aid Kontron in diagnosing problems with the Modules.

28.     From the time of contracting until December -- a period of six months -- Mr. Virgin and others at Exceptional Innovation devoted substantial time on a daily basis to working with Kontron to refine the Modules; testing, rejecting and returning the few, faulty Modules Kontron did ship; and demanding performance under the Contract.

29.     Not until December 2005 did Kontron finally begin to deliver Modules in any substantial quantity.

30.     Even once Kontron began delivering greater numbers of Modules in or about December 2005, they still did not work properly.

31.     For another four to five months, Exceptional Innovation repeatedly rejected Modules, devoted its resources to diagnosing their issues and failures, and persistently demanded delivery of conforming goods from Kontron. Kontron responded with additional excuses, and delays continued.

32.     Finally, in or about April 2006, Kontron started to deliver working Modules, nearly a year after promised and after significant resources expended by Exceptional Innovation engineers to help Kontron solve the many technical difficulties with the Modules.

33.     In June 2006, Mr. Huber of Kontron sent a letter to Exceptional Innovation admitting the Modules were faulty. As a result, each Module had to be individually repaired and reconfigured, causing further delay.

34.     By the time Kontron delivered the quantity of Modules required by the Contract in or about November 2006, they had become outdated and were replaced by more advanced technology.

2070573v2                                                5

35.     Exceptional Innovation requested to substitute the Modules for more advanced models in light of Kontron's lengthy delays and failures to provide the state-of-the art goods for which Exceptional Innovation contracted, but Kontron refused.

36.     To date, Exceptional Innovation has paid in excess of $1 million to Kontron for the Modules and the other products that were part of the Contract.

37.     Nonetheless, Kontron is now demanding in excess of $200,000 in additional payments from Exceptional Innovation.

38.     As set forth herein, Exceptional Innovation has declined to pay any additional sums for the Modules.

39.     Kontron materially breached the agreement by its lengthy and disruptive failures to deliver working, state-of-the-art Modules.

40.     Exceptional Innovation has been damaged by Kontron's breaches.     These damages include but are not limited to:

- Exceptional Innovation expended significant time and funds attempting to help Kontron cure defects in the Modules; and

- Kontron's failure to timely deliver the Modules contributed to delays in Exceptional Innovation's production schedule; and

- Exceptional Innovation is now left with a product that does not fulfill its original goal of building its new hardware devices with the most state-of-the-art technology possible.

## COUNT I – Declaratory Judgment

41.     Exceptional Innovation realleges and incorporates herein each and every allegation set forth above.

42.     Kontron materially breached the Contract by engaging in the conduct as set forth above.

43. By virtue of Kontron's breaches, Exceptional Innovation is excused from further performance under the Contract, including payment of any additional sums.

44. Notwithstanding Kontron's material breaches of the Contract, which have in turn excused Exceptional Innovation's obligations to perform under the Contract, Kontron is demanding sums in excess of $200,000 from Exceptional Innovation.

45. Thus, there is a real and justiciable controversy between the parties as to whether the Exceptional Innovation has any further obligation to remit payment to Kontron in light of Kontron's material breaches of the Contract.

46. Under Ohio Rev. Code § 2721.03, Exceptional Innovation is entitled to a declaration construing the parties' rights and obligations under the Contract.

47. Speedy relief is necessary to preserve Exceptional Innovation's rights that may otherwise be impaired or lost.

48. Exceptional Innovation is entitled to a declaration that (1) Kontron materially breached the Contract and (2) that Exceptional Innovation is excused from further performance under the Contract as a result of said breach and thus has no liability to Kontron.

WHEREFORE, Exceptional Innovation, LLC hereby demands judgment and relief against Defendant Kontron America, Inc., as follows:

A. For a declaration that Kontron materially breached the Contract, and Exceptional Innovation is excused from any further performance or liability to Kontron under the Contract; and

B. For attorney fees and expenses; and

C. For costs and such other remedy as the Court deems just and proper.

Respectfully submitted,

*Nelson M. Reid*

Nelson M. Reid          (0068434)
Sommer L. Sheely     (0076071)
BRICKER & ECKLER LLP
100 South Third Street
Columbus, Ohio 43215
Telephone:     (614) 227-2300
Facsimile:      (614) 227-
Email:           nreid@bricker.com
                      ssheely@bricker.com
*Attorneys for Plaintiff Exceptional Innovation, LLC*

## JURY DEMAND

Plaintiff Exceptional Innovation, LLC hereby demands a jury trial as to all issues so triable.

*Nelson M. Reid*

Nelson M. Reid          (0068434)

## IN THE COURT OF COMMON PLEAS DELAWARE COUNTY, OHIO

## SUMMONS

**Case Number: 07 CV H 06 0765**

Plaintiff(s):

EXCEPTIONAL INNOVATION    VS
LLC
480 OLDE WORTHINGTON
ROAD
SUITE 350
WESTERVILLE, OH 43082

Defendant(s):

KONTRON AMERICA INC
14118 STOWE DRIVE
POWAY, CA 92064

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned that a complaint (a copy of which is hereto attached and made a part hereof) has been filed against you in this court by the plaintiff(s) named herein.

You are required to serve upon the plaintiff(s) attorney, or upon the plaintiff(s) if he/she/they have/has no attorney of record, a copy of your answer to the complaint within twenty-eight (28) days after service of this summons upon you, exclusive of the day of service. Said answer must be filed with this court within three (3) days after service on plaintiff(s) attorney.

The name and address of the plaintiff(s) attorney is as follows:

NELSON M REID
100 SOUTH THIRD STREET
COLUMBUS OHIO 43215

If you fail to appear and defend, judgment by default will be taken against you for the relief demanded in the complaint.

Date: June 27, 2007
CERTIFIED MAIL: 1699

Jan Antonoplos
Delaware County Clerk of Courts

Deputy Clerk

**Exceptional Innovation**

## Purchase Request

| Reference Number: | Priority: | Date Requested: |
|---|---|---|
| JLH0513058A | High | 5/12/2005 |

**Charge To:**
Exceptional Innovation

**Date Required:**
6/1/2005

### Submitted By

**Name:**
Kyle Virgin

**Department:**
Engineering

**E-mail Address:**
kvirgin@exceptionalinnovation.com

**Telephone Number:**
614-901-8899 x50207

**Address Line 1:**
480 Olde Worthington Rd.

**Address Line 2:**
Suite 350

**City:**
Westerville

**State/Province:** Ohio     **Postal Code:** 43082
**Country/Region:** USA

## Suggested Supplier Information

**Company Name:**
Kontron

**Web Site Address:**
www.kontron.com

**Telephone Number:**
800-523-2320

**Fax Number:**
858-677-0898

## Shipping Information

☑ Allow Partial Shipment
☑ Ship to Address Listed Above

**Ship Method:**
Two-day air

## Itemized List

Currency: USD ($)

Summary:
EIController

| Item Number | Description | | | | | Total with Tax ($) |
|---|---|---|---|---|---|---|
| | Part Number | Quantity | Unit Price ($) | Tax (%) | Pre-Tax Price ($) | |
| 1 | ETX-PM 1.8GHz Celeron-M | | | | | |
| | | 1,000 | 503.00 | 0.000 | 503,000.00 | 503,000.00 |
| 2 | IC 512MB DDR SDRAM SODIMM PC2 | | | | | |
| | | 1,000 | 125.00 | 0.000 | 125,000.00 | 125,000.00 |
| 3 | HSP-PM Threaded Stand Off | | | | | |

| | | | 1.000 | 14.00 | 0.000 | 14,000.00 | 14,000.00 |

| | |
|---|---|
| Subtotal ($) | 642,000.00 |
| Tax (%) | 0.00 |
| Shipping/Handling Cost ($) | 0.00 |
| Total ($) | 642,000.00 |

## Notes

Attn: Tony Hallett - 300 units requested ASAP. The rest to follow within next
12 months based upon demand. Reference Sales Quote#1011431SQ. Quote
date 5/12/2005 Customer#193271

## Signatures

Sign and print your name.

_Kyle Virgin_  Kyle Virgin                    5-12-2005
Employee Signature                            Date

_Jeannie Heffner_                             5-13-05
Approval Signature   _per Steele Moores_       Date

**Exceptional Innovation**

# Purchase Request

| Reference Number: | Priority: | Date Requested: |
|---|---|---|
| JLH0513058 | High | 5/12/2005 |

| Charge To: | Date Required: |
|---|---|
| Exceptional Innovation | 6/15/2005 |

## Submitted By

| Name: | Address Line 1: |
|---|---|
| Kyle Virgin | 480 Olde Worthington Rd. |

| Department: | Address Line 2: |
|---|---|
| Engineering | Suite 350 |

| E-mail Address: | City: |
|---|---|
| kvirgin@exceptionalinnovation.com | Westerville |

| Telephone Number: | State/Province: | Postal Code: |
|---|---|---|
| 614-901-8699 x50207 | Ohio | 43082 |
| | Country/Region: | |
| | USA | |

## Suggested Supplier Information

| Company Name: | Telephone Number: |
|---|---|
| Kontron | 800-523-2320 |

| Web Site Address: | Fax Number: |
|---|---|
| www.kontron.com | 858-677-0898 |

## Shipping Information

☑ Allow Partial Shipment

☑ Ship to Address Listed Above

Ship Method:
Two-day air

## Itemized List

Currency: USD ($)

Summary:
EI WALLPANEL /SET-TOP BOX

| Item Number | Description | | | | | Total with Tax ($) |
|---|---|---|---|---|---|---|
| | Part Number | Quantity | Unit Price ($) | Tax (%) | Pre-Tax Price ($) | |
| 1 | ETXexpress-PM Module: 760-2GHz | | | | | |
| | | 1,000 | 881.00 | 0.000 | 881,000.00 | 881,000.00 |
| 2 | 1024MB DDR2-DIMM | | | | | |
| | | 1,000 | 156.00 | 0.000 | 156,000.00 | 156,000.00 |
| 3 | ETX-Express Heatspreader | | | | | |

| | | 1,000 | 16.00 | 0.000 | 16,000.00 | 16,000.00 |
|---|---|---|---|---|---|---|

| | |
|---|---|
| Subtotal ($) | 1,053,000.00 |
| Tax ($) | 0.00 |
| Shipping/Handling Cost ($) | 0.00 |
| Total ($) | 1,053,000.00 |

## Notes

Attn: Tony Hellett - 300 units requested ASAP. The rest to follow within next
12 months based upon demand. Reference Sales Quote#1011422SQ. Quote
date 5/12/2005 Customer#193271

## Signatures

Sign and print your name.

_Kyle Virgin_ Kyle Virgin                         5-12-2005
Employee Signature                                Date

_Jeannie Hoffman_                                 5-13-05
Approval Signature    _per Dale Moore_            Date

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

FILED
JAMES BONINI
CLERK

|  |  |  |
|---|---|---|
| EXCEPTIONAL INNOVATION, LLC | ) | Case No. 07 JUL 27 PM 1:56  2 : 0 7 CV 7 2 4 |
|  | ) | Judge: U.S. DISTRICT COURT |
| v. | ) | Corporate Disclosure Statement SOUTHERN DIST. OHIO |
| KONTRON AMERICA, INC. | ) | EAST. |
|  | ) |  |

Pursuant to the Corporate Disclosure Statement provisions in Local Civil Rule 7.1.1: Any non-governmental corporate party to a proceeding must file a Corporate Affiliations/Financial Interest statement identifying all of its parent, subsidiary and other affiliate corporations and listing any publicly held company that "controls, is controlled by, or is under common control with a publicly controlled corporation." A party must file the statement upon filing a complaint, answer, motion, response or other pleadings in this Court, whichever occurs first. The obligation to disclose any changes will be continuing throughout the pendency of this case.

In compliance with those provisions, this Corporate Disclosure Statement is filed on behalf of:

KONTRON AMERICA, INC.

1.    Is said party a parent, subsidiary or other affiliate of a publicly owned corporation?

X ____ Yes            _____ No

If the answer is Yes, list below the identity of the parent, subsidiary or other affiliate corporation and the relationship between it and the named party:

Kontron America, Inc. is a wholly owned subsidiary of Kontron AG, a publicly traded company.

2.    Is there a publicly owned corporation, not a party to the case, that has a financial interest in the outcome? _____ Yes        X _____ No

If the answer is Yes, list the identity of such corporation and the nature of the financial interest.

_____        7/27/2007
(Signature of Counsel)                              (Date)

## "Certificate of Service"

### COUNSEL ARE REMINDED OF THEIR CONTINUING OBLIGATION
### TO UPDATE AND SUPPLEMENT THIS STATEMENT.

## CERTIFICATE OF SERVICE

I certify that, on July 27, 2007, I caused this Corporate Disclosure Statement to be served

via regular U.S. mail, postage prepaid, to the following individuals:

Nelson M. Reid
Sommer L. Sheely
Bricker & Eckler LLP
100 South Third Street
Columbus, Ohio 43215

Attorneys for Plaintiff

_____
One of the Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| | Case No. 2:07cv724 |
| Exceptional Innovation, LLC | |
| Plaintiff, | Southern District of Ohio |
| vs. | Case No. 07CVH-06-0765 |
| | Delaware County Common Pleas |
| Kontron America, Inc. | |
| Defendant | |

## <u>NOTICE OF DOCKETING</u>

PLEASE TAKE NOTICE that the above-captioned case has been:

_____ transferred to this District          __X__ removed to this District

at Columbus, has been received and has been docketed on this date.

All further pleadings and correspondence should contain only the case number assigned to the case in this District, as shown above and should be filed in the Columbus office.

If appropriate, your attention is directed to the text of Southern District of Ohio Rule 83.5 regarding designation of Trial Attorneys and the signing of pleadings.

**JAMES BONINI, CLERK**

**BY:   S/Susan Rasoletti_____**
            **Susan Rasoletti, Deputy Clerk**

**Date: July 30, 2007**

Copies to:     Philomena M. Dane, Esq.
                   Jessica D. Goldman, Esq.
                   Nelson M. Reid, Esq.
                   Sommer L. Sheely, Esq.

Form NDKT01 Rev. 04/07/2004

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

EXCEPTIONAL INNOVATION, LLC   )
                                     )      Case No. 2:07cv724
           Plaintiff,         )
                                     )      Judge Sargus
v.                                 )
                                     )      Magistrate Judge Abel
KONTRON AMERICA, INC.         )
                                     )
          Defendant.      )

---

## DEFENDANT KONTRON AMERICA, INC.'S
## MOTION TO TRANSFER VENUE

---

Pursuant to 28 U.S.C. § 1404(a) and Rule 12(b)(3) of the Federal Rules of Civil

Procedure, Defendant Kontron America, Inc. ("Kontron") moves to transfer this case to the

United States District Court for the Southern District of California, as mandated by the forum-

selection clause binding Kontron and Plaintiff Exceptional Innovation, LLC ("Exceptional") and

dictating that this dispute be litigated in San Diego County, California.[1]  A memorandum of law

in support of this motion is attached.

                         Respectfully submitted,

                         s/ Philomena M. Dane
                         Philomena M. Dane (0044064)
                         Jessica D. Goldman (0077049)
                         SQUIRE, SANDERS & DEMPSEY, LLP
                         1300 Huntington Center
                         41 South High Street
                         Columbus, Ohio  43215
                         (614) 365-2700
                         (614) 365-2499
                         pdane@ssd.com
                         jgoldman@ssd.com

---

[1] By filing this motion, Kontron does not waive or otherwise relinquish any and all defenses it may be entitled to
assert in response to the Complaint.

1

Attorneys for Defendant Kontron America,
Inc.

2

<u>**MEMORANDUM OF LAW**</u>

## I.    INTRODUCTION

This action arises out of and relates to two similar component part supply contracts under which Exceptional purchased computer modules from Kontron.  Exceptional refuses to pay Kontron what it owes under those contracts.  Exceptional's sole claim is for a declaration that it should be excused from performing its payment obligations to Kontron.  Kontron is counterclaiming for Exceptional's breaches of contract.  Because Exceptional and Kontron's contracts require this dispute to be filed, litigated and tried only in a court in San Diego, California, this Court should enforce the parties' forum selection clause and transfer this case to the appropriate and agreed venue: the United States District Court for the Southern District of California.

## II.    BACKGROUND AND PROCEDURAL FACTS

Kontron and Exceptional's negotiations and business relationship began in late 2004, when Exceptional expressed an interest in purchasing products from Kontron.  <u>See</u> Affidavit of Anthony T. Hallett ("Hallett Aff.") at ¶ 4, attached hereto as Exhibit A.  After testing several products from different component part suppliers, Exceptional decided to purchase certain computer modules from Kontron for integration into Exceptional's products.  <u>See id.</u> at ¶¶ 5-7.

On or about May 12, 2005, Kontron issued two "Sales Quotes" to Exceptional setting forth the terms under which Kontron was offering to sell modules to Exceptional.  <u>Id.</u> at ¶ 8.  Each Sales Quote expressly incorporated by reference Kontron's general terms and conditions by stating: "Terms and Conditions are printed on the reverse side of the hard copy quote.  Terms and Conditions may also be found on our website."  <u>Id.</u> at ¶ 8 and Exhibit 1.  The Sales Quotes and the Terms and Conditions are referred to collectively as the "Agreement."

3

On or about May 13, 2005, Exceptional accepted Kontron's offer and all the terms of the Agreement, including the general Terms and Conditions, without objection. Exceptional issued two Purchase Requests (which are attached to the Complaint) evidencing its acceptance of the Agreement. The Agreement was negotiated freely and entered into voluntarily by Exceptional and Kontron as an arm's length transaction. Both parties expressly agreed to all the Agreement's terms without objection. See Hallett Aff. at ¶¶ 11-12.

Later, in March 2006, Exceptional came back to Kontron and re-negotiated a reduced price for the remaining modules to be delivered under the Agreement. On March 22, 2006, Kontron issued Exceptional an updated Sales Quote with the reduced pricing. See Hallett Aff. at ¶ 22. and Exhibit 1. At that time, Exceptional did not object to or attempt to re-negotiate any of the other terms of the Agreement. See Hallett Aff. at ¶ 23.

Among the Agreement's terms, is the following mandatory forum selection and California governing law clause requiring that any dispute relating to the Agreement be filed and litigated in the state or federal courts of San Diego County, California:

> Governing Law and Venue. This Agreement shall be construed and enforced according to the laws of the State of California regarding contracts made and wholly performed in California. Kontron and BUYER irrevocably submit to the jurisdiction of the state and/or federal courts in San Diego County, California for any action or proceeding regarding this Agreement.

See Section 19 of Terms and Conditions, Exhibit 1 to Hallett Aff. In addition to requiring a San Diego venue, the forum selection clause prohibits any party from later attempting to revoke their agreed choice of forum. The reduced price Sales Quote and Kontron's invoices to Exceptional also incorporated all the Terms and Conditions, including this forum selection clause. See Exhibits 1 and 3 to Hallett Aff. Although it had multiple opportunities to do so, Exceptional

4

never objected to the forum selection clause and always agreed and accepted all of Kontron's Terms and Conditions. See Hallett Aff. at ¶¶ 22-23.

Nevertheless and ignoring the forum selection clause to which it agreed on multiple occasions, on June 27, 2007, Exceptional filed a complaint seeking a declaratory judgment against Kontron in Ohio state court. In its Complaint, Exceptional asked the court to declare that Kontron materially breached the terms of the Agreement and to excuse Exceptional from paying the outstanding balance owed to Kontron under the Agreement in an amount exceeding $210,000 for goods that it received and accepted.[2]

Kontron, which was served with the state court complaint on June 29, 2007, timely removed the action to this Court on July 27, 2007, invoking the Court's diversity jurisdiction. See 28 U.S.C. § 1441(a); Kontron's Notice of Removal.

## III.    THE COURT SHOULD ENFORCE THE PARTIES' AGREEMENT AND TRANSFER THIS CASE TO THE SOUTHERN DISTRICT OF CALIFORNIA

In diversity actions, federal law governs the enforceability of a forum selection clause.[3] See Stewart Org., Inc. v. Rioch Corp., 487 U.S. 22, 28 (1988). When a party moves to enforce a forum selection clause by seeking transfer to the contractually specified forum, a federal court determines whether transfer is proper within the framework of 28 U.S.C. § 1404(a). See id. at 32; see also Kerobo v. Southwestern Clean Fuels Corp., 285 F.3d 531, 539 (6th Cir. 2002) ("Section 1404 is broad enough to control the issue of whether a forum-selection clause should be given effect").

---

[2] Exceptional owes Kontron over $210,000 (excluding interest, costs and attorneys' fees) for products that Kontron shipped to Exceptional pursuant to the Agreement. See Hallett Aff. at ¶ 20. Exceptional's refusal to remit payment for goods shipped is, in fact, a material breach of the parties' Agreement for which Kontron has counterclaimed.
[3] In any event, California, Ohio and federal law treat forum selection clauses in a similar and favorable manner. See Shell v. R.W. Sturge, Ltd., 55 F.3d 1227, 1229 (6th Cir. 1995); Smith, Valentino & Smith, Inc. v. Superior Court of Los Angeles County, 17 Cal.3d 491, 495 (1976) ("we are in accord with the modern trend which favors enforceability of such forum selection clauses").

Section 1404(a) provides, in pertinent part, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). In Stewart, the Supreme Court noted that Section 1404(a) is intended to give district courts the discretion to adjudicate motions for transfer based upon individualized, case-by-case consideration of convenience and fairness that contemplates weighing and balancing a number of case-specific factors. See Stewart, 487 U.S. at 29.

Most importantly, the presence of a forum selection clause weighs heavily, if not conclusively, in the transfer analysis. Commenting on the role that such a clause plays within Section 1404 considerations, the Supreme Court has held: "The presence of a forum selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus." Stewart, 487 U.S. at 29. In concurring, Justice Kennedy emphasized the point even further, explaining that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." Id. at 33 (Kennedy, J., concurring).

Indeed, a forum selection clause fundamentally alters the traditional allocation of burdens in the context of a motion to transfer. In the absence of a forum selection clause, the plaintiff's choice of forum is ordinarily entitled to substantial deference, and the burden typically rests on the movant to establish that transfer is warranted. In contrast, however, the burden falls heavily on the plaintiff when the parties have previously executed a forum selection clause. See Tieman v. Victaulic Co., 2007 U.S. Dist. LEXIS 7036 (S.D. Ohio 2007) (granting Section 1404 motion to transfer because plaintiff was unable to carry its burden to show that forum was so inconvenient that it should not be bound by their contractual choice of forum); Michigan Paytel,

6

Inc. v. Voiceware Systems, Inc., 2007 U.S. Dist. LEXIS 18422, *5 (E.D. Mich. 2007) (granting

Section 1404 motion to transfer pursuant to forum selection clause because plaintiff failed to

carry its burden).

In Wm. R. Hague, Inc. v. Sandburg, 468 F. Supp. 2d 952 (S.D. Ohio 2006), the Southern

District of Ohio recently held that forum selection clauses should be upheld except under rare

circumstances that are not present here:

> The U.S. Supreme Court has stressed the importance of the enforcement of forum
> selection clauses as being necessary in light of present-day commercial realities.
> **A forum selection clause should be enforced absent a strong showing that it**
> **should be set aside.** A forum selection clause will be held enforceable unless it
> can be shown that enforcement would be unreasonable or unjust, or that the clause
> was invalid due to fraud or overreaching.

Id. at 960 (emphasis added) (citations omitted). The Sandburg court further noted that the party

opposing the enforcement of a forum selection clause bears the heavy burden of overcoming the

weight accorded the clause. Id. at 963 citing Kerobo, 285 F.3d at 537.

In determining the validity of a particular forum selection clause, the Court will consider

the following factors: (1) the commercial nature of the contract, (2) the absence of fraud or

overreaching, and (3) whether enforcement of the forum selection clause would be unreasonable

or unjust. See Preferred Capital, Inc. v. Associates in Urology, 453 F.3d 718, 721 (6th Cir. 2006)

(reversing the district court's holding that commercial contract's forum selection clause is

unenforceable). As discussed below, none of the factors comes close to rising to the high level

necessary to invalidate the forum selection clause and the Court should enforce the parties'

agreement to the letter.

### A.    The Agreement Is A Commercial Contract.

As a threshold matter, "[c]ommercial forum selection clauses between for-profit business

entities are *prima facie* valid." Id. It is not disputed that here, the parties are arm's length, for-

profit business entities. As such, consistent with Sixth Circuit law, the forum selection clause

contained in the Agreement is valid. See also, M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1,

15 (1972) and General Electric Co. v. Siempelkamp, 29 F.3d 1095, 1099 (6th Cir. 1994)

(rejecting plaintiff's attempts to avoid litigating in Germany, the forum identified in the forum

selection clause, as opposed to Ohio, on grounds that plaintiff, a sophisticated business, had

agreed to the deal). As a commercial contract, the forum selection clause in the Agreement here

is *prima facie* valid and should be enforced.

> **B.    Exceptional Cannot Prove That The Agreement's Forum Selection Provision
> Was Procured By Fraud Or Overreaching Necessary To Invalidate The
> Parties' Contract.**

Under limited circumstances, which do not exist here, courts have occasionally

invalidated forum selection clauses that were the result of fraud or overreaching. See Preferred

Capital, 453 F.3d at 722. Overreaching has been defined as, the "act or an instance of taking

**unfair** commercial advantage of another." See Buckeye Check Cashing of Ariz. V. Lang, 2007

U.S. Dist. LEXIS 12746, *14 (S.D. Ohio 2007) (emphasis added). Most courts have interpreted

overreaching to come into play only when the parties are of vastly unequal bargaining power,

such as employee and employer. See, id.

Here, both contracting parties were able to defend their interests adequately in any

contractual negotiations. Exceptional is an experienced manufacturer and was able to purchase

substantially identical product elsewhere. See Hallett Aff. at ¶ 7. Kontron supplied component

parts to Exceptional. The supply Agreement was freely negotiated at arm's length. If

Exceptional did not like any of the terms, including the forum selection clause, it was free to

object, negotiate different terms, or use a different supplier entirely. It did not. Instead,

8

Exceptional voluntarily contracted with Kontron. See Hallett Aff. at ¶ 11. Exceptional is bound

by all the terms of the Agreement, including the agreed San Diego forum.

Additionally, there is no allegation, nor even the hint of a claim, that the forum selection

clause in the Agreement was procured by fraud or other improper conduct. See Ricoh, 870 F.2d

at 573 (relying on fact that plaintiff had "neither alleged nor shown the presence of fraud, duress,

misrepresentation, or other misconduct that would bar the clause's enforcement"). Exceptional

has made no claim of fraud whatsoever, and it has certainly not alleged that the forum selection

clause itself was procured through fraudulent means. To the contrary, Exceptional admits that

the parties had an enforceable contract and alleges that Kontron breached it. See Complaint, ¶ 40.

Exceptional goes on to allege that the reason that Exceptional should be excused from its

obligations to pay under the Agreement is because Kontron allegedly materially breached the

Agreement. Exceptional is bound by these allegations. And Exceptional cannot alter the

Complaint's allegations now and raise some kind of fraud claim just to manipulate the forum.

Accordingly, no basis exists to conclude that the forum selection clause is somehow invalid or

voidable.

## C.     The Agreement's Forum Selection Clause Is Reasonable.

Third, the law is clear that an otherwise valid forum selection clause must be upheld

unless it is "unreasonable or unjust." See Preferred Capital, 453 F.3d at 722. Under this last step

in the analysis, "courts are to determine whether the chosen forum is so inconvenient as to, in

effect, afford no remedy at all, thus depriving litigants of their day in court." Id. and see Bremen,

407 U.S. at 19. And a finding of unreasonableness must be based on more than mere

inconvenience to the party seeking to avoid the requirements of the forum selection clause. See

Bremen, 407 U.S. at 17-19.

Here, Exceptional simply cannot argue credibly that it would be deprived either of its day in court or of an appropriate remedy by the forum selection clause requiring litigation in a California court. The only possible inconvenience to Exceptional would lie in its having to litigate in the contractually agreed forum and travel to San Diego for trial.

But, the Sixth Circuit has found that this type of inconvenience and expense is not unreasonable or unjust. See Interamerican Trade Corp. v. Companhia Fabricadora de Pecas, 973 F. 2d 487 (6th Cir. 1992) (upholding a forum selection clause against an Ohio plaintiff setting the forum in a Brazilian court). As another Sixth Circuit court noted, a party has the right to the benefit of its bargain unless it would unreasonable or unjust to enforce the terms of the agreement. See Preferred Capital, 453 F.3d at 723. The Court went on to state:

> Defendant is a commercial entity, and should have realized the implications of agreeing to a forum selection clause....Having failed to object to the terms of the forum selection clause, Defendant now claims it is disadvantageous for it to have to litigate this case in Ohio [rather than in Florida]. While Defendant may be dissatisfied with the litigation forum, it is not our task to save Defendant from the consequences of an agreement it freely entered into.

Id. at 723-724; see also Michigan Paytel, Inc., 2007 U.S. Dist. LEXIS at *9-10 (rejecting plaintiff's argument that it would be expensive to litigate outside of Michigan, the court stated, "As for plaintiff's argument that litigating in Florida is unfair, I also find that unpersuasive. Plaintiff knew it was agreeing to litigate any disputes regarding this contract in Florida. If this arrangement strains its resources, it has no one but itself to blame.")

Just like the Sixth Circuit, California Courts too have considered, and consistently rejected, the notion that expense and travel render a forum so inconvenient to overcome the binding effect of a forum selection clause. See, e.g., Smith, supra, 17 Cal.3d at 495-6 ("Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the plaintiff received under the contract consideration for these things," citation omitted).

Enforcing the forum selection clause is consistent with the parties' commercial deal, which reflects a rationale choice of forum. Kontron's principal place of business is in San Diego County, California. Many of the computer modules were assembled in California and shipped from California. See Hallett Aff. at ¶¶ 17 and 20. Many of the documents and witnesses are in California as well. Id. at ¶¶ 16 and 18. For the invoices that Exceptional paid under the Agreement, Exception made those partial payments to Kontron in San Diego County. Id. at ¶ 19. That trial in San Diego would be more expensive to Exceptional than trial in Ohio is not material. The reverse is true for Kontron. What precludes an Ohio venue however is that Exceptional irrevocably submitted this dispute to a court in San Diego.

Moreover, the Agreement was entered into and performed in California. Exception and Kontron agreed that the Agreement "shall be construed and enforced according to the laws of the State of California regarding contracts made and wholly performed in California." See Agreement, § 19 (Exhibit 1 to Hallett Aff.). Under California state law, the only proper venue for this dispute is San Diego County. See Cal. Code of Civ. Proc. § 395(a) ("if a defendant has contracted to perform an obligation in a particular county, the superior court in the county where the obligation is to be performed, where the contract in fact was entered into, or where the defendant or any defendant resides at the commencement of the action is a proper court for the trial of an action founded on that obligation, and the county where the obligation is incurred is the county where it is to be performed, unless there is a special contract in writing to the contrary.")

Finally, public policy in the Sixth Circuit and under California and Ohio law strongly favors enforcing forum selection clauses. See, e.g., Interamerican Trade Corp., 973 F.2d at 490; Creditors Collection Bureau v. Access Data, Inc., 820 F. Supp. 311, 312 (W.D.K.Y. 1993);

Detroit Coke Corp. v. NKK Chemical USA, 794 F. Supp. 214, 217-219 (E.D. Mich. 1992);

Kennecorp Mortgage Brokers v. Country Club Convalescent Hosp., 66 Ohio St.3d 173, 176

(1993); Smith, supra, 17 Cal.3d at 495-6 ("No satisfying reason of public policy has been

suggested why enforcement should be denied a forum selection clause appearing in a contract

entered into freely and voluntarily by parties who have negotiated at arm's length.")

## IV.     CONCLUSION

All the factors overwhelmingly weigh in favor of the Court finding that the Agreement's

forum selection clause is valid and granting Kontron's Motion to Transfer to federal court in San

Diego County.  As a voluntary commercial transaction, Exceptional is bound by its irrevocable

agreement to litigate this dispute in California.  The Court should see through Exceptional's

forum shopping and deliberate breach of the Agreement's specified venue.  Kontron respectfully

requests that the Court enter an Order transferring this case, pursuant to 28 U.S.C. § 1404(a) and

Federal Rule of Civil Procedure 12(b)(3), to the United States District Court for the Southern

District of California.

Respectfully submitted,

s/ Philomena M. Dane
Philomena M. Dane (0044064)
Jessica D. Goldman (0077049)
SQUIRE, SANDERS & DEMPSEY, LLP
1300 Huntington Center
41 South High Street
Columbus, Ohio  43215
(614) 365-2700
(614) 365-2499
pdane@ssd.com
jgoldman@ssd.com

Attorneys for Defendant Kontron America, Inc.

12

## CERTIFICATE OF SERVICE

I certify that, on August 3, 2007, I caused this Motion to Transfer to be served via the

Court's ECF system to the following individual:

Nelson M. Reid
Sommer L. Sheely
Bricker & Eckler LLP
100 South Third Street
Columbus, Ohio 43215

Attorneys for Plaintiff


s/Philomena M. Dane
One of the Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | | |
|---|---|---|
| EXCEPTIONAL INNOVATION, LLC | ) | |
| | ) | Case No. 2:07cv724 |
| Plaintiff, | ) | |
| | ) | Judge Sargus |
| v. | ) | |
| | ) | Magistrate Judge Abel |
| KONTRON AMERICA, INC. | ) | |
| | ) | |
| Defendant. | ) | |

---

### AFFIDAVIT OF ANTHONY T. HALLETT

---

| | |
|---|---|
| STATE OF CALIFORNIA | ) |
| | ) ss |
| COUNTY OF SAN DIEGO | ) |

Now comes Anthony T. Hallett - being of lawful age and after being first duly sworn, hereby states as follows:

1.    My name is Anthony T. Hallett. I am a Product Manager with Defendant Kontron America, Inc. ("Kontron"). I have held that position since approximately May 2006. Previously, from October 2000 through May 2006, I was an Internal Sales Engineer with Kontron. I have knowledge of the facts presented in this Affidavit from my personal knowledge or based on my review of Kontron's books and records. I make this Affidavit in support of Kontron's motion to transfer venue.

Exceptional Selects Kontron As One Of Its Component Suppliers

2.    Kontron develops, produces and markets various products in selected enterprises, concentrating primarily on the telecommunications, automation and mobile computer markets. With part of its business dedicated to partnering with original equipment manufacturers

("OEMs"), Kontron offers a broad range of Embedded Computer Technology (ECT) and services, including system integration and various levels of product customization.

3.      To the best of my knowledge, Plaintiff Exceptional Innovation, LLC ("Exceptional") is an OEM in the business of designing and selling home entertainment and automation systems, has been in that business for many years and has experience in the industry.

4.      In late 2004, Exceptional expressed an interest in purchasing products from Kontron, specifically certain component parts that would be integrated into Exceptional's systems and products. At the time, I understood that Exceptional was in negotiations with and testing the product offerings of other component part suppliers as well.

5.      Over a period of several months, Kontron and Exceptional discussed each other's products and services. I participated in many of these discussions and meetings, some of which took place at Kontron's offices in San Diego County, California.

6.      Kontron was not Exceptional's only component part supplier. Based on my dealings with Exceptional, I understand that Exceptional has in the past and currently has other companies that it buys components from.

7.      Ultimately, Exceptional decided to purchase certain computer modules from Kontron for integration into certain of Exceptional's products. Based on my knowledge and experience with Exceptional and Kontron, Exceptional could have purchased similar or comparable computer modules from one of Kontron's competitors instead of purchasing Kontron's products.

The Agreement

8.      On or about May 12, 2005, Kontron issued two "Sales Quotes" to Exceptional setting forth the proposed terms under which Kontron was offering to sell the modules to

Exceptional. I prepared these two Sales Quotes and sent them to Exceptional's Kyle Virgin. True and accurate copies of these two Sales Quotes are attached to this Affidavit as Exhibit 1, with one exception. The original Sales Quotes had a "Quote Date" of approximately May 12, 2005. When the Sales Quotes were printed from our system on June 29, 2007, the "Quote Date" was automatically replaced with the print date. With the sole exception of this Quote Date difference, the two Sales Quotes attached as Exhibit 1 are identical to the ones that I sent to Exceptional on May 12, 2005.

9.      Each Sales Quote expressly incorporated by reference Kontron's general terms and conditions by stating: "Terms and Conditions are printed on the reverse side of the hard copy quote. Terms and Conditions may also be found on our website." See Exhibit 1. A true and accurate copy of Kontron's Terms and Conditions effective as of the date of the Sales Quotes is included in Exhibit 1 to this Affidavit. I refer to the Sales Quotes and the Terms and Conditions collectively as the "Agreement" for the rest of this Affidavit.

10.     On or about May 13, 2005, Exceptional accepted Kontron's offer and all the terms of the Agreement, including the general Terms and Conditions, without objection. Exceptional issued two Purchase Requests evidencing its acceptance of the Agreement. True and accurate copies of these two Purchase Requests are attached to this Affidavit as Exhibit 2. For reference purposes, I also understand that they were attached to Exceptional's Complaint.

11.     I (as well as other Kontron representatives) was a party to the negotiations between Kontron and Exceptional leading up to the Agreement. The Agreement was negotiated freely and entered into voluntarily by Exceptional and Kontron. This was an arm's length, commercial transaction.

12.     Exceptional expressly agreed to the terms of the Agreement without objection.

13.    Among the Agreement's terms, was the following:

> Governing Law and Venue. This Agreement shall be construed and enforced according to the laws of the State of California regarding contracts made and wholly performed in California. Kontron and BUYER irrevocably submit to the jurisdiction of the state and/or federal courts in San Diego County, California for any action or proceeding regarding this Agreement.

See Exhibit 1, § 19.

14.    Exceptional never made any objection to the Agreement's selection of the state and federal courts in San Diego County, California as the exclusive venue for any action regarding the Agreement.

San Diego County Venue

15.    Kontron proposed a San Diego County venue for any future dispute with Exceptional because of Kontron's connections to and the Agreement's nexus with California.

16.    Kontron's principal place of business is in San Diego County, California. I work out of Kontron's offices in San Diego County.

17.    Many of the computer modules that Kontron delivered to Exceptional under the Agreement were assembled in San Diego County.

18.    Many of the documents and witnesses relevant to the dispute between Kontron and Exceptional are located in San Diego County.

19.    Exceptional sent payments to Kontron in San Diego County under the Agreement.

After Getting A Price Reduction, Exceptional Still Owes Kontron For Product Delivered

20.    There is currently an outstanding balance exceeding $210,000 that Exceptional owes to Kontron for products that Kontron shipped from San Diego County to Exceptional under the Agreement and Kontron's November 2006, December 2006 and January 2007 invoices

(collectively, the "Invoices"). True and correct copies of the Invoices are attached to this Affidavit as Exhibit 3.

21. Consistent with the Agreement, each of the Invoices incorporated Kontron's general terms and conditions, stating: "See Terms and Conditions on web site." See Exhibit 3.

22. The Invoices also reflect a reduction in the prices that Exceptional had originally agreed to pay for Kontron's products under the Agreement. On March 22, 2006, I prepared an updated Sales Quote at the reduced price, which was sent to Exceptional on March 23, 2006 and applied to outstanding orders. As with the original Sales Quotes and the Invoices, the updated Sales Quote incorporated Kontron's Terms and Conditions as a necessary part of the contract. A true and accurate copy of this March 22, 2006 Sales Quote is included in Exhibit 1 to this Affidavit.

23. At the time that Exceptional received a price reduction, Exceptional did not object to or request re-negotiation of any of the other terms of the Agreement. Exceptional did not object to the forum selection clause in the Agreement.

**FURTHER AFFIANT SAYETH NAUGHT.**

ANTHONY T. HALLETT

Sworn to before me and subscribed in my presence by Anthony T. Hallett on this 3rd day of August, 2007.

State of California
County of San Diego
Subscribed and sworn (or affirmed) to me
this _____ day of _____ 20___

JOHN C. VILLA, Notary Public

Notary Public

JOHN C. VILLA
COMM. #1511706
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
My Comm. Expires September 5, 2008

Kontron America
14118 Stowe Drive
Poway, CA 92064-7147
www.kontron.com
email: sales@us.kontron.com
Phone: 800-523-2320 Fax: 858-677-0898

| Page Number | 1 |
|---|---|
| Quote Date | 6/28/2007 |
| Customer | 193271 |
| Quote Number | 1011422    SQ |
| RFQ | |

# SALES QUOTE

ATTENTION: KYLE VIRGIN

EXCEPTIONAL INNOVATION

480 OLDE WORTHINGTON RD.

SUITE 350

WESTERVILLE OH 43082

Phone:    614 901-8899 Ext. 18343
Fax:    614 901-8898

Quoted By:    TONY HALLETT

E-Mail:    kvirgin@exceptionalinnovation.com

Quote Expires:    6/11/2005

| INCOterms: | Shipping | Terms |
|---|---|---|
| EX WORKS POWAY, CA | Instructions | Net 30 Days |

| Line # | Description | Item Number | UM | Quantity | Price | Extended Price |
|---|---|---|---|---|---|---|
| 1.000 | ETXexpress-PM Module 760-2GHz | 38001-0000-20-2 | EA | 1 | 1,175.00 | 1,175.00 |

Discount Schedule:
1Pc $1175
100Pcs $1068
1000Pcs $881

| 2.001 | 512MB DDR2-DIMM | 97011-5120-00-0 | EA | 1 | 170.00 | 170.00 |

Discount Schedule:
1Pc $170
100Pcs $140
1000Pcs $125

| 3.001 | 1024MB DDR2-DIMM | 97011-1024-00-0 | EA | 1 | 195.00 | 195.00 |

Discount Schedule:
1Pc $195
100Pcs $163
1000Pcs $156

| 4.000 | ETX-Express Heatspreader | 38001-0000-99-2 | EA | 1 | 18.00 | 18.00 |

Preliminary Discount Schedule:
1Pc $18
100Pcs $17
1000Pcs $16

| | Sales Tax | |
|---|---|---|
| | Quote Total | 1,558.00 |

System configurations may include RoHS compliant and non RoHS compliant products. Please contact your Kontron Sales Representative for details.

All pricing is in U.S. Dollars.

Kontron America
14118 Stowe Drive
Poway, CA 92064-7147
www.kontron.com
email: sales@us.kontron.com
Phone: 800-523-2320  Fax: 858-677-0898

| | |
|---|---|
| Page Number | 2 |
| Quote Date | 6/29/2007 |
| Customer | 193271 |
| Quote Number | 1011422    SQ |
| RFQ | |

## SALES QUOTE

ATTENTION: KYLE VIRGIN

EXCEPTIONAL INNOVATION

480 OLDE WORTHINGTON RD.

SUITE 350

WESTERVILLE OH 43082

Phone:  614 901-8899 Ext. 18343
Fax:      614 901-8898

Quoted By:    TONY HALLETT

E-Mail:  kvirgin@exceptionalinnovation.com

Quote Expires:    6/11/2005

| INCOterms: | Shipping | Terms |
|---|---|---|
| EX WORKS POWAY, CA | Instructions | Net 30 Days |

| Line # | Description | Item Number | UM | Quantity | Price | Extended Price |
|---|---|---|---|---|---|---|

- Price includes a two-year factory warranty.
- Above products may be subject to export control for certain destinations.
- Lifetime technical support is included for all standard products.
- Kontron can provide Custom Chassis, Data Acquisition Boards, and Special Testing Services. Contact your sales engineer for a QUOTE.
- Kontron is an Authorized Intel Certified Dealer.
- The prices and terms on this quotation are NOT subject to verbal changes or other agreements unless approved in writing by Kontron. All quotations and agreements are contingent upon acts of God, availability of materials and all other causes beyond our control.
- Prices are based upon costs and conditions existing on the date of quotation and are subject to change by Kontron before final acceptance.
- Typographical and stenographic error are subject to correction.
- Conditions not specifically stated herein shall be governed by established trade customs. Terms inconsistent with those stated herein, which may appear on Purchaser's formal order, will NOT be binding on Kontron.
- Change orders that are initiated by the customer that cause the system to be de-integrated will be assessed a charge of $100.00 per system.
- Change Orders or Cancellations on special order products may be assessed additional charges, such as additional NRE fees or a cancellation fee.
- Terms and Conditions are printed on the reverse side of the hard copy quote. Terms and Conditions may also be found on our web site.

Kontron America
14118 Stowe Drive
Poway, CA 92064-7147
www.kontron.com
email: sales@us.kontron.com
Phone: 800-523-2320  Fax: 858-677-0898

| Page Number | 1 |
| Quote Date | 6/29/2007 |
| Customer | 193271 |
| Quote Number | 1011431 SQ |
| RFQ | |

# SALES QUOTE

ATTENTION: KYLE VIRGIN

EXCEPTIONAL INNOVATION

480 OLDE WORTHINGTON RD.

SUITE 350

WESTERVILLE OH 43082

Phone: 614 901-8899 Ext. 18343
Fax: 614 901-8896

E-Mail: kvirgin@exceptionalinnovation.com

Quoted By:    TONY HALLETT

Quote Expires:    6/8/2005

| INCOterms: | Shipping | Terms |
| EX WORKS POWAY, CA | Instructions | Net 30 Days |

| Line # | Description | Item Number | UM | Quantity | Price | Extended Price |
|---|---|---|---|---|---|---|
| 1.001 | ETX-PM 1.0GHZ CELERON-M | 18008-0000-10-1 | EA | 1 | 656.00 | 656.00 |

Preliminary Discount Schedule:
1Pc $656
100Pcs $601
1000Pcs $503

| 2.001 | HSP-PM THREADED STAND OFF | 18008-0000-99-0 | EA | 1 | 17.00 | 17.00 |

Preliminary Discount Schedule:
1Pc $17
100Pcs $16
1000Pcs $14

| 3.000 | IC 512 MB DDR SDRAM SODIMM PC2 | 97007-5120-00-0 | EA | 1 | 170.00 | 170.00 |

Preliminary Discount Schedule:
1Pc $170
100Pcs $140
1000Pcs $125

| Sales Tax | |
| Quote Total | 843.00 |

System configurations may include RoHS compliant and non RoHS compliant products. Please contact your Kontron Sales Representative for details.

All pricing is in U.S. Dollars.
- Price includes a two-year factory warranty.
- Above products may be subject to export control for certain destinations.
- Lifetime technical support is included for all standard products.
- Kontron can provide Custom Chassis, Data Acquisition Boards, and Special Testing Services. Contact your sales engineer for a QUOTE.
- Kontron is an Authorized Intel Certified Dealer.
- The prices and terms on this quotation are NOT subject to verbal changes or other agreements unless approved in writing by Kontron. All quotations and agreements are contingent upon acts of God, availability of materials and all other causes beyond our control.
- Prices are based upon costs and conditions existing on the date of quotation and are subject to change by Kontron before final acceptance.

| Kontron America | | Page Number | 2 | |
| 14118 Stowe Drive | | Quote Date | 6/29/2007 | |
| Poway, CA 92064-7147 | | Customer | 193271 | |
| www.kontron.com | | Quote Number | 1011431 | SQ |
| email: sales@us.kontron.com | | RFQ | | |
| Phone: 800-523-2320  Fax: 858-677-0898 | | | | |

## SALES QUOTE

ATTENTION: KYLE VIRGIN

EXCEPTIONAL INNOVATION

480 OLDE WORTHINGTON RD.

SUITE 350

WESTERVILLE OH 43082

| Phone: | 614 901-8899 Ext. 18343 | | | |
|---|---|---|---|---|
| Fax: | 614 901-8896 | | **Quoted By:** | TONY HALLETT |
| E-Mail: | kvirgin@exceptionalinnovation.com | | **Quote Expires:** | 6/8/2005 |

| INCOterms: | Shipping | Terms |
|---|---|---|
| EX WORKS POWAY, CA | Instructions | Net 30 Days |

| Line # | Description | Item Number | UM | Quantity | Price | Extended Price |
|---|---|---|---|---|---|---|

- Typographical and stenographic error are subject to correction.

- Conditions not specifically stated herein shall be governed by established trade customs. Terms inconsistent with those stated herein, which may appear on Purchaser's formal order, will NOT be binding on Kontron.

- Change orders that are initiated by the customer that cause the system to be de-integrated will be assessed a charge of $100.00 per system.

- Change Orders or Cancellations on special order products may be assessed additional charges, such as additional NRE fees or a cancellation fee.

- Terms and Conditions are printed on the reverse side of the hard copy quote. Terms and Conditions may also be found on our web site.



# KONTRON AMERICA, INCORPORATED
## TERMS AND CONDITIONS OF SALES

**1. Scope.** The following terms and conditions ("Agreement") apply to the sale of all Products manufactured or distributed by Kontron America, Incorporated, a Delaware corporation, including its affiliates ("Kontron"), to the undersigned BUYER (the "Products").

**2. Purchase Orders.** BUYER shall issue to Kontron firm Purchase Orders for each purchase required. All Purchase Orders are subject to credit approval and confirmation of delivery schedule by Kontron prior to acceptance by Kontron and may require credit enhancement, such as advanced payment, letter of credit or other guarantee, prior to acceptance. Kontron's acceptance of a purchase order shall only occur upon delivery to BUYER of a written acceptance executed by Kontron's duly authorized representative. In the event of any conflict between this Agreement and any Purchase Order or other document, the terms of this Agreement shall prevail.

**3. Prices.** The prices for Products are set forth in Kontron's quotation which can be changed at any time upon prior written notice to BUYER. The quoted prices are exclusive of all taxes, freight, duties, and other applicable charges which shall be paid by BUYER. Any taxes, duties, fees, charges or assessments of any nature levied by any governmental authority in connection with any transaction under this Agreement, whether levied against BUYER, against Kontron or its employees, or against any of Kontron's subcontractors or their employees, shall be the responsibility of BUYER and shall be paid directly by BUYER to the governmental authority concerned. If Kontron or its subcontractors, or the employees of either, are required to pay any such levies, fines, penalties, or assessments, then BUYER shall reimburse such payor promptly upon submission of the applicable document.

**4. Changes.** Within thirty (30) days of receipt from BUYER of a request for changes within the general scope of work under an accepted purchase order, Kontron shall respond in writing stating the consequences of such requested change. If such requested change causes an increase or decrease in the cost of the Products and/or the time required for performance, an equitable adjustment reasonably determined by Kontron shall be made in the price and/or the time required for performance. Such price adjustment may include but not be limited to any rework charges associated with the requested change. Kontron shall have the right in its sole discretion to accept or reject any such requested changes and shall not be required to proceed with the change unless the parties have mutually agreed in writing. All approved change orders shall be considered amendments to the applicable purchase order. If a requested change is not accepted by Kontron, the original purchase order shall remain in effect.

**5. Payments.**

**(a) Open Account.** Upon Kontron's approval of BUYER's credit, if no credit enhancement is required, all payments shall be made in United States Dollars, net thirty (30) days from date of invoice. All payments received after thirty (30) days shall accrue interest at the rate equal to the lesser of one percent (1.5%) per month or the maximum legally permissible rate.

**(b) Letter of Credit.** All payments shall be made in United States Dollars and pursuant to an irrevocable Letter of Credit issued by a bank approved by Kontron with conditions acceptable to Kontron. The Letter of Credit shall be established at BUYER's sole expense and BUYER shall be solely responsible for all charges and fees associated with the Letter of Credit, including without limitation all fees for the electronic transfer of funds. Each Letter of Credit shall cover the full amount of the relevant purchase order or contract (and any transportation or other expenses that Kontron has previously agreed to prepay on BUYER's behalf). Kontron shall have the right to require amendments to the Letter of Credit prior to releasing Products under any purchase order submitted. Open account terms will be considered by Kontron, in Kontron's sole discretion, if BUYER possesses a first-class standing in the operating country and can demonstrate favorable trade arrangements with other U.S. suppliers. BUYER agrees, upon request, to provide Kontron with financial information acceptable to Kontron to assist Kontron in determining from time to time the credit terms, if any, that Kontron may extend to BUYER. Kontron reserves the right to revoke open account terms at any time based on unsatisfactory payment performance or credit risk in Kontron's sole discretion, in which event BUYER agrees to provide a Letter of Credit or such other credit enhancement as may be required by Kontron.

**6. Transportation.** All sales and deliveries of Products shall be "FCA Kontron's authorized shipping point" as defined in Incoterms 1990, as amended. BUYER is responsible for all transportation, insurance, duties and

other applicable expenses. These expenses shall be paid by BUYER and shall be added to Kontron's invoice to BUYER if prepaid by Kontron.

**7. Title and Risk of Loss.** Title to the Products shall pass to BUYER upon delivery of the Products to a common carrier. BUYER hereby grants Kontron a security interest in the Products until the invoice covering the Products has been paid in full. BUYER also irrevocably appoints Kontron as its lawful attorney-in-fact coupled with an interest with full authority to execute and file UCC-1's and any other necessary documents to perfect and enforce its security interest. Kontron shall bear the risk of loss or damage until the Products are delivered to a common carrier. Upon delivery to a common carrier, BUYER shall bear the entire risk of loss and shall be liable for all loss or damage to the Products.

**8. Inspection.** Unless BUYER notifies Kontron in writing within thirty (30) days from date of shipment of any Products that said Products are rejected, they will be deemed to have been accepted by BUYER. In order for the notice of rejection to be effective, BUYER must also specify in detail the reason(s) why the Products are being rejected. BUYER shall only have the right to reject Product for "defects," as defined in Section 10 below.

**9. Force Majeure.** Kontron shall not be liable for any failure to perform or other loss due to unforeseen circumstances or causes beyond its control, including without limitation acts of God, strikes, material and/or transportation shortages, natural casualties, governmental regulations, war, fire, flood, disasters and civil unrest.

**10. Warranty.** Kontron agrees to repair or replace Products that fail due to a defect within twelve (24) months after the shipment date of each Product unit to BUYER ("Warranty Period"). For purposes of this Agreement the term "defect" shall mean the Product fails to operate or fails to conform to its specifications agreed to in writing by Kontron. Any claim made pursuant to this Agreement shall be asserted or made in writing only by BUYER, not any of BUYER's customers or end users. BUYER shall comply with Kontron's Standard Return Materials Authorization ("RMA") procedure for all warranty claims as set forth in Kontron's operation manual. This limited warranty only covers repairs at Kontron's facilities and does not include labor, transportation or other expenses to repair or reinstall warranted Products on site or at BUYER's premises.

Kontron reserves the right to investigate any warranty claims to quickly resolve the problem or to determine whether such claims are proper. In the event that after repeated efforts Kontron is unable to repair or replace a defective Product, then BUYER's exclusive remedy and Kontron's entire liability in contract, tort or otherwise shall be the payment by Kontron of BUYER's actual damages after mitigation, but shall not exceed the purchase price, tax, freight and insurance actually paid by BUYER for the defective Product.

This limited warranty shall not apply to any Product, or parts thereof, that (a) has had the Serial Number, Model Number, or other identification markings altered, removed or rendered illegible; (b) has been damaged by or subject to improper installation or operation, misuse, accident, neglect and/or has been used in any way other than in strict compliance with Kontron's operation and installation manual; (c) has become defective or inoperative due to its integration or assembly with any equipment or products not supplied by Kontron; (d) has been repaired, modified or otherwise altered by anyone other than Kontron, and/or has been subject to the opening of any sealed cabinet boxes or covers without Kontron's prior written consent. If any warranty claim by BUYER falls within any of the foregoing exceptions, BUYER shall pay Kontron its then current rates and charges for such services.

THE ABOVE WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, INCLUDING WITHOUT LIMITATION THOSE OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT OF THIRD-PARTY RIGHTS, ALL OF WHICH ARE EXPRESSLY DISCLAIMED. PLEASE REFER TO THE WARRANTY POLICY AND PROCEDURES CONTAINED IN Kontron'S OPERATION AND INSTALLATION MANUAL.

**11. Confidentiality.** Many aspects of the design, production and operation of the Products, in any form, are proprietary information and trade secrets of Kontron ("Proprietary Rights"), and such Proprietary Rights shall not be disclosed or otherwise transferred by BUYER or BUYER's employees to any other person or entity at any time. BUYER shall not modify, reverse engineer, improve or otherwise change any Product or parts thereof, or any

 **kontron**

of Kontron's Proprietary Rights related thereto, and shall not use, appropriate or copy any of Kontron's Proprietary Rights, either for itself or for others. BUYER also agrees not to incorporate or in any way use any of Kontron's Proprietary Rights or confidential information (disclosed separately or embodied in any of the Products) in its or any other party's products or businesses.

**12. Property Rights.** Kontron shall solely own and have exclusive worldwide right, title and interest in and to all United States and foreign patents, trademarks, service marks, copyrights, mask works, trade secrets, and all other intellectual and industrial property rights in any way related to the Products, to Kontron's Proprietary Rights, and to all modifications, improvements and derivative works related thereto. Title to all of Kontron's Proprietary Rights embodied in the Products shall always remain with Kontron, and BUYER's use thereof shall be restricted under a non-exclusive license granted by Kontron. Subject to BUYER's performance of all obligations hereunder, Kontron hereby grants to BUYER a personal, non-exclusive, non-transferable and indivisible license to use Kontron's Proprietary Rights only as they are embodied in the Products and for no other purpose. BUYER shall not remove Kontron trademark notices, copyright notices, patent markings or mask work notices on or in the Products or on any other materials supplied by Kontron. Paragraphs 11 and 12 shall survive the termination of this Agreement, and shall be specifically enforceable by injunctive and other relief against BUYER in the event of BUYER's breach since both parties agree that Kontron will be irreparably harmed and money damages would be inadequate compensation to Kontron for BUYER's breach. In the event of such breach, Kontron shall be entitled to injunctive relief against BUYER in addition to any other remedies to which it is entitled.

**13. Limitation of Liability.** KONTRON SHALL NOT BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, SPECIAL OR EXEMPLARY DAMAGES SUFFERED BY BUYER AND/OR ANY END USER RELATED TO OR ARISING OUT OF THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED HEREBY AND/OR THE USE OR INABILITY TO USE THE PRODUCTS, INTEGRATION OF THE PRODUCTS WITH EQUIPMENT NOT PROVIDED BY KONTRON, LOSS OF GOODWILL OR PROFITS AND/OR FROM ANY OTHER CAUSE WHATSOEVER, EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT WILL KONTRON'S LIABILITY FOR ANY CAUSE OF ACTION RELATING TO THIS AGREEMENT EXCEED AMOUNTS RECEIVED BY KONTRON FROM BUYER FOR THE PRODUCT OR SERVICE THAT IS THE SUBJECT OF SUCH CLAIM OR DISPUTE. KONTRON AND BUYER FURTHER AGREE THAT EACH AND EVERY PROVISION OF THIS AGREEMENT WHICH PROVIDES FOR A LIMITATION OF LIABILITY, DISCLAIMER OF WARRANTIES OR EXCLUSION OF DAMAGES IS EXPRESSLY INTENDED TO BE SEVERABLE AND INDEPENDENT OF ANY OTHER PROVISION SINCE THOSE PROVISIONS REPRESENT SEPARATE ELEMENTS OF RISK ALLOCATION BETWEEN THE PARTIES, AND SHALL BE SEPARATELY ENFORCED. BOTH PARTIES ALSO AGREE THAT THE PRICE OF THE PRODUCTS REFLECTS THE ALLOCATION OF RISK, WARRANTY AND LIMITATION OF LIABILITY PROVISIONS HEREIN.

**14. Waiver.** Kontron shall not be deemed to waive any default of any provision of this Agreement unless Kontron signs a written waiver.

**15. Indemnity.** BUYER shall indemnify, defend and hold Kontron harmless from all claims, damages, expenses, liabilities and losses, including without limitation attorney's fees and costs incurred that in any way arise out of or relate to (a) the manner in which BUYER and/or any of its customers or end users use or operate the Products; (b) any personal injuries, property damages or other losses resulting or occurring from the willful or negligent acts or omissions of BUYER, its customers or end users; (c) defects or other problems with other component parts, equipment or materials produced or supplied by anyone other than Kontron and that may be used with the Products; and/or (d) BUYER's transactions with its customers, end users or other parties regarding the Products.

**16. Termination.** BUYER shall not terminate or cancel any order, or portion thereof, after it is given to Kontron without Kontron's prior written consent in its sole discretion and subject to the condition that BUYER pays to Kontron the sum of (1) the price of all Products previously delivered to BUYER, (2) Kontron's actual costs incurred as a result of such termination (e.g., purchase of raw materials and other obligations), which Kontron will attempt to keep as low as possible, and (3) a cancellation fee of twenty percent (20%) of such actual costs.

**17. Attorney's Fees.** In the event a dispute arises regarding this Agreement or the Products, the prevailing party shall be entitled to recover from the unsuccessful party actual attorney's fees and costs incurred.

**18. Entire Agreement.** BUYER agrees to all of the provisions of this Agreement by signing below and/or by submitting its purchase order for the Products. This Agreement is the sole and entire agreement between the parties (except for the price or the shipment schedule for the Products contained in Kontron's quotation or BUYER's purchase order accepted by Kontron which shall be incorporated herein subject to the terms hereof) and shall supersede all prior or contemporaneous written or oral understandings, representations or communications and/or other terms in any purchase order or other document, now or hereafter delivered. The provisions of this Agreement shall apply to any and all purchase orders or requests for Products submitted by BUYER to Kontron at any time in the future after executing this Agreement, without the need for either party to re-execute this Agreement. No modification of this Agreement shall be valid unless in writing and signed by an authorized representative of Kontron.

**19. Governing Law and Venue.** This Agreement shall be construed and enforced according to the laws of the State of California regarding contracts made and wholly performed in California. Kontron and BUYER irrevocably submit to the jurisdiction of the state and/or federal courts in San Diego County, California for any action or proceeding regarding this Agreement.

**20. Export.** BUYER shall not directly or indirectly export, transfer or in any way distribute any of the Products, or parts thereof, or any of Kontron's Proprietary Rights or technical data to any country or territory that is prohibited from receiving such materials under any applicable law of the United States. BUYER shall comply with all applicable laws and regulations, including, without limitation, all of the laws and regulations of any applicable agency of the United States government responsible for the administration of the United States export control laws and regulations and the United States Foreign Corrupt Practices Act of 1977, as amended. BUYER shall also be responsible for obtaining all export licenses or other approvals required to export or re-export the Products outside the United States. BUYER further indemnifies, defends and holds Kontron harmless from all damages, claims, expenses, liabilities and losses including without limitation attorney's fees and costs that in any way arise out of or relate to BUYER's breach of this warranty and/or failure to comply with the provisions of this Section 20. Kontron shall not be liable in the event any authorization of any governmental authority is delayed, revoked, restricted and not renewed, and BUYER shall not be relieved thereby of its obligations to pay Kontron for its Products or any other charges which are the obligations of BUYER under this Agreement.

**22. Integration of Equipment.** Kontron shall not be liable for any problems, damages or costs associated with the integration, installation or incorporation of the Products with equipment or materials not provided by Kontron.

**23. Authority.** The persons executing this Agreement on behalf of Kontron and BUYER warrant and represent that they have been authorized by their respective board of directors or other governing bodies to enter into this Agreement and to bind their respective companies to all of the provisions of this Agreement.

**24. Survival.** All of the provisions of Section 11, 12, 13, 15 and 20 of this Agreement shall survive the termination or expiration of this Agreement.

**25. Assignment.** BUYER shall not assign, transfer or otherwise encumber this Agreement or any part thereof without Kontron's prior written consent.

**26. Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, invalid or unenforceable, the remaining provisions shall remain in full force and effect.

**Any changes or deviations to the above Terms & Conditions of Sale must be mutually agreed to by both Parties in written form**



**kontron**
*... always a Jump ahead!*

14118 Stowe Drive   Poway, CA  92064-7147

www.kontron.com    email:  sales@us.kontron.com

Phone: 800-523-2320  Fax: 858-677-0898

| | |
|---|---|
| Page # | 1 |
| Quote Date | 3/22/2006 |
| Customer | 193271 |
| Quote # | 1011823    SQ |
| RFQ | |

## SALES QUOTE

ATTENTION: KYLE VIRGIN

EXCEPTIONAL INNOVATION

480 OLDE WORTHINGTON RD.

SUITE 350

WESTERVILLE OH 43082

614 901-8899 Ext. 18343  Fax 614 901-8896

kvirgin@exceptionalinnovation.com

**Quoted By:** TONY HALLETT

**Quote Expires:** 4/21/2006

| INCOterms: | Shipping | Terms |
|---|---|---|
| EX WORKS POWAY, CA | Instructions | Net 30 Days |

| Line # | Description | Item Number | UM | Quantity | Price | Extended Price |
|---|---|---|---|---|---|---|
| 1.000 | ETXE-PM-2GHZ/1GB (8.9" BIOS) | 380021024200EX2 | EA | 1 | 1,140.00 | 1,140.00 |
| | NON STANDARD PRODUCT 30 DAY RETURN POLICY DOES NOT APPLY | | | | | |
| 2.000 | ETXE-PM-2GHZ/1GB (12.1" BIOS) | 380021024200EX3 | EA | 1 | 1,140.00 | 1,140.00 |

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

Discount Pricing Schedule for both BIOS versions above:

•••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

1 Pc..........$1140/ea

100 Pcs..........$1031/ea

500 Pcs..........$924/ea

1,000 Pcs..........$883/ea

5,000 Pcs..........$850/ea

| | |
|---|---|
| Sales Tax | |
| **Quote Total** | 2,280.00 |

System configurations may include RoHS compliant and non RoHS compliant products. Please contact your Kontron Sales Representative for details.

All pricing is in U.S. Dollars.

- Price includes a two-year factory warranty.

- Above products may be subject to export control for certain destinations.

- Lifetime technical support is included for all standard products.

- Kontron can provide Custom Chassis, Data Acquisition Boards, and Special Testing Services.  Contact your sales engineer for a QUOTE.

- Kontron is an Authorized Intel Certified Dealer.

- The prices and terms on this quotation are NOT subject to verbal changes or other agreements unless approved in writing by Kontron.  All quotations and agreements are contingent upon acts of God, availability of materials and all other causes beyond our control.

- Prices are based upon costs and conditions existing on the date of quotation and are subject to change by Kontron before final acceptance.

- Typographical and stenographic error are subject to correction.

- Conditions not specifically stated herein shall be governed by established trade customs.  Terms inconsistent with those stated herein, which may appear on Purchaser's formal order, will NOT be binding on Kontron.

- Change orders that are initiated by the customer that cause the system to be de-integrated will be assessed a charge of $100.00 per system.

- Change Orders or Cancellations on special order products may be assessed additional charges, such as additional NRE fees or a cancellation fee.

- Terms and Conditions are printed on the reverse side of the hard copy quote.  Terms and Conditions may also be found on our web site.

**Exceptional Innovation**

## Purchase Request

| Reference Number: | Priority: | Date Requested: |
|---|---|---|
| JLH051305A | **High** | 5/12/2005 |

**Charge To:**
Exceptional Innovation

**Date Required:**
6/1/2005

### Submitted By

**Name:**
Kyle Virgin

**Address Line 1:**
480 Olde Worthington Rd.

**Department:**
Engineering

**Address Line 2:**
Suite 350

**E-mail Address:**
kvirgin@exceptionalinnovation.com

**City:**
Westerville

**Telephone Number:**
614-901-8899 x50207

**State/Province:**
Ohio

**Postal Code:**
43082

**Country/Region:**
USA

## Suggested Supplier Information

**Company Name:**
Kontron

**Telephone Number:**
800-523-2320

**Web Site Address:**
www.kontron.com

**Fax Number:**
858-677-0898

## Shipping Information

☑ Allow Partial Shipment

☑ Ship to Address Listed Above

**Ship Method:**
Two-day air

## Itemized List

**Currency: USD ($)**

**Summary:**
EI CONTROLLER

| Item Number | Description | | | | | Total with Tax ($) |
|---|---|---|---|---|---|---|
| | Part Number | Quantity | Unit Price ($) | Tax (%) | Pre-Tax Price ($) | |
| 1 | ETX-PM 1.0GHz Celeron-M | | | | | |
| | | 1,000 | 503.00 | 0.000 | 503,000.00 | 503,000.00 |
| 2 | IC 512MB DDR SDRAM SODIMM PC2 | | | | | |
| | | 1,000 | 125.00 | 0.000 | 125,000.00 | 125,000.00 |
| 3 | HSP-PM Threaded Stand Off | | | | | |
| | | | | | | |

| | | 1,000 | 14.00 | 0.000 | 14,000.00 | 14,000.00 |
|---|---|---|---|---|---|---|

| | |
|---|---|
| Subtotal ($) | 642,000.00 |
| Tax ($) | 0.00 |
| Shipping/Handling Cost ($) | 0.00 |
| Total ($) | 642,000.00 |

## Notes

Attn: Tony Hallett - 300 units requested ASAP. The rest to follow within next
12 months based upon demand. Reference Sales Quote#1011431SQ. Quote
date 5/12/2005 Customer#193271

## Signatures

Sign and print your name.

_Kyle Virgin_  Kyle Virgin          5-12-2005
**Employee Signature**                         **Date**

_Jeannie Heffner_                   5-13-05
**Approval Signature**  _per Dale Moore_        **Date**

**Exceptional Innovation**

# Purchase Request

| | | |
|---|---|---|
| **Reference Number:** JLH0513058 | **Priority:** High | **Date Requested:** 5/12/2005 |
| **Charge To:** Exceptional Innovation | | **Date Required:** 6/15/2005 |

## Submitted By

| | |
|---|---|
| **Name:** Kyle Virgin | **Address Line 1:** 480 Olde Worthington Rd. |
| **Department:** Engineering | **Address Line 2:** Suite 350 |
| **E-mail Address:** kvirgin@exceptionalinnovation.com | **City:** Westerville |
| **Telephone Number:** 614-901-8899 x50207 | **State/Province:** Ohio  **Postal Code:** 43082 |
| | **Country/Region:** USA |

## Suggested Supplier Information

| | |
|---|---|
| **Company Name:** Kontron | **Telephone Number:** 800-523-2320 |
| **Web Site Address:** www.kontron.com | **Fax Number:** 858-677-0898 |

## Shipping Information

☑ Allow Partial Shipment

☑ Ship to Address Listed Above

**Ship Method:** Two-day air

## Itemized List

**Currency:** USD ($)

**Summary:**

ET WALLPANEL / SET-TOP BOX

| Item Number | Description | | | | | Total with Tax ($) |
|---|---|---|---|---|---|---|
| | Part Number | Quantity | Unit Price ($) | Tax (%) | Pre-Tax Price ($) | |
| 1 | ETXexpress-PM Module 760-2GHz | | | | | |
| | | 1,000 | 881.00 | 0.000 | 881,000.00 | 881,000.00 |
| 2 | 1024MB DDR2-DIMM | | | | | |
| | | 1,000 | 156.00 | 0.000 | 156,000.00 | 156,000.00 |
| 3 | ETX-Express Heatspreader | | | | | |
| | | | | | | |

| | | 1,000 | 16.00 | 0.000 | 16,000.00 | 16,000.00 |
|---|---|---|---|---|---|---|

| | |
|---|---|
| Subtotal ($) | 1,053,000.00 |
| Tax ($) | 0.00 |
| Shipping/Handling Cost ($) | 0.00 |
| Total ($) | 1,053,000.00 |

## Notes

Attn: Tony Hallett – 300 units requested ASAP. The rest to follow within next 12 months based upon demand. Reference Sales Quote#1011422SQ. Quote date 5/12/2005 Customer#193271

## Signatures

Sign and print your name.

*Kyle Virgin* Kyle Virgin          5-12-2005
**Employee Signature**                  **Date**

*Jeannie Heffner*          5-13-05
**Approve Signature**    *per Dale Moore*    **Date**



| | |
|---|---|
| Kontron America, Inc. | Page #     1 |
| Dept 9073 | Invoice Date   11/30/06 |
| Los Angeles CA 90084-9073 | Customer    63515 |
| Wire Info: ABA# 121000248 | Order #    343657    SO |
| Acct# 4050004407 Wells Fargo, N.a. San Francisco, CA | Invoice #    412461    RI |
| Ph: 858-677-0877 Fax: 858-677-0895 | PO #     JLH051305B REL 4 |
| EIN# 33-0498455    www.kontron.com | |

## INVOICE

**SOLD TO:**

EXCEPTIONAL INNOVATIONS
480 OLDE WORTHINGTON RD. #350
WESTERVILLE OH 43082

**SHIP TO:**

EXCEPTIONAL INNOVATIONS
480 OLDE WORTHINGTON RD. #350
WESTERVILLE OH 43082

| INCOterms: | | Shipping | GROUND | | | Terms | Net 60 Days |
|---|---|---|---|---|---|---|---|
| EX WORKS POWAY, CA | | Instructions | DNSB DNI | | | Net Due Date | 01/29/07 |

| Ln/Rq Dt | Description | Item Number | UM | Quantity | Price | Extended Price |
|---|---|---|---|---|---|---|
| KYLE VIRGIN 614-901-8899 XT. 50207 | | | | | | |
| *** | | | | | | |
| *** SPECIAL SHIPPING INSTRUCTIONS ONLINE | | | | | | |
| *** | | | | | | |
| ——————— QOBA REQUIRED - CONTACT TZ/MB BEFORE SHIP CONFIRM ——————— | | | | | | |
| 1.001 | ETXE-PM-760 EXCEPTIONAL INNOV | 380021024200EX2 | EA | 99 | 883.00 | 87,417.00 |
| | | | | | | |
| NON STANDARD PRODUCT 30 DAY RETURN POLICY DOES NOT APPLY | | | | | | |
| 2.001 | ETXE-PM-760 (CU EXCEPT IN | 380021024200EX3 | EA | 99 | 883.00 | 87,417.00 |
| | | | | | | |
| 5.000 | Freight | MACH 1 GROUND | EA | 1 | 225.00 | 225.00 |
| | | | | | | |
| 6.000 | Text Line | TRK# SAN 2043880 | | | | |

| | | |
|---|---|---|
| | Subtotal: | 175,059.00 |

· · · · · · · · · · · · · · · · · · · Tax Group Summary · · · · · · · · · · · · · · · · · ·

| | | |
|---|---|---|
| OHNON | % | 174,834.00 |

| | | | |
|---|---|---|---|
| Tax Rate 0 % | | Sales Tax | |
| | | Invoice Total | 175,059.00 |

See Terms and Conditions on web site.



| Kontron America, Inc. | | Page # | 1 | |
|---|---|---|---|---|
| Dept 9073 | | Invoice Date | 12/27/06 | |
| Los Angeles CA 90084-9073 | | Customer | 63515 | |
| Wire Info: ABA# 121000248 | | Order # | 343659 | SO |
| Acct# 4050004407 Wells Fargo, N.a. San Francisco, CA | | Invoice # | 413693 | RI |
| Ph: 858-677-0877 Fax: 858-677-0895 | | PO # | JLH051305B REL 6 | |
| EIN# 33-0498455    www.kontron.com | | | | |

# INVOICE

**SOLD TO:**

EXCEPTIONAL INNOVATIONS

480 OLDE WORTHINGTON RD. #350

WESTERVILLE OH 43082

**SHIP TO:**

EXCEPTIONAL INNOVATIONS

480 OLDE WORTHINGTON RD. #350

WESTERVILLE OH 43082

| INCOterms: | Shipping | GROUND | | Terms | Net 60 Days |
|---|---|---|---|---|---|
| EX WORKS POWAY, CA | Instructions | DNSB DNI | | Net Due Date | 02/25/07 |

| Ln/Rq Dt | Description | Item Number | UM | Quantity | Price | Extended Price |
|---|---|---|---|---|---|---|
| | KYLE VIRGIN 614-901-8899 XT. 18343 | | | | | |
| | ••• | | | | | |
| | *** PARTIAL OK PER GARY SHULL | | | | | |
| | *** SPECIAL SHIPPING INSTRUCTIONS ONLINE | | | | | |
| | ••• | | | | | |
| 1.000 | ETXE-PM-780 EXCEPTIONAL INNOV | 380021024200EX2 | EA | 20 | 883.00 | 17,660.00 |
| | | | | | | |
| | NON STANDARD PRODUCT 30 DAY RETURN POLICY DOES NOT APPLY | | | | | |
| 2.000 | ETXE-PM-780 (CU EXCEPT IN | 380021024200EX3 | EA | 18 | 883.00 | 15,894.00 |
| | | | | | | |
| 3.000 | Freight | UPS GROUND COLLECT | EA | 1 | .00 | |
| | | | | | | |
| 4.000 | Text Line | 1Z8157220300299500 | | | | |

| | | |
|---|---|---|
| | Subtotal: | 33,554.00 |

. . . . . . . . . . . . . . . Tax Group Summary . . . . . . . . . . . . . . . . . .

| OHNON | % | 33,554.00 |
|---|---|---|

| | Tax Rate 0 % | Sales Tax | |
|---|---|---|---|
| | | Invoice Total | 33,554.00 |

See Terms and Conditions on web site.

 **kontron**

| | | |
|---|---|---|
| Kontron America, Inc. | Page # | 1 |
| Dept 9073 | Invoice Date | 01/18/07 |
| Los Angeles CA 90084-9073 | Customer | 63515 |
| Wire Info: ABA# 121000248 | Order # | 343659    SO |
| Acct# 4050004407 Wells Fargo, N.a. San Francisco, CA | Invoice # | 414627    RI |
| Ph: 858-677-0877 Fax: 858-677-0895 | PO # | JLH051305B REL 6 |
| EIN# 33-0498455    www.kontron.com | | |

# INVOICE

**SOLD TO:**

EXCEPTIONAL INNOVATIONS
480 OLDE WORTHINGTON RD. #350
WESTERVILLE OH 43082

**SHIP TO:**

EXCEPTIONAL INNOVATIONS
480 OLDE WORTHINGTON RD. #350
WESTERVILLE OH 43082

| INCOterms: | Shipping | GROUND | | Terms | Net 60 Days |
|---|---|---|---|---|---|
| EX WORKS POWAY, CA | Instructions | DNSB DNI | | Net Due Date | 03/19/07 |

| Ln/Rq Dt | Description | Item Number | UM | Quantity | Price | Extended Price |
|---|---|---|---|---|---|---|
| KYLE VIRGIN 614-901-8699 XT. 18343 | | | | | | |
| *** | | | | | | |
| *** PARTIAL OK PER GARY SHULL | | | | | | |
| *** SPECIAL SHIPPING INSTRUCTIONS ONLINE | | | | | | |
| *** | | | | | | |
| 2.001 | ETXE-PM-760 (CU EXCEPT IN | 380021024200EX3 | EA | 2 | 883.00 | 1,766.00 |
| 5.000 | Freight | UPS GROUND COLLECT | EA | 1 | .00 | |
| 6.000 | Text Line | 1Z8157220300303085 | | | | |

|  | Subtotal: | 1,766.00 |
|---|---|---|

. . . . . . . . . . . . . . . . . . . . Tax Group Summary . . . . . . . . . . . . . . . . . . .

| OHNON | % | 1,766.00 |
|---|---|---|

|  | | |
|---|---|---|
| Tax Rate  0 % | Sales Tax | |
| | Invoice Total | 1,766.00 |

See Terms and Conditions on web site.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | | |
|---|---|---|
| EXCEPTIONAL INNOVATION, LLC | ) | |
| | ) | Case No. 2:07cv724 |
| Plaintiff, | ) | |
| | ) | Judge Sargus |
| v. | ) | |
| | ) | Magistrate Judge Abel |
| KONTRON AMERICA, INC. | ) | |
| | ) | Jury Demand Endorsed Herein |
| Defendant. | ) | |

---

### DEFENDANT KONTRON AMERICA, INC.'S
### ANSWER AND COUNTERCLAIMS

---

For its Answer to Plaintiff Exceptional Innovation, LLC's ("Exceptional") Complaint,

Defendant Kontron America, Inc. ("Kontron") hereby states as follows:

### FIRST DEFENSE

1.      Kontron lacks knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations set forth in paragraph 1 of the Complaint.

2.      Kontron admits that it is a Delaware Corporation with its principal place of

business in Poway, San Diego County.  Kontron also admits that it does business in the United

States and internationally.  Kontron denies the remaining allegations set forth in paragraph 2 of

the Complaint.

3.      The allegations set forth in paragraph 3 of the Complaint are legal conclusions for

which a response is not required.

4.      Kontron denies the allegations set forth in paragraph 4 of the Complaint.

5.      Kontron admits the allegations set forth in paragraph 5 of the Complaint.

6.      On information and belief, Kontron states that it believes the allegations set forth

in paragraph 6 of the Complaint to be true.

7.    Kontron denies that there was only one product or compenent relevant to this action. Kontron lacks knowledge or information sufficient to form a belief regarding whether Exceptional's device was "new." Kontron admits the remaining allegations set forth in paragraph 7 of the Complaint.

8.    Kontron lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 8 of the Complaint.

9.    Kontron lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 9 of the Complaint.

10.    Kontron lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 10 of the Complaint.

11.    Kontron admits that Tony Hallett provided information to Exceptional. Kontron denies the remaining allegations set forth in paragraph 11 of the Complaint.

12.    Kontron denies the allegations set forth in paragraph 12 of the Complaint.

13.    Kontron denies the allegations set forth in paragraph 13 of the Complaint.

14.    Kontron denies that Jerome Rozek "maintained an office." Kontron admits the remaining allegations set forth in paragraph 14 of the Complaint.

15.    Kontron lacks knowledge or information sufficient to form a belief as to the number of separate occasion. Kontron admits the remaining allegations set forth in paragraph 15 of the Complaint.

16.    Kontron alleges that it provided a sample product for Exceptional's evaluation and that the parties never contracted for the purchase of additional quantities of that particular product. Kontron denies the allegations set forth in paragraph 16 of the Complaint.

2

17.    Kontron admits that one module is named "ETX Express."  Kontron denies the remaining allegations set forth in paragraph 17 of the Complaint.

18.    Kontron lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations not directed at Kontron in paragraph 18 of the Complaint. Responding further, Kontron denies the remaining allegations set forth in paragraph 18.

19.    Kontron denies the allegations set forth in paragraph 19 of the Complaint.

20.    Kontron denies the allegations set forth in paragraph 20 of the Complaint and further states that the purchase requests attached to Plaintiff's Complaint at Exhibit A speak for themselves.

21.    The allegations set forth in paragraph 21 of the Complaint are legal conclusions for which a response is not required.

22.    Kontron states that Exhibit A to Plaintiff's Complaint speaks for itself.  Kontron further alleges that the contract between Kontron and Exceptional is attached as Exhibit 1 to the Counterclaim.

23.    Kontron denies the allegations set forth in paragraph 23 of the Complaint.

24.    Kontron denies the allegations set forth in paragraph 24 of the Complaint.

25.    Kontron denies the allegations set forth in paragraph 25 of the Complaint.

26.    Kontron denies the allegations set forth in paragraph 26 of the Complaint.

27.    Kontron lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations not directed at Kontron in paragraph 27 of the Complaint. Responding further, Kontron denies the remaining allegations set forth in paragraph 27.