28.    Kontron lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations not directed at Kontron in paragraph 28 of the Complaint. Responding further, Kontron denies the remaining allegations set forth in paragraph 28.

29.    Kontron denies the allegations set forth in paragraph 29 of the Complaint.

30.    Kontron denies the allegations set forth in paragraph 30 of the Complaint.

31.    Kontron denies the allegations set forth in paragraph 31 of the Complaint.

32.    Kontron admits that it delivered working modules to Exception, but denies the remaining allegations set forth in paragraph 32 of the Complaint.

33.    Kontron denies the allegations set forth in paragraph 33 of the Complaint, except avers that Mr. Huber sent correspondence to Exceptional in June 2006 and such correspondence speaks for itself.

34.    Kontron denies the allegations set forth in paragraph 34 of the Complaint.

35.    Kontron denies the allegations set forth in paragraph 35 of the Complaint.

36.    Kontron admits the allegations set forth in paragraph 36 of the Complaint.

37.    Kontron admits that Exceptional owes a balance to Kontron under the terms of the contract in an amount exceeding $210,000 and that Kontron has demanded payment. Kontron denies the remaining allegations set forth in paragraph 37 of the Complaint. Kontron alleges that Exceptional has failed to tender payment as required under the terms of their agreement and is therefore in material breach of the same.

38.    Kontron admits that Exceptional has failed to pay the required and contractual sums for the products.

39.    Kontron denies the allegations set forth in paragraph 39 of the Complaint.

40.    Kontron denies the allegations set forth in paragraph 40 of the Complaint.

4



**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| EXCEPTIONAL INNOVATION, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Judge Sargus |
| | ) | |
| -vs- | ) | Magistrate Judge Abel |
| | ) | |
| KONTRON AMERICA, INC., | ) | Civil Action No. 2:07 cv 724 |
| | ) | |
| Defendant. | ) | |
| | ) | |

## RULE 26(f) REPORT OF PARTIES

1.     Pursuant to Fed. R. Civ. P. 26(f), a meeting was held on <u>September 5, 2007</u> by

telephone and was attended by:

<u>Nelson M. Reid and Sommer L. Sheely</u>, counsel for Plaintiff Exceptional Innovation, LLC, and

<u>Jessica D. Goldman</u>, counsel for Defendant Kontron America, Inc.  Kontron's California counsel

also participated.

2.     **Consent to Magistrate Judge**.  The parties:

\_\_\_     unanimously consent to the jurisdiction of the United States Magistrate
       Judge pursuant to 28 U.S.C. §636(c).

<u>X</u>     do not unanimously consent to the jurisdiction of the United States
       Magistrate Judge pursuant to 28 U.S.C. §636(c).

3.     **Initial Disclosures**.  The parties:

\_\_\_     have exchanged the pre-discovery disclosures required by Rule 26(a)(1).

<u>X</u>     will exchange such disclosures within <u>30 days after the Court's disposition</u>

       <u>of Defendant's pending Motion to Transfer Venue.  If said Motion is still</u>

       <u>pending 60 days after the October 4, 2007 Pretrial Conference, however,</u>

       <u>Plaintiff proposes that the Court hold a status conference with the parties</u>

       <u>to re-visit the issue of an appropriate time period for initial disclosures.</u>

___     are exempt from disclosure under Rule 26(a)(1)(E).

___     have agreed not to make initial disclosures.

4.     **Jurisdiction and Venue**

   (a)     Describe any contested issues relating to: (1) subject matter jurisdiction, (2) personal jurisdiction and/or (3) venue:

There are no contested issues relating to subject matter jurisdiction or personal jurisdiction. Defendant filed a Motion to Transfer Venue on August 3, 2007 based on a mandatory forum selection clause. Plaintiff filed a Memorandum in Opposition to said motion on August 24, 2007. Defendant filed a supporting Reply Memorandum on September 10, 2007.

   (b)     Describe the discovery, if any, that will be necessary to the resolution if issues relating to jurisdiction and venue:

None anticipated.

   (c)     Recommended date for filing motions addressing jurisdiction and venue:

No further motions anticipated.

5.     **Amendments to Pleadings and/or Joinder of Parties**

   (a)     Recommended cut-off date for filing any motion to amend the pleadings and/or to add additional parties:     30 days after Initial Disclosures.

   (b)     N/A

6.     **Recommended discovery plan**:

   (a)     Describe the **subjects** on which discovery is to be sought and the nature and extent of discovery that each party will need:

Plaintiff anticipates seeking discovery in the following general areas: contract negotiations, terms, obligations and performance related to any agreement between the parties; product development and readiness to fulfill orders for products subject to any agreement between the parties; and other areas reasonably likely to lead to the discovery of admissible evidence.

2

2159933v5

Defendant anticipates seeking discovery in the following general areas: Plaintiff's breach of contract, Defendant's other claims against Plaintiff, Plaintiff's asserted defenses and claims, facts supporting Defendant's defenses, and other areas reasonably likely to lead to the discovery of admissible evidence.

The parties anticipate that they will require all documents on these subjects in any format in which they might be contained. The parties also anticipate obtaining information via interrogatories, requests for admissions, and depositions pursuant to the Federal Rules of Civil Procedure and Local Rules of this Court. The parties are presently uncertain how many witnesses they will need to depose.

(b) What changes should be made, if any, in the limitations on discovery imposed under the Federal Rules of Civil Procedure or the local rules of this Court?

No changes are anticipated at this time.

(c) The case presents the following issues relating to disclosure or discovery of **electronically stored information**, including the form or forms in which it should be produced:

No unusual issues related to electronically stored information are known to the parties at this time. The parties do anticipate that email and other electronic documents will be subject to production during discovery. The parties agree initially to produce paper copies of electronically-stored documents, but reserve the right to request production of such information in another appropriate format if the need should arise during the course of the litigation.

(d) The case presents the following issues relating to claims of **privilege or of protection as trial preparation materials:**

This litigation may require the exchange of information that the parties maintain as confidential or as trade secrets. The parties will attempt to agree upon a protective order, which they will submit to the Court for review and, if acceptable, approval. The parties anticipate seeking such an order before their Initial Disclosures.

2159933v5

Have the parties agreed on a procedure to assert such claims **AFTER** production?

X\_\_\_\_ No

\_\_\_\_\_ Yes

\_\_\_\_\_ Yes, and the other parties ask that the Court include their agreement in an order.

(e)    Identify the discovery, if any, that can be **deferred** pending settlement discussions and/or resolution of potentially dispositive motions:

Defendant proposes to stay discovery pending disposition of its pending Motion to Transfer Venue. Plaintiff is agreeable to a short stay of discovery. However, if Defendant's Motion to Transfer Venue is still pending 60 days after the October 4, 2007 Pretrial Conference, Plaintiff proposes that the Court hold a status conference with the parties to re-visit the issue of proceeding with discovery.

(f)    The parties recommend that discovery should proceed in **phases**, as follows:

None.

(g)    Describe the areas in which **expert testimony** is expected and indicate whether each expert will be specially retained within the meaning of F.R.Civ.P. 26(a)(2):

The parties expect to present expert testimony in the following areas: embedded computer module technology, and the nature and requirements of relevant hardware devices and customization. The parties each reserve the right to call their own personnel as expert witnesses and/or to retain experts. The parties also reserve their rights to present additional expert testimony in areas as may become known during ongoing discovery and as may be needed to rebut the other party's expert testimony.

(i)    Recommended date for making **primary expert designations**:

March 3, 2008.

4

(ii)     Recommended date for making **rebuttal expert designations**: April 1, 2008.

(h)     Recommended **discovery completion date**: June 30, 2008.

7.     **Dispositive Motion(s)**

(a)     Recommended date for filing dispositive motions: July 15, 2008.

8.     **Settlement Discussions**

(a)     Has a settlement demand been made? No. A response? N/A.

(b)     Defendant to make a settlement demand by: November 1, 2007.

(c)     Date by which a response can be made by Plaintiff: December 1, 2007.

9.     **Settlement Week Referral**

The earliest Settlement Week referral reasonably likely to be productive is the December 2007 Settlement Week.

10.     **Other matters for the attention of the Court:**

None at this time.

**Signatures:**

Attorneys for Plaintiff                    Attorneys for Defendant


/s/ Nelson M. Reid_____          /s/ Jessica D. Goldman by Nelson M. Reid per
Nelson M. Reid  (0068434), Trial Attorney  email authority
Sommer L. Sheely  (0076071)                Philomena M. Dane  (0044064), Trial Attorney
BRICKER & ECKLER LLP                        Jessica D. Goldman  (0077049)
100 South Third Street                     Squire, Sanders & Dempsey LLP
Columbus, Ohio  43215                      1300 Huntington Center
Telephone: (614) 227-2300                  41 S. High Street
Facsimile: (614) 227-2390                  Columbus, Ohio  43215
Email: nreid@bricker.com                   Telephone: (614) 365-2700
          ssheely@bricker.com              Facsimile: (614) 365-2499
                                           Email: pdane@ssd.com
                                                     jgoldman@ssd.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

EXCEPTIONAL INNOVATIONS, LLC,

                                        Plaintiff,

            vs.                                    Case No. 2:07CV-724
                                                   District Judge Sargus
                                                   Magistrate Judge Abel
KONTRON AMERICA, INC.,

                                        Defendant.

### OPINION AND ORDER

Plaintiff Exceptional Innovations, Inc. (Plaintiff or Exceptional) originally

filed this action on July 7, 2007, in the Court of Common Pleas of Delaware County,

Ohio, (Case No. 07-CVH-06-0765) against Defendant Kontron America, Inc. (De-

fendant or Kontron) seeking declaratory judgment that Kontron had "materially

breached" a certain contract with Exceptional for the purchase of goods and that,

consequently, Exceptional was "excused from any further performance or liability to

Kontron" thereunder. Doc. 2-2, p. 7. The Complaint also sought attorney fees and

costs. Ibid. Copies of Exceptional's two Purchase Requests dated May 12, 2005,

allegedly accepted by Kontron to create the contracts in question, were attached to

the Complaint. Id. at 4.

On July 27, 2007, Defendant Kontron filed Notice of Removal of the case to

this court pursuant to the provisions of 29 U.S.C. §§ 1441, 1446, and 1332(a)(1), as-

serting that Plaintiff is an "Ohio limited liability company with its principle place of

business in Westerville, Ohio" while Defendant is a "Delaware corporation with its

principle place of business in Poway, California" and that the amount in controversy exceeds $75,000. Doc. 2, pp. 1-2. Within a week, "[p]ursuant to 28 U.S.C. § 1404(a) and Rule 12(b)(3) of the Federal Rules of Civil Procedure" Defendant then filed a Motion To Transfer Venue to the United States District Court for the Southern District of California, based primarily on an alleged "forum selection clause" in the contract in question. Doc. 6, p. 1.[1] The case is now before the Court for consideration of that motion to transfer together with the supporting and opposing memoranda and related materials filed by the parties. Docs. 11, 14.

The Court first notes that Rule 12(b)(3) authorizes raising the defense of "improper venue" by motion, but that Defendant nowhere suggests this Court lacks jurisdiction or that the case should be dismissed. Further, as the party who procured its removal, Defendant could scarcely argue that it should now be remanded. In any event, the alleged "forum selection clause" in this case does not approach the specificity required to waive either parties' otherwise-available right to remove the case here. See Regis Associates v. Rank Hotels (Management) Ltd., 894 F.2d 193, 195 (6th Cir. 1990) ("Although the right to remove can be waived, the case law makes it clear that such waiver must be clear and unequivocal.") Further, based on the allegations of the Complaint and clearly applicable Supreme Court and Sixth Circuit authority discussed below, it appears that only the Court's discretionary §1404(a) authority to transfer the case to another district where it might have been brought is involved here, and not Rule 12(b)(3).

---

1. On the same day, August 3rd, Defendant also filed its Answer and Counterclaim to Plaintiff's Complaint. Doc. 7.

The "forum selection clause" upon which Kontron relies in arguing for the transfer it seeks appears as paragraph 19 of its general Terms and Conditions of Sales, allegedly incorporated in its Sales Quotes to Exceptional that became the sales agreements in question in this case. Affidavit of Anthony T. Hallett, Doc. 6-2, p. 3. That paragraph provides as follows:

> 19. **Governing Law and Venue.** This agreement shall be con-
> strued and enforced according to the laws of the State of California re-
> garding contracts made and wholly performed in California. Kontron
> and BUYER irrevocably submit to the jurisdiction of the state and/or
> federal courts in San Diego County, California for any action or pro-
> ceeding regarding this Agreement.

Doc. 6-2, (attmt, p. 11). For purposes of deciding the present motion to transfer, Exceptional does not dispute the applicability of this provision to the sales agreements in question. Doc. 11, p. 1, n.1.

In support of its motion, Kontron relies primarily on law set out in, or following, two seminal opinions. In <u>Stewart Organization, Inc. v. Ricoh Corporation</u>, 487 U.S. 22 (1988), the Supreme Court states at 29-30:

> Section 1404(a) is intended to place discretion in the district
> court to adjudicate motions for transfer according to an "individ-
> ualized, case-by-case consideration of convenience and fairness." *Van
> Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 812, 11 L.Ed.2d 945
> (1964). A motion to transfer under § 1404(a) thus calls on the district
> court to weigh in the balance a number of case-specific factors. The
> presence of a forum-selection clause such as the parties entered into in
> this case will be a significant factor that figures centrally in the dis-
> trict court's calculus. In its resolution of the § 1404(a) motion in this
> case, for example, the District Court will be called on to address such
> issues as the convenience of a Manhattan forum given the parties'
> expressed preference for that venue, and the fairness of transfer in
> light of the forum-selection clause and the parties' relative bargaining
> power. The flexible and individualized analysis Congress prescribed
> in § 1404(a) thus encompasses consideration of the parties' private ex-
> pression of their venue preferences.

3

In <u>Kerobo v. Southeastern Clean Fuels, Corp.</u>, 285 F.3d 531 (6th Cir. 2002), the case was much like this one in that it involved a very similar forum-selection clause[2] and a complaint for, among others, breach of contract, filed in a state court other than the one selected in that clause, which case had then been removed on diversity grounds to federal court, and a motion filed for dismissal under Rule 12(b)(3) or for transfer pursuant to §1404(a). Noting that the case was "in all material respects indistinguishable from *Ricoh*" (285 F.3d 533), the circuit court reversed the lower court's dismissal under Rule 12(b)(3) and remanded for a determination, consistent with <u>Ricoh</u> and its own opinion, of the "appropriate effect under federal law of the parties' forum-selection clause on the defendants' 28 U.S.C. §1404(a) motion." <u>Id.</u> at 539.

Plaintiff Exceptional's argument in opposition to the transfer is based primarily on its assertion that:

> The relevant clause [of the parties' agreement] is merely a permissive forum selection clause and is not a substantial factor in the analysis of whether to transfer the case. The fact that a California court might *also* be *an* appropriate venue is irrelevant because Kontron's sole objection to *this* venue fails.

Doc. 11, p. 1 (emphasis in the original). Plaintiff also argues that: "Kontron points to only one factor in support of its request for transfer, the permissive forum selection clause." <u>Id.</u> at 5. The Court finds neither argument is entirely accurate or

---

2. The licensing agreement in <u>Kerobo</u> provided: "This agreement shall be interpreted, construed, and governed by the laws of the State of California. Jurisdiction for any action for breach, damages or default shall be within the County of Orange, State of California." 285 F.3d 532-33.

4

sufficiently supported by the individualized, case-specific factors present to per-

suade the Court's exercise of discretion in this case.

Plaintiff's argument that the "relevant clause . . . is merely a permissive

forum selection clause" is not fully supported by the facts. The meaning of what

Plaintiff terms the "relevant clause" is necessarily affected by the context in which

it appears, and that contract paragraph is entitled, in bold and underlined: "**Gov-**

**erning Law and Venue**," and the first of its two sentences is an unequivocal

choice of the "laws of the State of California regarding contracts made and wholly

performed in California" as the law to be applied in construing and enforcing the

agreement.[3] Thus, the pertinent paragraph is, first and foremost, a choice-of-law

provision, and as Defendant points out (Doc. 6, p. 11; Doc. 13, p. 2), the California

Code of Civil Procedure (as might be expected) apparently makes provision for such

proceedings as these only in the courts of California. See Cal. Code of Civ. Pro. §§

395 and 395.5.[4] In this context, then, the irrevocable submission of the parties to

"the jurisdiction of the state and/or federal courts in San Diego County, California"

found in the second sentence's so-called "relevant clause" amounts to a choice of

---

3. In view of this provision, it appears that even if the proceeding were to remain in
Ohio, this or any other court with jurisdiction would still be called upon to decide
the case in accordance with the law of the State of California. See Jarvis v. Ashland
Oil, Inc., 17 Ohio St.3d 189 (1985); Tele-Save Merchandising Co. v. Consumers Dis-
tributing Co., Ltd., 814 F.2d 1120 (6th Cir. 1987)

4. Section 395.5 provides: "A corporation or association may be sued in the county
where the contract is made or is to be performed, or where the obligation or liability
arises, or the breach occurs; or in the county where the principal place of business of
such corporation is situated, subject to the power of the court to change the place of
trial as in other cases."

particular forums within the State of California, the law of which has already been chosen to resolve disputes arising out of the agreement in question.

It has not been suggested that this contractual provision constitutes a waiver of Plaintiff's right under Ohio's Long-Arm Statute (Ohio Revised Code §2307.382) to initiate this proceeding in the Delaware County, Ohio, Court of Common Pleas; and, as noted above, the provision is also not sufficient to waive Defendant's right under federal law to remove the proceeding to this Court. But, neither of those jurisdictional circumstances determines resolution of the different and more limited venue question now presented by Defendant's motion to transfer the proceeding to another district in which it might also have been brought. As the parties' arguments suggest, answering that question requires the Court to consider whether, and if so how much, the contractual provisions present in the parties' agreement should influence the Court's discretionary ruling on the motion.

In the circumstances of this case, however, the the Court does not consider it necessary (as the parties' arguments also suggest) to resolve the question whether, as part of a purely California contract to be interpreted under California law, that provision is an exclusive, or merely a permissive, choice of a California forum.[5] As part of a commercial contract between business entities, in the absence of fraud or overreaching or a showing that enforcement would be unreasonable or unjust

---

5. The Court does not agree with Plaintiff's argument or its lower court authority suggesting that such a determination is required in order to properly decide, much less necessarily controls, the Court's exercise of discretion in deciding whether a transfer should be ordered under authority of §1404(a) in the particular circumstances of this case.

(and none of those is suggested to be present here), the clause is valid. See Pre-
ferred Capital, Inc. v. Associates in Urology, 453 F.3d 718, 721 (6th Cir. 2006). The
parties appear of roughly equivalent bargaining power, and it cannot be argued
successfully that Plaintiff would effectively be denied its day in Court by transfer of
the case to a federal district court in California. Whether exclusive or permissive,
the clause therefore remains a significant statement of forum agreement, included
by the parties in the contract in question. As such, it should be given appropriate
consideration along with other "case-specific factors" as called for by the Ricoh and
Karobo opinions, in reaching the Court's decision whether to order a §1404(a) trans-
fer of this case.

Such other case-specific factors the Court is called upon to consider include
convenience of parties and witnesses, public-interest factors of systemic integrity,
and private concerns falling under the heading interest of justice. Kerobo, at 537
(quoting Ricoh at 30). As shown by the Complaint and the memoranda and sup-
porting affidavits filed in connection with the present motion, this case involves al-
leged breech of the contract that arose from Ohio Plaintiff Exceptional's order for
Defendant Kontron of San Diego County, California, to produce certain computer
modules to be shipped to Exceptional in Westerville, Ohio, for integration into home
entertainment and automation systems it designs and sells. Thus, in this contracts
case, with a manufacturer/buyer (and its witnesses and relevant records) located in
Ohio and a manufacturer/seller (and its witnesses and relevant records) located in

7

California, on the basis of what is before the Court on this motion to transfer pro-

ceedings from Ohio to California, with but one exception, none of the above, other

case-specific factors indicates a particular ruling here.

The significant exception in the circumstances of this case (whether or not

characterized as public interest in systemic integrity) is the clear choice-of-law

provision in the parties' contract. In <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 509

(1947), the Supreme Court, ruling as to an earlier, more restrictive standard for

change of venue, never-the-less observed:

> . . . . There is an appropriateness, too, in having the trial of a diver-
> sity case in a forum that is at home with the state law that must
> govern the case, rather than having a court in some other forum un-
> tangle problems in conflict of laws, and in law foreign to itself.

The potential significance of this factor in ruling on requests for transfer has been

recognized by other district court decisions in our circuit

> Another relevant factor is the district court's familiarity with
> the applicable law. Here, it is undisputed that the option agreement
> is to be 'interpreted and enforced under the laws of the State of Ohio'
> (Exhibit B, p. 8, doc. 10), and it cannot be denied that there is an ad-
> vantage in having a district court apply the law of the state in which it
> sits. See *Vector Company, Inc., [v. Urban Systems Development Corp.,*
> *360 F.Supp. 864, 865 (E.D. Tenn. 1972)]*

<u>Artisan Devel. Div. of Kaiser Aetna v. Mountain States Devel. Corp.</u>, 402 F.Supp.

1312, 1316 (S.D. Ohio 1975).  The Court finds that the presence here of this case-

specific factor is sufficient to outweigh Plaintiff's initial choice of forum and to per-

suade the Court that the discretionary §1404(a) transfer sought by Defendant

should be granted.

8

Consistent with the foregoing, it is therefore ORDERED that Defendant's

Motion To Transfer Venue (Doc. 6)  is GRANTED and that this proceeding is here-

by TRANSFERRED to the United States District Court for the Southern District of

California at San Diego.

The Clerk of this Court is authorized and directed to take all administrative

step necessary to carry out this Order.

IT IS SO ORDERED.

10 - 11 -2007
Dated

Edmund A. Sargus, Jr.
United States District Judge

## COUNT I

41.    Kontron incorporates as if fully rewritten their admissions, denials and averments set forth in paragraphs 1 through 40 herein.

42.    Kontron denies the allegations set forth in paragraph 42 of the Complaint.

43.    Kontron denies the allegations set forth in paragraph 43 of the Complaint.

44.    Kontron denies the allegations set forth in paragraph 44 of the Complaint.

45.    Kontron denies the allegations set forth in paragraph 45 of the Complaint.

46.    Kontron denies the allegations set forth in paragraph 46 of the Complaint.

47.    Kontron denies the allegations set forth in paragraph 47 of the Complaint.

48.    Kontron denies the allegations set forth in paragraph 48 of the Complaint.

49.    Kontron denies all allegations set forth in the Complaint not expressly admitted herein.

50.    Kontron incorporates all the allegations set forth in its Counterclaim as though fully set forth in this paragraph.

### FIRST AFFIRMATIVE DEFENSE

1.    Plaintiff's Complaint fails to state a claim for which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

2.    Plaintiff's claims are barred by the doctrine of unclean hands.

### THIRD AFFIRMATIVE DEFENSE

3.    Plaintiff's claims are barred by the doctrines of laches, waiver and/or estoppel.

### FOURTH AFFIRMATIVE DEFENSE

4.    Plaintiff's claims are barred because Kontron has fully performed its obligations under the parties' agreement.

5

### FIFTH AFFIRMATIVE DEFENSE

5.     Plaintiff's claims are barred by its failure to mitigate its alleged damages.

### SIXTH AFFIRMATIVE DEFENSE

6.     Plaintiff's claims are barred by its prior material breaches of the parties' agreement.

### SEVENTH AFFIRMATIVE DEFENSE

7.     This Court is an improper venue and forum for this action.

### EIGHTH AFFIRMATIVE DEFENSE

8.     Defendant reserves the right to assert additional defenses as they may become known during this litigation.

**WHEREFORE,** having fully answered, Defendant Kontron America, Inc. requests that this Court grant it judgment on the Complaint and against Plaintiff, together with costs, attorneys' fees, and such other relief in Kontron's favor in law, equity, or otherwise, as may be just.

## COUNTERCLAIM OF DEFENDANT
## KONTRON AMERICA, INC.

1.     Kontron hereby incorporates the admissions, denials, averments, and defenses contained in the foregoing paragraphs of its Answer as if fully rewritten herein and further alleges:

### The Parties, Jurisdiction and Venue

2.     Defendant Kontron is a Delaware corporation with its principal place of business in San Diego County, California.

3.     Upon information and belief, Plaintiff Exceptional is an Ohio limited liability company with its principal place of business in Delaware County, Ohio.

4.     The amount in controversy exceeds $75,000 exclusive of interest, costs and attorneys' fees.

5.     The Sales Quotes and the Terms and Conditions (collectively, the "Agreement") comprising the contract between the parties, include the following mandatory forum selection and California governing law clause requiring that any dispute relating to the Agreement be filed and litigated in the state or federal courts of San Diego County, California:

> Governing Law and Venue.  This Agreement shall be construed and enforced according to the laws of the State of California regarding contracts made and wholly performed in California.  Kontron and BUYER irrevocably submit to the jurisdiction of the state and/or federal courts in San Diego County, California for any action or proceeding regarding this Agreement.

A true and accurate copy of the Agreement is attached hereto as Exhibit 1, with one exception. The original Sales Quotes had a "Quote Date" of "5/12/05" rather than the "6/29/07" appearing in the date fields on the attached Sales Quotes.

6.    By reason of the foregoing, the United States District Court for the Southern District of California has jurisdiction over all the parties hereto and venue is proper only in San Diego County, California.

### The Agreement

7.    In late 2004, Exceptional expressed an interest in purchasing products from Kontron, specifically certain component parts that would be integrated into Exceptional's systems and products.

8.    Over a period of several months, Kontron and Exceptional discussed each other's products and services.

9.    Ultimately, Exceptional decided to purchase certain computer modules from Kontron for integration into Exceptional's products.

10.    On or about May 12, 2005, Kontron issued two "Sales Quotes" to Exceptional setting forth the proposed terms under which Kontron was offering to sell the modules to Exceptional. See Exhibit 1 attached hereto.

11.    Each Sales Quote expressly incorporated by reference Kontron's general terms and conditions by stating: "Terms and Conditions are printed on the reverse side of the hard copy quote. Terms and Conditions may also be found on our website."

12.    On or about May 13, 2005, Exceptional accepted Kontron's offer and all the terms of the Agreement, including the general Terms and Conditions, without objection.

13.    Exceptional issued two Purchase Requests evidencing its acceptance of the Agreement.    True and accurate copies of these two Purchase Requests are attached to this Answer and Counterclaim as Exhibit 2.    For reference purposes, they were attached to Exceptional's Complaint.

8

14.    The Agreement states that the prices for the products are those set forth in Kontron's Sales Quotes.

15.    In March 2006, Exceptional received a reduction in the price that Exceptional had originally agreed to pay for Kontron's products under the Agreement.  On or about March 22, 2006, Kontron issued Exceptional an updated Sales Quote that reflected the price reduction and which is included in Exhibit 1.  As with the original Sales Quotes, the updated Sales Quote incorporated Kontron's Terms and Conditions.

16.    Kontron's invoices also reflected the reduction in the prices that Exceptional had originally agreed to pay for Kontron's products under the Agreement.  At the time that Exceptional received a price reduction in March 2006, Exceptional did not object to or request re-negotiation of any of the other terms of the Agreement.

### Exceptional's Breaches

17.    Kontron delivered the products to Exceptional.

18.    In November 2006, December 2006 and January 2007, Kontron sent Exceptional invoices related to the last three shipments, totaling in excess of $210,000 (collectively, the "Invoices").  True and accurate copies of the Invoices are attached to this Answer and Counterclaim as Exhibit 3.

19.    Consistent with the Agreement, the Invoices reflected the agreed price reduction.

20.    Also consistent with the Agreement, the Invoices incorporated Kontron's Terms and Conditions.

21.    The Invoices state the payment terms as "Net 60 days."

22.    Exceptional failed to pay each of the Invoices at the time that they became due.

9

23.     To date, Exceptional has failed and refused to pay the outstanding balance owed to Kontron under the Agreement.

## COUNT ONE
### (Breach of Contract-Failure to Pay)

24.     Kontron incorporates paragraphs 1 through 23 above as if fully restated herein.

25.     Kontron has fully performed its obligations under the Agreement, except to the extent that they were excused.

26.     Kontron delivered goods to Exceptional as required by the Agreement and remitted the Invoices for payment.

27.     To date, Exceptional has failed to tender payment in full for the goods that it accepted and received.

28.     Kontron has made repeated demands for payment, but Exceptional continues to wrongfully withhold payment.

29.     Exceptional's failure to pay for the goods is a material breach of the Agreement.

30.     As a direct and proximate result of Exceptional's breach of contract, Kontron has suffered damages in an amount exceeding $210,000 and to be proven at the time of trial, plus interest, consequential damages, costs, expenses, and attorneys' fees.

## COUNT TWO
### (Breach of Contract-Forum Selection Clause)

31.     Kontron incorporates paragraphs 1 through 30 above as if fully restated herein.

32.     Pursuant to the Agreement, Exceptional agreed to submit to the jurisdiction of state and/or federal courts in San Diego County, California for any action regarding the Agreement.

33.     Despite this mandatory forum selection provision, Exceptional initiated a lawsuit for declaratory judgment in Delaware County Common Pleas Court on June 27, 2007.

34.     By filing a lawsuit in an Ohio court, Exceptional materially breached the Agreement's forum selection clause.

35.     As a direct and proximate result of Exceptional's breach of contract, Kontron has suffered damages in an amount to be proven at trial, plus interest, consequential damages, costs, expenses, and attorneys' fees.

## COUNT THREE
### (Uniform Commercial Code-Action for Price)

36.     Kontron incorporates paragraphs 1 through 35 above as if fully restated herein.

37.     Kontron delivered goods to Exceptional pursuant to the terms of the Agreement.

38.     Exceptional accepted the goods that it received.

39.     Despite accepting the goods, Exceptional failed to remit payment for the goods as set forth in the parties' Agreement.

40.     Under the provisions of the Uniform Commercial Code as adopted in California, and, alternatively, in Ohio, Kontron is entitled to recover the full contract price of the goods accepted by Exceptional, plus interest, consequential damages, costs, expenses, and attorneys' fees.

## COUNT FOUR
### (Quantum Valebant-Common Count under California law)

41.     Kontron incorporates paragraphs 1 through 40 above as if fully restated herein.

42.     Within the last two years, Kontron sold and delivered certain goods at the specific request of Exceptional and Exceptional promised to pay Kontron the reasonable value of those goods.

11

43.    Exceptional has demanded payment from Kontron for the reasonable value of the goods. Exceptional has refused, and continues to refuse, to pay Kontron.

44.    The fair and reasonable value of the goods sold and delivered by Kontron an amount exceeding $210,000, plus interest, consequential damages, costs, expenses, and attorneys' fees, which will be proven at trial. This sum is now due and owing to Kontron by Exceptional.

## COUNT FIVE
### (Goods Sold and Delivered at Agreed Price-Common Count under California law)

45.    Kontron incorporates paragraphs 1 through 44 above as if fully restated herein.

46.    Within the last two years, Exceptional became indebted to Kontron in the agreed sum exceeding $210,00 for goods sold and delivered to Exceptional.

47.    Neither the whole nor any part of the above sum has been paid, notwithstanding that demand has been made for payment, and leaving an amount exceeding $210,00 due and owing to Kontron, plus interest, consequential damages, costs, expenses, and attorneys' fees, which will be proven at trial.

## COUNT SIX
### (Unjust Enrichment)

48.    Kontron incorporates paragraphs 1 through 47 above as if fully restated herein.

49.    Pursuant to the Agreement, Exceptional received goods from Kontron.

50.    Exceptional has failed to tender payment in full for the goods that it received.

51.    If Exceptional is not required to remit past-due payments, Exceptional would benefit from its breach of the Agreement and be unjustly enriched at the expense and to the detriment of Kontron.

12

52.    By virtue of this unjust enrichment, Kontron is entitled to judgment in an amount exceeding $210,000 and to be proven at the time of trial, plus interest, consequential damages, costs, expenses, and attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, Kontron prays for the following relief:

a.    A judgment in its favor against Plaintiff Exceptional and damages in an amount exceeding $210,000 and to be proven at the time of trial;

b.    An award of interest at the maximum legal rate;

c.    An award of costs for filing this suit;

d.    An award of attorneys' fees and collection costs as provided for in the Agreement between the parties; and

e.    Such other relief as is just and equitable.

Respectfully submitted,

s/ Philomena M. Dane
Philomena M. Dane (0044064)
Jessica D. Goldman (0077049)
SQUIRE, SANDERS & DEMPSEY, LLP
1300 Huntington Center
41 South High Street
Columbus, Ohio 43215
(614) 365-2700
(614) 365-2499
pdane@ssd.com
jgoldman@ssd.com

Attorneys for Defendant Kontron America, Inc.

## JURY DEMAND

Defendant hereby demands a trial by jury on all issues so triable.


s/ Philomena M. Dane
Philomena M. Dane

## CERTIFICATE OF SERVICE

I certify that, on August 3, 2007, I caused this Answer and Counterclaims to be served via the Court's ECF system to the following individual:

Nelson M. Reid
Sommer L. Sheely
Bricker & Eckler LLP
100 South Third Street
Columbus, Ohio 43215

Attorneys for Plaintiff

s/ Philomena M. Dane
One of the Attorneys for Defendant

Kontron America
14118 Stowe Drive
Poway, CA  92064-7147
www.kontron.com
email: sales@us.kontron.com
Phone: 800-523-2320  Fax: 858-677-0898

| | |
|---|---|
| Page Number | 1 |
| Quote Date | 6/29/2007 |
| Customer | 193271 |
| Quote Number | 1011422    SQ |
| RFQ | |

## SALES QUOTE

ATTENTION: KYLE VIRGIN
EXCEPTIONAL INNOVATION
480 OLDE WORTHINGTON RD.
SUITE 350
WESTERVILLE OH 43082

Phone:    614 901-8899 Ext. 18343
Fax:      614 901-8898

Quoted By:      TONY HALLETT

E-Mail:   kvirgin@exceptionalinnovation.com

Quote Expires:    6/11/2005

| INCOterms: | Shipping | Terms |
|---|---|---|
| EX WORKS POWAY, CA | Instructions | Net 30 Days |

| Line # | Description | Item Number | UM | Quantity | Price | Extended Price |
|---|---|---|---|---|---|---|
| 1.000 | ETXexpress-PM Module 760-2GHz | 38001-0000-20-2 | EA | 1 | 1,175.00 | 1,175.00 |

Discount Schedule:
1Pc $1175
100Pcs $1068
1000Pcs $881

| 2.001 | 512MB DDR2-DIMM | 97011-5120-00-0 | EA | 1 | 170.00 | 170.00 |

Discount Schedule:
1Pc $170
100Pcs $140
1000Pcs $125

| 3.001 | 1024MB DDR2-DIMM | 97011-1024-00-0 | EA | 1 | 195.00 | 195.00 |

Discount Schedule:
1Pc $195
100Pcs $163
1000Pcs $156

| 4.000 | ETX-Express Heatspreader | 38001-0000-99-2 | EA | 1 | 18.00 | 18.00 |

Preliminary Discount Schedule:
1Pc $18
100Pcs $17
1000Pcs $16

| | | |
|---|---|---|
| | Sales Tax | |
| | Quote Total | 1,558.00 |

System configurations may include RoHS compliant and non RoHS compliant products. Please contact your Kontron Sales Representative for details.

All pricing is in U.S. Dollars.

Kontron America
14118 Stowe Drive
Poway, CA 92064-7147
www.kontron.com
email: sales@us.kontron.com
Phone: 800-523-2320  Fax: 858-677-0898

| | |
|---|---|
| Page Number | 2 |
| Quote Date | 6/29/2007 |
| Customer | 193271 |
| Quote Number | 1011422  SQ |
| RFQ | |

## SALES QUOTE

ATTENTION: KYLE VIRGIN

EXCEPTIONAL INNOVATION

480 OLDE WORTHINGTON RD.

SUITE 350

WESTERVILLE OH 43082

Phone:    614 901-8899 Ext. 18343
Fax:       614 901-8898

Quoted By:    TONY HALLETT

E-Mail:    kvirgin@exceptionalinnovation.com

Quote Expires:    6/11/2005

| INCOterms: | Shipping | Terms |
|---|---|---|
| EX WORKS POWAY, CA | Instructions | Net 30 Days |

| Line # | Description | Item Number | UM | Quantity | Price | Extended Price |
|---|---|---|---|---|---|---|

- Price includes a two-year factory warranty.
- Above products may be subject to export control for certain destinations.
- Lifetime technical support is included for all standard products.
- Kontron can provide Custom Chassis, Data Acquisition Boards, and Special Testing Services. Contact your sales engineer for a QUOTE.
- Kontron is an Authorized Intel Certified Dealer.
- The prices and terms on this quotation are NOT subject to verbal changes or other agreements unless approved in writing by Kontron. All quotations and agreements are contingent upon acts of God, availability of materials and all other causes beyond our control.
- Prices are based upon costs and conditions existing on the date of quotation and are subject to change by Kontron before final acceptance.
- Typographical and stenographic error are subject to correction.
- Conditions not specifically stated herein shall be governed by established trade customs. Terms inconsistent with those stated herein, which may appear on Purchaser's formal order, will NOT be binding on Kontron.
- Change orders that are initiated by the customer that cause the system to be de-integrated will be assessed a charge of $100.00 per system.
- Change Orders or Cancellations on special order products may be assessed additional charges, such as additional NRE fees or a cancellation fee.
- Terms and Conditions are printed on the reverse side of the hard copy quote. Terms and Conditions may also be found on our web site.

| Kontron America | | |
|---|---|---|
| 14118 Stowe Drive | Page Number | 1 |
| Poway, CA 92064-7147 | Quote Date | 6/29/2007 |
| www.kontron.com | Customer | 193271 |
| email: sales@us.kontron.com | Quote Number | 1011431    SQ |
| Phone: 800-523-2320  Fax: 858-677-0898 | RFQ | |

## SALES QUOTE

ATTENTION: KYLE VIRGIN

EXCEPTIONAL INNOVATION

480 OLDE WORTHINGTON RD.

SUITE 350

WESTERVILLE OH 43082

Phone: 614 901-8899 Ext. 18343

Fax: 614 901-8896

Quoted By:    TONY HALLETT

E-Mail: kvirgin@exceptionalinnovation.com

Quote Expires:    6/8/2005

| INCOterms: | Shipping | Terms |
|---|---|---|
| EX WORKS POWAY, CA | Instructions | Net 30 Days |

| Line # | Description | Item Number | UM | Quantity | Price | Extended Price |
|---|---|---|---|---|---|---|
| 1.001 | ETX-PM 1.0GHZ CELERON-M | 18008-0000-10-1 | EA | 1 | 656.00 | 656.00 |

Preliminary Discount Schedule:
1Pc $656
100Pcs $601
1000Pcs $503

| 2.001 | HSP-PM THREADED STAND OFF | 18008-0000-99-0 | EA | 1 | 17.00 | 17.00 |

Preliminary Discount Schedule:
1Pc $17
100Pcs $16
1000Pcs $14

| 3.000 | IC 512 MB DDR SDRAM SODIMM PC2 | 97007-5120-00-0 | EA | 1 | 170.00 | 170.00 |

Preliminary Discount Schedule:
1Pc $170
100Pcs $140
1000Pcs $125

|  | Sales Tax | |
|---|---|---|
|  | Quote Total | 843.00 |

System configurations may include RoHS compliant and non RoHS compliant products. Please contact your Kontron Sales Representative for details.

All pricing is in U.S. Dollars.
- Price includes a two-year factory warranty.
- Above products may be subject to export control for certain destinations.
- Lifetime technical support is included for all standard products.
- Kontron can provide Custom Chassis, Data Acquisition Boards, and Special Testing Services.  Contact your sales engineer for a QUOTE.
- Kontron is an Authorized Intel Certified Dealer.
- The prices and terms on this quotation are NOT subject to verbal changes or other agreements unless approved in writing by Kontron.  All quotations
and agreements are contingent upon acts of God, availability of materials and all other causes beyond our control.
- Prices are based upon costs and conditions existing on the date of quotation and are subject to change by Kontron before final acceptance.

Kontron America
14118 Stowe Drive
Poway, CA 92064-7147
www.kontron.com
email: sales@us.kontron.com
Phone: 800-523-2320  Fax: 858-677-0898

| | |
|---|---|
| Page Number | 2 |
| Quote Date | 6/29/2007 |
| Customer | 193271 |
| Quote Number | 1011431  SQ |
| RFQ | |

## SALES QUOTE

ATTENTION: KYLE VIRGIN

EXCEPTIONAL INNOVATION

480 OLDE WORTHINGTON RD.

SUITE 350

WESTERVILLE OH 43082

Phone:    614 901-8899 Ext. 18343
Fax:       614 901-8898

Quoted By:    TONY HALLETT

E-Mail:    kvirgin@exceptionalinnovation.com

Quote Expires:    6/8/2005

| INCOterms: | Shipping | Terms |
|---|---|---|
| EX WORKS POWAY, CA | Instructions | Net 30 Days |

| Line # | Description | Item Number | UM | Quantity | Price | Extended Price |
|---|---|---|---|---|---|---|

- Typographical and stenographic error are subject to correction.
- Conditions not specifically stated herein shall be governed by established trade customs. Terms inconsistent with those stated herein, which may appear on Purchaser's formal order, will NOT be binding on Kontron.
- Change orders that are initiated by the customer that cause the system to be de-integrated will be assessed a charge of $100.00 per system.
- Change Orders or Cancellations on special order products may be assessed additional charges, such as additional NRE fees or a cancellation fee.
- Terms and Conditions are printed on the reverse side of the hard copy quote. Terms and Conditions may also be found on our web site.



# KONTRON AMERICA, INCORPORATED
## TERMS AND CONDITIONS OF SALES

**1.    Scope.** The following terms and conditions ("Agreement") apply to the sale of all Products manufactured or distributed by Kontron America, Incorporated, a Delaware corporation, including its affiliates ("Kontron"), to the undersigned BUYER (the "Products").

**2.    Purchase Orders.** BUYER shall issue to Kontron firm Purchase Orders for each purchase required. All Purchase Orders are subject to credit approval and confirmation of delivery schedule by Kontron prior to acceptance by Kontron and may require credit enhancement, such as advanced payment, letter of credit or other guarantee, prior to acceptance. Kontron's acceptance of a purchase order shall only occur upon delivery to BUYER of a written acceptance executed by Kontron's duly authorized representative. In the event of any conflict between this Agreement and any Purchase Order or other document, the terms of this Agreement shall prevail.

**3.    Prices.** The prices for Products are set forth in Kontron's quotation which can be changed at any time upon prior written notice to BUYER. The quoted prices are exclusive of all taxes, freight, duties, and other applicable charges which shall be paid by BUYER. Any taxes, duties, fees, charges or assessments of any nature levied by any governmental authority in connection with any transaction under this Agreement, whether levied against BUYER, against Kontron or its employees, or against any of Kontron's subcontractors or their employees, shall be the responsibility of BUYER and shall be paid directly by BUYER to the governmental authority concerned. If Kontron or its subcontractors, or the employees of either, are required to pay any such levies, fines, penalties, or assessments, then BUYER shall reimburse such payor promptly upon submission of the applicable document.

**4.    Changes.** Within thirty (30) days of receipt from BUYER of a request for changes within the general scope of work under an accepted purchase order, Kontron shall respond in writing stating the consequences of such requested change. If such requested change causes an increase or decrease in the cost of the Products and/or the time required for performance, an equitable adjustment reasonably determined by Kontron shall be made in the price and/or the time required for performance. Such price adjustment may include but not be limited to any rework charges associated with the requested change. Kontron shall have the right in its sole discretion to accept or reject any such requested changes and shall not be required to proceed with the change unless the parties have mutually agreed in writing. All approved change orders shall be considered amendments to the applicable purchase order. If a requested change is not accepted by Kontron, the original purchase order shall remain in effect.

**5.    Payments.**

    **(a) Open Account.** Upon Kontron's approval of BUYER's credit, if no credit enhancement is required, all payments shall be made in United States Dollars, net thirty (30) days from date of invoice. All payments received after thirty (30) days shall accrue interest at the rate equal to the lesser of one percent (1.5%) per month or the maximum legally permissible rate.

    **(b) Letter of Credit.** All payments shall be made in United States Dollars and pursuant to an irrevocable Letter of Credit issued by a bank approved by Kontron with conditions acceptable to Kontron. The Letter of Credit shall be established at BUYER's sole expense and BUYER shall be solely responsible for all charges and fees associated with the Letter of Credit, including without limitation all fees for the electronic transfer of funds. Each Letter of Credit shall cover the full amount of the relevant purchase order or contract (and any transportation or other expenses that Kontron has previously agreed to prepay on BUYER's behalf). Kontron shall have the right to require amendments to the Letter of Credit prior to releasing Products under any purchase order submitted. Open account terms will be considered by Kontron, in Kontron's sole discretion, if BUYER possesses a first-class standing in the operating country and can demonstrate favorable trade arrangements with other U.S. suppliers. BUYER agrees, upon request, to provide Kontron with financial information acceptable to Kontron to assist Kontron in determining from time to time the credit terms, if any, that Kontron may extend to BUYER. Kontron reserves the right to revoke open account terms at any time based on unsatisfactory payment performance or credit risk in Kontron's sole discretion, in which event BUYER agrees to provide a Letter of Credit or such other credit enhancement as may be required by Kontron.

**6.    Transportation.** All sales and deliveries of Products shall be "FCA Kontron's authorized shipping point" as defined in Incoterms 1990, as amended. BUYER is responsible for all transportation, insurance, duties and

other applicable expenses. These expenses shall be paid by BUYER and shall be added to Kontron's invoice to BUYER if prepaid by Kontron.

**7.    Title and Risk of Loss.** Title to the Products shall pass to BUYER upon delivery of the Products to a common carrier. BUYER hereby grants Kontron a security interest in the Products until the invoice covering the Products has been paid in full. BUYER also irrevocably appoints Kontron as its lawful attorney-in-fact coupled with an interest with full authority to execute and file UCC-1's and any other necessary documents to perfect and enforce its security interest. Kontron shall bear the risk of loss or damage until the Products are delivered to a common carrier. Upon delivery to a common carrier, BUYER shall bear the entire risk of loss and shall be liable for all loss or damage to the Products.

**8.    Inspection.** Unless BUYER notifies Kontron in writing within thirty (30) days from date of shipment of any Products that said Products are rejected, they will be deemed to have been accepted by BUYER. In order for the notice of rejection to be effective, BUYER must also specify in detail the reason(s) why the Products are being rejected. BUYER shall only have the right to reject Product for "defects," as defined in Section 10 below.

**9.    Force Majeure.** Kontron shall not be liable for any failure to perform or other loss due to unforeseen circumstances or causes beyond its control, including without limitation acts of God, strikes, material and/or transportation shortages, natural casualties, governmental regulations, war, fire, flood, disasters and civil unrest.

**10.    Warranty.** Kontron agrees to repair or replace Products that fail due to a defect within twelve (24) months after the shipment date of each Product unit to BUYER ("Warranty Period"). For purposes of this Agreement the term "defect" shall mean the Product fails to operate or fails to conform to its specifications agreed to in writing by Kontron. Any claim made pursuant to this Agreement shall be asserted or made in writing only by BUYER, not any of BUYER's customers or end users. BUYER shall comply with Kontron's Standard Return Materials Authorization ("RMA") procedure for all warranty claims as set forth in Kontron's operation manual. This limited warranty only covers repairs at Kontron's facilities and does not include labor, transportation or other expenses to repair or reinstall warranted Products on site or at BUYER's premises.

    Kontron reserves the right to investigate any warranty claims to quickly resolve the problem or to determine whether such claims are proper. In the event that after repeated efforts Kontron is unable to repair or replace a defective Product, then BUYER's exclusive remedy and Kontron's entire liability in contract, tort or otherwise shall be the payment by Kontron of BUYER's actual damages after mitigation, but shall not exceed the purchase price, tax, freight and insurance actually paid by BUYER for the defective Product.

    This limited warranty shall not apply to any Product, or parts thereof, that (a) has had the Serial Number, Model Number, or other identification markings altered, removed or rendered illegible; (b) has been damaged by or subject to improper installation or operation, misuse, accident, neglect and/or has been used in any way other than in strict compliance with Kontron's operation and installation manual; (c) has become defective or inoperative due to its integration or assembly with any equipment or products not supplied by Kontron; (d) has been repaired, modified or otherwise altered by anyone other than Kontron, and/or has been subject to the opening of any sealed cabinet boxes or covers without Kontron's prior written consent. If any warranty claim by BUYER falls within any of the foregoing exceptions, BUYER shall pay Kontron its then current rates and charges for such services.

    THE ABOVE WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, INCLUDING WITHOUT LIMITATION THOSE OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT OF THIRD-PARTY RIGHTS, ALL OF WHICH ARE EXPRESSLY DISCLAIMED. PLEASE REFER TO THE WARRANTY POLICY AND PROCEDURES CONTAINED IN Kontron'S OPERATION AND INSTALLATION MANUAL.

**11.    Confidentiality.** Many aspects of the design, production and operation of the Products, in any form, are proprietary information and trade secrets of Kontron ("Proprietary Rights"), and such Proprietary Rights shall not be disclosed or otherwise transferred by BUYER or BUYER's employees to any other person or entity at any time. BUYER shall not modify, reverse engineer, improve or otherwise change any Product or parts thereof, or any



of Kontron's Proprietary Rights related thereto, and shall not use, appropriate or copy any of Kontron's Proprietary Rights, either for itself or for others. BUYER also agrees not to incorporate or in any way use any of Kontron's Proprietary Rights or confidential information (disclosed separately or embodied in any of the Products) in its or any other party's products or businesses.

**12.  Property Rights.** Kontron shall solely own and have exclusive worldwide right, title and interest in and to all United States and foreign patents, trademarks, service marks, copyrights, mask works, trade secrets, and all other intellectual and industrial property rights in any way related to the Products, to Kontron's Proprietary Rights, and to all modifications, improvements and derivative works related thereto. Title to all of Kontron's Proprietary Rights embodied in the Products shall always remain with Kontron, and BUYER's use thereof shall be restricted under a non-exclusive license granted by Kontron. Subject to BUYER's performance of all obligations hereunder, Kontron hereby grants to BUYER a personal, non-exclusive, non-transferable and indivisible license to use Kontron's Proprietary Rights only as they are embodied in the Products and for no other purpose. BUYER shall not remove Kontron trademark notices, copyright notices, patent markings or mask work notices on or in the Products or on any other materials supplied by Kontron. Paragraphs 11 and 12 shall survive the termination of this Agreement, and shall be specifically enforceable by injunctive and other relief against BUYER in the event of BUYER's breach since both parties agree that Kontron will be irreparably harmed and money damages would be inadequate compensation to Kontron for BUYER's breach. In the event of such breach, Kontron shall be entitled to injunctive relief against BUYER in addition to any other remedies to which it is entitled.

**13.  Limitation of Liability.** KONTRON SHALL NOT BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, SPECIAL OR EXEMPLARY DAMAGES SUFFERED BY BUYER AND/OR ANY END USER RELATED TO OR ARISING OUT OF THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED HEREBY AND/OR THE USE OR INABILITY TO USE THE PRODUCTS, INTEGRATION OF THE PRODUCTS WITH EQUIPMENT NOT PROVIDED BY KONTRON, LOSS OF GOODWILL OR PROFITS AND/OR FROM ANY OTHER CAUSE WHATSOEVER, EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. IN NO EVENT WILL KONTRON'S LIABILITY FOR ANY CAUSE OF ACTION RELATING TO THIS AGREEMENT EXCEED AMOUNTS RECEIVED BY KONTRON FROM BUYER FOR THE PRODUCT OR SERVICE THAT IS THE SUBJECT OF SUCH CLAIM OR DISPUTE. KONTRON AND BUYER FURTHER AGREE THAT EACH AND EVERY PROVISION OF THIS AGREEMENT WHICH PROVIDES FOR A LIMITATION OF LIABILITY, DISCLAIMER OF WARRANTIES OR EXCLUSION OF DAMAGES IS EXPRESSLY INTENDED TO BE SEVERABLE AND INDEPENDENT OF ANY OTHER PROVISION SINCE THOSE PROVISIONS REPRESENT SEPARATE ELEMENTS OF RISK ALLOCATION BETWEEN THE PARTIES, AND SHALL BE SEPARATELY ENFORCED. BOTH PARTIES ALSO AGREE THAT THE PRICE OF THE PRODUCTS REFLECTS THE ALLOCATION OF RISK, WARRANTY AND LIMITATION OF LIABILITY PROVISIONS HEREIN.

**14.  Waiver.** Kontron shall not be deemed to waive any default of any provision of this Agreement unless Kontron signs a written waiver.

**15.  Indemnity.** BUYER shall indemnify, defend and hold Kontron harmless from all claims, damages, expenses, liabilities and losses, including without limitation attorney's fees and costs incurred that in any way arise out of or relate to (a) the manner in which BUYER and/or any of its customers or end users use or operate the Products; (b) any personal injuries, property damages or other losses resulting or occurring from the willful or negligent acts or omissions of BUYER, its customers or end users; (c) defects or other problems with other component parts, equipment or materials produced or supplied by anyone other than Kontron and that may be used with the Products; and/or (d) BUYER's transactions with its customers, end users or other parties regarding the Products.

**16.  Termination.** BUYER shall not terminate or cancel any order, or portion thereof, after it is given to Kontron without Kontron's prior written consent in its sole discretion and subject to the condition that BUYER pays to Kontron the sum of (1) the price of all Products previously delivered to BUYER, (2) Kontron's actual costs incurred as a result of such termination (e.g., purchase of raw materials and other obligations), which Kontron will attempt to keep as low as possible, and (3) a cancellation fee of twenty percent (20%) of such actual costs.

**17.  Attorney's Fees.** In the event a dispute arises regarding this Agreement or the Products, the prevailing party shall be entitled to recover from the unsuccessful party actual attorney's fees and costs incurred.

**18.  Entire Agreement.** BUYER agrees to all of the provisions of this Agreement by signing below and/or by submitting its purchase order for the Products. This Agreement is the sole and entire agreement between the parties (except for the price or the shipment schedule for the Products contained in Kontron's quotation or BUYER's purchase order accepted by Kontron which shall be incorporated herein subject to the terms hereof) and shall supersede all prior or contemporaneous written or oral understandings, representations or communications and/or other terms in any purchase order or other document, now or hereafter delivered. The provisions of this Agreement shall apply to any and all purchase orders or requests for Products submitted by BUYER to Kontron at any time in the future after executing this Agreement, without the need for either party to re-execute this Agreement. No modification of this Agreement shall be valid unless in writing and signed by an authorized representative of Kontron.

**19.  Governing Law and Venue.** This Agreement shall be construed and enforced according to the laws of the State of California regarding contracts made and wholly performed in California. Kontron and BUYER irrevocably submit to the jurisdiction of the state and/or federal courts in San Diego County, California for any action or proceeding regarding this Agreement.

**20.  Export.** BUYER shall not directly or indirectly export, transfer or in any way distribute any of the Products, or parts thereof, or any of Kontron's Proprietary Rights or technical data to any country or territory that is prohibited from receiving such materials under any applicable law of the United States.  **BUYER shall comply with all applicable laws and regulations, including, without limitation, all of the laws and regulations of any applicable agency of the United States government responsible for the administration of the United States export control laws and regulations and the United States Foreign Corrupt Practices Act of 1977,** as amended. BUYER shall also be responsible for obtaining all export licenses or other approvals required to export or re-export the Products outside the United States. BUYER further indemnifies, defends and holds Kontron harmless from all damages, claims, expenses, liabilities and losses including without limitation attorney's fees and costs that in any way arise out of or relate to BUYER's breach of this warranty and/or failure to comply with the provisions of this Section 20. Kontron shall not be liable in the event any authorization of any governmental authority is delayed, denied, revoked, restricted and not renewed, and BUYER shall not be relieved thereby of its obligations to pay Kontron for its Products or any other charges which are the obligations of BUYER under this Agreement.

**22.  Integration of Equipment.** Kontron shall not be liable for any problems, damages or costs associated with the integration, installation or incorporation of the Products with equipment or materials not provided by Kontron.

**23.  Authority.** The persons executing this Agreement on behalf of Kontron and BUYER warrant and represent that they have been authorized by their respective board of directors or other governing bodies to enter into this Agreement and to bind their respective companies to all of the provisions of this Agreement.

**24.  Survival.** All of the provisions of Section 11, 12, 13, 15 and 20 of this Agreement shall survive the termination or expiration of this Agreement.

**25.  Assignment.** BUYER shall not assign, transfer or otherwise encumber this Agreement or any part thereof without Kontron's prior written consent.

**26.  Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, invalid or unenforceable, the remaining provisions shall remain in full force and effect.

**Any changes or deviations to the above Terms & Conditions of Sale must be mutually agreed to by both Parties in written form**


**kontron**
... always a Jump ahead!

| | | |
|---|---|---|
| **Page #** | 1 | |
| **Quote Date** | 3/22/2006 | |
| **Customer** | 193271 | |
| **Quote #** | 1011823 | SQ |
| **RFQ** | | |

14118 Stowe Drive  Poway, CA  92064-7147
www.kontron.com    email:  sales@us.kontron.com
Phone: 800-523-2320  Fax: 858-677-0898

## SALES QUOTE

ATTENTION: KYLE VIRGIN
EXCEPTIONAL INNOVATION
480 OLDE WORTHINGTON RD.
SUITE 350
WESTERVILLE OH 43082
614 901-8899 Ext. 18343  Fax 614 901-8896
kvirgin@exceptionalinnovation.com

**Quoted By:**    TONY HALLETT
**Quote Expires:**  4/21/2006

| **INCOterms:** | **Shipping** | **Terms** |
|---|---|---|
| EX WORKS POWAY, CA | **Instructions** | Net 30 Days |

| Line # | Description | Item Number | UM | Quantity | Price | Extended Price |
|---|---|---|---|---|---|---|
| 1.000 | ETXE-PM-2GHZ/1GB (8.9" BIOS) | 380021024200EX2 | EA | 1 | 1,140.00 | 1,140.00 |
| | NON STANDARD PRODUCT 30 DAY RETURN POLICY DOES NOT APPLY | | | | | |
| 2.000 | ETXE-PM-2GHZ/1GB (12.1" BIOS) | 380021024200EX3 | EA | 1 | 1,140.00 | 1,140.00 |

************************************************************************
Discount Pricing Schedule for both BIOS versions above:
************************************************************************
1 Pc..........$1140/ea
100 Pcs..........$1031/ea
500 Pcs..........$924/ea
1,000 Pcs..........$883/ea
5,000 Pcs..........$850/ea

| | |
|---|---|
| **Sales Tax** | |
| **Quote Total** | 2,280.00 |

System configurations may include RoHS compliant and non RoHS compliant products. Please contact your Kontron Sales Representative for details.

All pricing is in U.S. Dollars.
- Price includes a two-year factory warranty.
- Above products may be subject to export control for certain destinations.
- Lifetime technical support is included for all standard products.
- Kontron can provide Custom Chassis, Data Acquisition Boards, and Special Testing Services.  Contact your sales engineer for a QUOTE.
- Kontron is an Authorized Intel Certified Dealer.
- The prices and terms on this quotation are NOT subject to verbal changes or other agreements unless approved in writing by Kontron.  All quotations and agreements are contingent upon acts of God, availability of materials and all other causes beyond our control.
- Prices are based upon costs and conditions existing on the date of quotation and are subject to change by Kontron before final acceptance.
- Typographical and stenographic error are subject to correction.
- Conditions not specifically stated herein shall be governed by established trade customs.  Terms inconsistent with those stated herein, which may appear on Purchaser's formal order, will NOT be binding on Kontron.
- Change orders that are initiated by the customer that cause the system to be de-integrated will be assessed a charge of $100.00 per system.
- Change Orders or Cancellations on special order products may be assessed additional charges, such as additional NRE fees or a cancellation fee.
- Terms and Conditions are printed on the reverse side of the hard copy quote.  Terms and Conditions may also be found on our web site.

**Exceptional Innovation**

## Purchase Request

| Reference Number: | Priority: | Date Requested: |
|---|---|---|
| JLH051305A | High | 5/12/2005 |

| Charge To: | Date Required: |
|---|---|
| Exceptional Innovation | 6/1/2005 |

### Submitted By

| Name: | Address Line 1: |
|---|---|
| Kyle Virgin | 480 Olde Worthington Rd. |

| Department: | Address Line 2: |
|---|---|
| Engineering | Suite 350 |

| E-mail Address: | City: |
|---|---|
| kvirgin@exceptionalinnovation.com | Westerville |

| Telephone Number: | State/Province: | Postal Code: |
|---|---|---|
| 614-901-8899 x50207 | Ohio | 43082 |
| | Country/Region: | |
| | USA | |

## Suggested Supplier Information

| Company Name: | Telephone Number: |
|---|---|
| Kontron | 800-523-2320 |

| Web Site Address: | Fax Number: |
|---|---|
| www.kontron.com | 858-677-0898 |

## Shipping Information

☑ Allow Partial Shipment

☑ Ship to Address Listed Above

Ship Method:
**Two-day air**

## Itemized List

Currency: USD ($)

Summary:
EI CONTROLLER

| Item Number | Description | | | | | Total with Tax ($) |
|---|---|---|---|---|---|---|
| | Part Number | Quantity | Unit Price ($) | Tax (%) | Pre-Tax Price ($) | |
| 1 | ETX-PM 1.0GHz Celeron-M | | | | | |
| | | 1,000 | 503.00 | 0.000 | 503,000.00 | 503,000.00 |
| 2 | IC 512MB DDR SDRAM SODIMM PC2 | | | | | |
| | | 1,000 | 125.00 | 0.000 | 125,000.00 | 125,000.00 |
| 3 | MSP-PM Threaded Stand Off | | | | | |

| | | 1,000 | 14.00 | 0.000 | 14,000.00 | 14,000.00 |

| | |
|---|---|
| Subtotal ($) | 642,000.00 |
| Tax ($) | 0.00 |
| Shipping/Handling Cost ($) | 0.00 |
| Total ($) | 642,000.00 |

## Notes

Attn: Tony Hallett - 300 units requested ASAP. The rest to follow within next
12 months based upon demand. Reference Sales Quote#1011431SQ. Quote
date 5/12/2005 Customer#193271

## Signatures

Sign and print your name.

_Kyle Virgin_  Kyle Virgin                              5-12-2005
**Employee Signature**                                  **Date**

_Queenie Heffner_                                       5-13-05
**Approval Signature**     _per Dale Moores_            **Date**

**Exceptional Innovation**

## Purchase Request

| Reference Number: | Priority: | Date Requested: |
|---|---|---|
| JLH0513058 | High | 5/12/2005 |

| Charge To: | Date Required: |
|---|---|
| Exceptional Innovation | 6/15/2005 |

### Submitted By

| Name: | Address Line 1: |
|---|---|
| Kyle Virgin | 480 Olde Worthington Rd. |
| Department: | Address Line 2: |
| Engineering | Suite 350 |
| E-mail Address: | City: |
| kvirgin@exceptionalinnovation.com | Westerville |
| Telephone Number: | State/Province: | Postal Code: |
| 614-901-8899 x50207 | Ohio | 43082 |
| | Country/Region: | |
| | USA | |

## Suggested Supplier Information

| Company Name: | Telephone Number: |
|---|---|
| Kontron | 800-523-2320 |
| Web Site Address: | Fax Number: |
| www.kontron.com | 858-677-0898 |

## Shipping Information

☑ Allow Partial Shipment

☑ Ship to Address Listed Above

Ship Method:
**Two-day air**

## Itemized List

Currency: USD ($)

Summary:
EI WALLPANEL/SET-TOP BOX

| Item Number | Description | | | | | Total with Tax ($) |
|---|---|---|---|---|---|---|
| | Part Number | Quantity | Unit Price ($) | Tax (%) | Pre-Tax Price ($) | |
| 1 | ETXexpress-PM Module 760-2GHz | | | | | |
| | | 1,000 | 881.00 | 0.000 | 881,000.00 | 881,000.00 |
| 2 | 1024MB DDR2-DIMM | | | | | |
| | | 1,000 | 156.00 | 0.000 | 156,000.00 | 156,000.00 |
| 3 | ETX-Express Heatspreader | | | | | |
| | | | | | | |

| | | | 1,000 | 16.00 | 0.000 | 16,000.00 | 16,000.00 |
|---|---|---|---|---|---|---|---|

| | |
|---|---|
| Subtotal ($) | 1,053,000.00 |
| Tax ($) | 0.00 |
| Shipping/Handling Cost ($) | 0.00 |
| Total ($) | 1,053,000.00 |

## Notes

Attn: Tony Hallett - 300 units requested ASAP. The rest to follow within next 12 months based upon demand. Reference Sales Quote#1011422SQ. Quote date 5/12/2005 Customer#193271

## Signatures

Sign and print your name.

_Kyle Virgin Kyle Virgin_                     5-12-2005
**Employee Signature**                        **Date**

_Jeannie Heffner_                             5-13-05
**Approval Signature**   _per Dale Moore_     **Date**

 **kontron**

| Kontron America, Inc. | | Page # | 1 |
|---|---|---|---|
| Dept 9073 | | Invoice Date | 11/30/06 |
| Los Angeles CA 90084-9073 | | Customer | 63515 |
| Wire Info: ABA# 121000248 | | Order # | 343657 SO |
| Acct# 4050004407 Wells Fargo, N.a. San Francisco, CA | | Invoice # | 412461 RI |
| Ph: 858-677-0877 Fax: 858-677-0895 | | PO # | JLH051305B REL 4 |
| EIN# 33-0498455     www.kontron.com | | | |

## INVOICE

**SOLD TO:**

EXCEPTIONAL INNOVATIONS

480 OLDE WORTHINGTON RD. #350

WESTERVILLE OH 43082

**SHIP TO:**

EXCEPTIONAL INNOVATIONS

480 OLDE WORTHINGTON RD. #350

WESTERVILLE OH 43082

| INCOterms: EX WORKS POWAY, CA | Shipping Instructions | GROUND DNSB DNI | | Terms Net Due Date | Net 60 Days 01/29/07 |
|---|---|---|---|---|---|

| Ln/Rq Dt | Description | Item Number | UM | Quantity | Price | Extended Price |
|---|---|---|---|---|---|---|
| | KYLE VIRGIN 614-901-8888 XT. 50207 | | | | | |
| | *** | | | | | |
| | *** SPECIAL SHIPPING INSTRUCTIONS ONLINE | | | | | |
| | *** | | | | | |
| | ———— QOBA REQUIRED - CONTACT TZ/MB BEFORE SHIP CONFIRM ———— | | | | | |
| 1.001 | ETXE-PM-760 EXCEPTIONAL INNOV | 380021024200EX2 | EA | 99 | 883.00 | 87,417.00 |
| | NON STANDARD PRODUCT 30 DAY RETURN POLICY DOES NOT APPLY | | | | | |
| 2.001 | ETXE-PM-760 (CU EXCEPT IN | 380021024200EX3 | EA | 99 | 883.00 | 87,417.00 |
| 5.000 | Freight | MACH 1 GROUND | EA | 1 | 225.00 | 225.00 |
| 6.000 | Text Line | TRK# SAN 2043680 | | | | |

| | | | | | Subtotal: | 175,059.00 |
|---|---|---|---|---|---|---|

. . . . . . . . . . . . . . . . . . . . Tax Group Summary . . . . . . . . . . . . . . . . . . . .

|  | OHNON | % | 174,834.00 | | | |
|---|---|---|---|---|---|---|

| | | | Tax Rate | 0 % | Sales Tax | |
|---|---|---|---|---|---|---|
| | | | | | Invoice Total | 175,059.00 |

See Terms and Conditions on web site.

 **kontron**

| | |
|---|---|
| Kontron America, Inc. | |
| Dept 9073 | |
| Los Angeles CA 90084-9073 | |
| Wire Info: ABA# 121000248 | |
| Acct# 4050004407 Wells Fargo, N.a. San Francisco, CA | |
| Ph: 858-677-0877  Fax: 858-677-0895 | |
| EIN# 33-0498455    www.kontron.com | |

| | |
|---|---|
| Page # | 1 |
| Invoice Date | 12/27/06 |
| Customer | 63515 |
| Order # | 343659    SO |
| Invoice # | 413693    RI |
| PO # | JLH051305B REL 8 |

# INVOICE

**SOLD TO:**

EXCEPTIONAL INNOVATIONS
480 OLDE WORTHINGTON RD. #350
WESTERVILLE OH 43082

**SHIP TO:**

EXCEPTIONAL INNOVATIONS
480 OLDE WORTHINGTON RD. #350
WESTERVILLE OH 43082

| INCOterms: | | Shipping | GROUND | | | Terms | Net 60 Days |
|---|---|---|---|---|---|---|---|
| EX WORKS POWAY, CA | | Instructions | DNSB DNI | | | Net Due Date | 02/25/07 |

| Ln/Rq Dt | Description | Item Number | UM | Quantity | Price | Extended Price |
|---|---|---|---|---|---|---|
| | KYLE VIRGIN 614-901-8899 XT. 18343 | | | | | |
| | *** | | | | | |
| | *** PARTIAL OK PER GARY SHULL | | | | | |
| | *** SPECIAL SHIPPING INSTRUCTIONS ONLINE | | | | | |
| | *** | | | | | |
| 1.000 | ETXE-PM-760 EXCEPTIONAL INNOV | 380021024200EX2 | EA | 20 | 883.00 | 17,660.00 |
| | NON STANDARD PRODUCT 30 DAY RETURN POLICY DOES NOT APPLY | | | | | |
| 2.000 | ETXE-PM-760 (CU·EXCEPT IN | 380021024200EX3 | EA | 18 | 883.00 | 15,894.00 |
| 3.000 | Freight | UPS GROUND COLLECT | EA | 1 | .00 | |
| 4.000 | Text Line | 1Z8157220300299500 | | | | |

| | | |
|---|---|---|
| | Subtotal: | 33,554.00 |

· · · · · · · · · · · · · · · · · · · · · · · Tax Group Summary · · · · · · · · · · · · · · · · · · · · · ·

| | | | |
|---|---|---|---|
| OHNON | % | 33,554.00 | |

| | | | |
|---|---|---|---|
| Tax Rate   0 % | | Sales Tax | |
| | | Invoice Total | 33,554.00 |

See Terms and Conditions on web site.



| | |
|---|---|
| Kontron America, Inc. | Page #     1 |
| Dept 9073 | Invoice Date   01/18/07 |
| Los Angeles CA 90084-9073 | Customer    63515 |
| Wire Info: ABA# 121000248 | Order #     343659    SO |
| Acct# 4050004407 Wells Fargo, N.a. San Francisco, CA | Invoice #    414627    RI |
| Ph: 858-677-0877 Fax: 858-877-0895 | PO #      JLH051305B REL 6 |
| EIN# 33-0498455    www.kontron.com | |

## INVOICE

**SOLD TO:**

EXCEPTIONAL INNOVATIONS

480 OLDE WORTHINGTON RD. #350

WESTERVILLE OH 43082

**SHIP TO:**

EXCEPTIONAL INNOVATIONS

480 OLDE WORTHINGTON RD. #350

WESTERVILLE OH 43082

| INCOterms: | | Shipping | GROUND | | | Terms | Net 60 Days |
|---|---|---|---|---|---|---|---|
| EX WORKS POWAY, CA | | Instructions | DNSB DNI | | | Net Due Date | 03/19/07 |

| Ln/Rq Dt | Description | Item Number | UM | Quantity | Price | Extended Price |
|---|---|---|---|---|---|---|
| KYLE VIRGIN 614-901-8899 XT. 18343 | | | | | | |
| *** | | | | | | |
| *** PARTIAL OK PER GARY SHULL | | | | | | |
| *** SPECIAL SHIPPING INSTRUCTIONS ONLINE | | | | | | |
| *** | | | | | | |
| 2.001 | ETXE-PM-760 (CU EXCEPT IN | 380021024200EX3 | EA | 2 | 883.00 | 1,766.00 |
| 5.000 | Freight | UPS GROUND COLLECT | EA | 1 | .00 | |
| 6.000 | Text Line | 1Z8157220300303085 | | | | |

| | |
|---|---|
| Subtotal: | 1,766.00 |

. . . . . . . . . . . . . . . . . . . . . Tax Group Summary . . . . . . . . . . . . . . . . . . .

| | | | |
|---|---|---|---|
| OHNON | % | 1,766.00 | |

| | | | |
|---|---|---|---|
| Tax Rate | 0 % | Sales Tax | |
| | | Invoice Total | 1,766.00 |

See Terms and Conditions on web site.



FILED
JAMES BONINI
CLERK

2007 AUG -3 P 2: 49

U.S. DISTRICT COURT
SOUTH DIST. OHIO
EAST DIV. COLUMBUS

## IN THE COURT OF COMMON PLEAS
## DELAWARE COUNTY, OHIO

EXCEPTIONAL INNOVATION, LLC   )
       )
     Plaintiff,     )     Case No.  07-CV-H-06-0765
       )
       )     Judge W. Duncan Whitney
     v.      )
       )
KONTRON AMERICA, INC.    )
       )
     Defendant.    )

2007 JUL 30 AM 11: 24

JAN ANTONOPLOS
CLERK

COMMON PLEAS COURT
DELAWARE COUNTY, OHIO
FILED

## DEFENDANT KONTRON AMERICA, INC.'S NOTICE OF
## FILING NOTICE OF REMOVAL

Please take notice that the above-captioned case has been removed to the United States

District Court for the Southern District of Ohio, Eastern Division.  In accordance with the

provisions of 28 U.S.C. § 1446, a copy of Defendant's Notice of Removal filed by Defendant

Kontron America, Inc. with the Clerk of the United States District Court for the Southern District

of Ohio, Eastern Division at Columbus, Ohio on July 27, 2007, is attached hereto.

                   Respectfully submitted,

TERMINATION CODE

                   Philomena M. Dane (0044064)
                   (Trial Attorney)
                   Jessica D. Goldman (0077049)
                   SQUIRE, SANDERS & DEMPSEY, LLP
                   1300 Huntington Center
                   41 South High Street
                   Columbus, Ohio  43215
                   (614) 365-2700
                   (614) 365-2499
                   pdane@ssd.com
                   jgoldman@ssd.com

                   Attorneys for Defendant



07 CV H 66
0765
00001800822
NOTC

## CERTIFICATE OF SERVICE

I certify that, on July 30, 2007, I caused this Defendant Kontron America, Inc.'s Notice of Filing Notice of Removal to be served via regular U.S. mail, postage prepaid, to the following individuals:

Nelson M. Reid
Sommer L. Sheely
Bricker & Eckler LLP
100 South Third Street
Columbus, Ohio 43215

Attorneys for Plaintiff

One of the Attorneys for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Exceptional Innovation, LLC,

        **NOTICE**

    **vs**

        Case Number: 2: 07-cv-0724
        Judge Sargus

Kontron America, Inc.,

        Magistrate Judge Abel

**[X] TAKE NOTICE** of a **PRELIMINARY PRETRIAL CONFERENCE**:

**Judge:**      ABEL

**Participants:** Trial Counsel. Parties Welcome.

**Place:**     United States District Court     **Room Number 208**
           85 Marconi Boulevard
           Columbus, Ohio 43215

**Date/Time:**    **October 4, 2007 at 9:30 A.M.**

# CHANGE IN PRACTICE:

- You must hold a Conference of the Parties on or before **September 6, 2007.**

- You must file a Report of the Parties with the Court on **September 27, 2007.**

> **Rule 26(f) Form, General Order on Pretrial and General Order on Settlement Week in Adobe format can be accessed through http://www.ohsd.uscourts.gov/fpabel.htm. A WordPerfect file of the Rule 26(f) Report of Parties Form Notice can be obtained by e-mailing Spencer_Harris@ohsd.uscourts.gov**

**PLEASE NOTE:** Magistrate Judge Abel prefers to meet in person with counsel. The Court is willing to re-schedule to a date on which it is more convenient for counsel to travel to Columbus. If travel to Columbus is not practicable, and **ALL PARTIES AGREE**, you may request a telephone pretrial by calling Mr. Harris.

                 Mark R. Abel
                 United States Magistrate Judge

Date: August 15, 2007                s/Spencer D. Harris
                             Spencer D. Harris/Courtroom Deputy
                             (614) 719-3027

Counsel are listed on the back of this Notice. If you are aware of any parties not included in this Notice, please call Spencer Harris immediately.

**To:**

Nelson Reid, 100 S. Third Street, Columbus, OH 43215
Sommer Sheely, 65 E. State Street, Ste. 2100, Columbus, OH 43215
Philomena Dane, Jessica Goldman, 41 S. High St., Ste. 1300, Columbus, OH 43215

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| EXCEPTIONAL INNOVATION, LLC, | : | |
| | : | Case No. 2:07cv724 |
| Plaintiff, | : | |
| | : | Judge Sargus |
| vs. | : | |
| | : | Magistrate Judge Abel |
| KONTRON AMERICA, INC., | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF EXCEPTIONAL INNOVATION, LLC'S REPLY TO DEFENDANT
KONTRON AMERICA, INC.'S COUNTERCLAIM**

Now comes Plaintiff Exceptional Innovation, LLC ("Exceptional Innovation"), by and through counsel, and for its Reply to Defendant Kontron America, Inc.'s ("Kontron") Counterclaim against it states the following:

1.    Exceptional Innovation incorporates by reference the allegations and averments in its Complaint against Kontron as if fully set forth herein and further responds to Kontron's Counterclaim as follows:

2.    Exceptional Innovation lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained on Paragraph 2 of the Counterclaim and therefore denies such allegations.

3.    Exceptional Innovation admits the allegations contained in Paragraph 3 of the Counterclaim.

4.    Exceptional Innovation admits the allegations contained in Paragraph 4 of the Counterclaim.

5.    In response to Paragraph 5 of the Counterclaim, Exceptional Innovation states that the Sales Quotes and Terms and Conditions are written documents that speak for themselves.

2144674v2

Further responding, Exceptional Innovation denies that the "Agreement" consists of the Sales Quotes and Terms and Conditions and denies all remaining allegations contained in Paragraph 5 of the Counterclaim.

6.     Paragraph 6 of the Counterclaim contains legal conclusions to which no response is required. To the extent a response is required, Exceptional Innovation denies the allegations contained in Paragraph 6 of the Counterclaim.

7.     Exceptional Innovation admits the allegations contained in Paragraph 7 of the Counterclaim, except that, to the extent "expressed an interest" is intended to indicate that Exceptional Innovation sought out Kontron, such allegation is denied.

8.     Exceptional Innovation admits the allegations contained in Paragraph 8 of the Counterclaim.

9.     Exceptional Innovation admits the allegations contained in Paragraph 9 of the Counterclaim.

10.     Exceptional Innovation admits that Kontron issued the two sales quotes attached as Exhibit 1 on or about May 12, 2005, and denies the remaining allegations contained in Paragraph 10 of the Counterclaim.

11.     In response to Paragraph 11 of the Counterclaim, Exceptional Innovation states that the Sales Quotes are written documents that speak for themselves. Further responding, Exceptional Innovation denies the remaining allegations contained in Paragraph 11 of the Counterclaim.

12.     Exceptional Innovation denies the allegations contained in Paragraph 12 of the Counterclaim.

13.     Exceptional Innovation admits that it issued two Purchase Requests and that true and accurate copies of these requests are attached to Kontron's Answer and Counterclaim as Exhibit 2 and were also attached to Exceptional Innovation's Complaint. Exceptional Innovation denies the remaining allegations contained in Paragraph 13 of the Counterclaim.

14.     In response to Paragraph 14 of the Counterclaim, Exceptional Innovation states that the documents comprising the agreement are written documents that speak for themselves. Further responding, Exceptional Innovation denies the remaining allegations contained in Paragraph 14 of the Counterclaim.

15.     Exceptional Innovation admits that it received a reduction in the price it was originally to pay for Kontron's products. Exceptional Innovation also admits that Kontron issued the Sales Quote that is attached as Exhibit 1. Exhibit 1 is a written document that speaks for itself. Further responding, Exceptional Innovation denies any remaining allegations contained in Paragraph 15 of the Counterclaim.

16.     Exceptional Innovation admits that Kontron invoiced a reduced sum to Exceptional Innovation. Exceptional Innovation denies the remaining allegations contained in Paragraph 16 of the Counterclaim.

17.     Exceptional Innovation admits that Kontron eventually delivered products to it. Further responding, to the extent such is alleged, Exceptional Innovation denies that Kontron delivered conforming goods and that the delivery was timely. Exceptional Innovation denies any remaining allegations contained in Paragraph 17 of the Counterclaim.

18.     Exceptional Innovation admits that Kontron sent it the three invoices that are attached to the Answer and Counterclaim as Exhibit 3. Exceptional Innovation denies any remaining allegations in Paragraph 18 of the Counterclaim.

19.    For its response to Paragraph 19 of the Counterclaim, Exceptional Innovation states that the invoices attached as Exhibit 3 are written documents that speak for themselves. Further responding, Exceptional Innovation denies the remaining allegations contained in Paragraph 19 of the Counterclaim.

20.    For its response to Paragraph 20 of the Counterclaim, Exceptional Innovation states that the invoices attached as Exhibit 3 are written documents that speak for themselves. Further responding, Exceptional Innovation denies the remaining allegations contained in Paragraph 20 of the Counterclaim.

21.    For its response to Paragraph 21 of the Counterclaim, Exceptional Innovation states that the invoices attached as Exhibit 3 are written documents that speak for themselves. Exceptional Innovation denies the remaining allegations contained in Paragraph 21 of the Counterclaim.

22.    Exceptional Innovation denies the allegations contained in Paragraph 22 of the Counterclaim.

23.    Exceptional Innovation denies the allegations contained in Paragraph 23 of the Counterclaim.

24.    Exceptional Innovation incorporates its responses and averments in each of the preceding paragraphs as if fully set forth herein.

25.    Exceptional Innovation denies the allegations contained in Paragraph 25 of the Counterclaim.

26.    Exceptional Innovation admits only that Kontron issued invoices and delivered goods to it, but denies the remaining allegations contained in Paragraph 26 of the Counterclaim.

27.    Exceptional Innovation denies the allegations contained in Paragraph 27 of the Counterclaim.

28.    Exceptional Innovation admits that Kontron has demanded additional payment from it, but denies the remaining allegations contained in Paragraph 28 of the Counterclaim.

29.    Exceptional Innovation denies the allegations contained in Paragraph 29 of the Counterclaim.

30.    Exceptional Innovation denies the allegations contained in Paragraph 30 of the Counterclaim.  By way of further response, Exceptional Innovation denies that it is liable to Kontron in the sum demanded, or in any sum.

31.    Exceptional Innovation incorporates its responses and averments in each of the preceding paragraphs as if fully set forth herein.

32.    For its response to Paragraph 32 of the Counterclaim, Exceptional Innovation states that the documents comprising the agreement are written documents that speak for themselves.  Further responding, Exceptional Innovation denies the remaining allegations contained in Paragraph 32 of the Counterclaim.

33.    Exceptional Innovation admits only that it initiated a lawsuit in Delaware County Common Pleas Court on June 27, 2007 and denies the remaining allegations contained in Paragraph 33 of the Counterclaim.

34.    Exceptional Innovation denies the allegations contained in Paragraph 34 of the Counterclaim.

35.    Exceptional Innovation denies the allegations contained in Paragraph 35 of the Counterclaim.  By way of further response, Exceptional Innovation denies that it is liable to Kontron in any sum.

36.     Exceptional Innovation incorporates its responses and averments in each of the preceding paragraphs as if fully set forth herein.

37.     Exceptional Innovation denies the allegations contained in Paragraph 37 of the Counterclaim.

38.     Exceptional Innovation denies the allegations contained in Paragraph 38 of the Counterclaim.

39.     Exceptional Innovation denies the allegations contained in Paragraph 39 of the Counterclaim.

40.     Paragraph 40 of the Counterclaim contains legal conclusions to which no response is required.  To the extent a response is required, Exceptional Innovation denies the allegations contained in Paragraph 40 of the Counterclaim.  By way of further response, Exceptional Innovation denies that it is liable to Kontron in any sum.

41.     Exceptional Innovation incorporates its responses and averments in each of the preceding paragraphs as if fully set forth herein.

42.     Exceptional Innovation admits only that it purchased goods from Kontron, that Kontron delivered some goods to it, and that some of the deliveries were within the last two years.  Exceptional Innovation denies the remaining allegations contained in Paragraph 42 of the Counterclaim.

43.     Exceptional Innovation denies the allegations contained in Paragraph 43 of the Counterclaim.

44.     Exceptional Innovation denies the allegations contained in Paragraph 44 of the Counterclaim.  By way of further response, Exceptional Innovation denies that it is liable to Kontron in the sum demanded, or in any sum.

45.    Exceptional Innovation incorporates its responses and averments in each of the preceding paragraphs as if fully set forth herein.

46.    Exceptional Innovation denies the allegations contained in Paragraph 46 of the Counterclaim.

47.    Exceptional Innovation denies the allegations contained in Paragraph 47 of the Counterclaim.  By way of further response, Exceptional Innovation denies that it is liable to Kontron in the sum demanded, or in any sum.

48.    Exceptional Innovation incorporates its responses and averments in each of the preceding paragraphs as if fully set forth herein.

49.    Exceptional Innovation admits only that it received some goods from Kontron, but denies the remaining allegations contained in Paragraph 49 of the Counterclaim.

50.    Exceptional Innovation denies the allegations contained in Paragraph 50 of the Counterclaim.

51.    Paragraph 51 of the Counterclaim contains legal conclusions to which no response is required.  To the extent a response is required, Exceptional Innovation denies the allegations contained in Paragraph 51 of the Counterclaim.

52.    Paragraph 52 of the Counterclaim contains legal conclusions to which no response is required.  To the extent a response is required, Exceptional Innovation denies the allegations contained in Paragraph 52 of the Counterclaim.  By way of further response, Exceptional Innovation denies that it is liable to Kontron in the sum demanded, or in any sum.

53.    Exceptional Innovation denies any and all allegations contained in Kontron's Counterclaim that are not specifically admitted herein.

## AFFIRMATIVE DEFENSES

54.    Kontron's Counterclaim fails to state a claim on which relief can be granted.

55.    To the extent Kontron's claims rely upon California law and this Court finds California law inapplicable, such counts fail to state a claim on which relief can be granted.

56.    To the extent the agreement is governed by statute, Kontron's claims relying upon common law fail to state a claim in which relief can be granted.

57.    Exceptional Innovation is excused from further performance under the agreement, including payment of any additional sums, due to Kontron's prior breaches.

58.    Kontron's recovery is precluded in whole or in part by the doctrine of unclean hands.

59.    Kontron's recovery is precluded in whole or in part by the applicable statutes of limitations.

60.    Kontron's recovery is precluded in whole or in part by the doctrines of waiver and/or estoppel.

61.    Kontron's recovery is precluded in whole or in part by the doctrine of laches.

62.    Kontron's recovery is precluded in whole or in part by Kontron's failure to act in good faith in the performance of its contractual obligations to Exceptional Innovation.

63.    Kontron's recovery is precluded in whole or in part by Kontron's unexcused delays in performance.

64.    Kontron's recovery is precluded in whole or in part by its breaches of warranty with respect to the products sold to Exceptional Innovation.

65.    Kontron reserves the right to assert additional affirmative defenses as shall hereafter become known.

2144674v2                                      8

WHEREFORE, Plaintiff Exceptional Innovation, LLC respectfully requests that this

Court enter judgment in its favor and against Defendant Kontron America, Inc. on Kontron's

Counterclaim, along with such other and further relief as the Court deems appropriate.


Respectfully submitted,

*/s/ Nelson M. Reid*
Nelson M. Reid  (0068434), Trial Attorney
BRICKER & ECKLER LLP
100 South Third Street
Columbus, Ohio  43215
Telephone:     (614) 227-2300
Facsimile:      (614) 227-2390
Email:           nreid@bricker.com

OF COUNSEL:

Sommer L. Sheely  (0076071)
BRICKER & ECKLER LLP
100 South Third Street
Columbus, Ohio  43215
Telephone:     (614) 227-2300
Facsimile:      (614) 227-2390
Email:           ssheely@bricker.com

*Attorneys for Plaintiff Exceptional Innovation, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 23, 2007, I caused a true and accurate

copy of the foregoing Plaintiff Exceptional Innovation, LLC's Reply to Defendant Kontron

America, Inc.'s Counterclaim to be served via the Court's ECF system to the following:

> Philomena M. Dane
> Jessica D. Goldman
> Squire, Sanders & Dempsey LLP
> 1300 Huntington Center
> 41 South High Street
> Columbus, OH 43215
> pdane@ssd.com
> jgoldman@ssd.com
>
> *Attorneys for Defendant Kontron America, Inc.*

> */s/ Nelson M. Reid* _____
> Nelson M. Reid

2144674v2



# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

EXCEPTIONAL INNOVATION, LLC,    :
                                :    Case No. 2:07cv724
            Plaintiff,          :
                                :    Judge Sargus
    vs.                         :
                                :    Magistrate Judge Abel
KONTRON AMERICA, INC.,          :
                                :
            Defendant.          :

## PLAINTIFF EXCEPTIONAL INNOVATION, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT KONTRON AMERICA, INC.'S MOTION TO TRANSFER VENUE

**I.    INTRODUCTION**

Defendant Kontron America, Inc.'s ("Kontron") Motion to Transfer is based solely upon a misinterpretation of its own terms and conditions and should be denied.[1] Kontron claims venue should be transferred because the parties contractually submitted to the "exclusive" jurisdiction of the state and/or federal courts of San Diego County, California. In reality, nothing in the document on which Kontron relies for this proposition, Kontron's "Terms and Conditions," provides an exclusive venue in California. The relevant clause is merely a permissive forum selection clause and is not a substantial factor in the analysis of whether to transfer the case. The fact that a California court might *also* be *an* appropriate venue is irrelevant because Kontron's sole objection to *this* venue fails.

In fact, the interests of convenience and justice are served by proceeding in this Court. Kontron has not otherwise argued that this venue is improper and does not contest this Court's personal jurisdiction over it. This case should proceed here, as it was properly brought in the

---

[1] For this Opposition only, Exceptional Innovation assumes that Kontron's Terms and Conditions are applicable. Exceptional Innovation reserves all of its rights to contest the validity or applicability of the Terms and Conditions.



Delaware County Common Pleas Court and removed to this Court by Kontron. Kontron failed

to show that the pertinent factors weigh strongly (or at all) in favor of transfer, and its Motion to

Transfer should be denied.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This case concerns a contract dispute between Exceptional Innovation, LLC

("Exceptional Innovation") and Kontron, one of its component vendors. Declaration of Kyle

Virgin, attached as Exhibit 1, at ¶ 5. Exceptional Innovation is based in Westerville, Delaware

County. Virgin Decl. ¶ 3. It designs and sells state-of-the-art digital home entertainment and

automation systems. Id. Kontron makes and sells embedded standard and custom computer

technology, which it sells nationally and worldwide. Kontron Answer ¶¶ 2, 5.

As set forth more fully in Exceptional Innovation's Complaint, Kontron sold embedded

internal computer modules (the "Modules") to Exceptional Innovation for use in certain of

Exceptional Innovation's new hardware devices. Virgin Decl. ¶ 6. Among the features that were

key to Exceptional Innovation's decision to order the Modules was their One Gigabit Ethernet

product, which was far more advanced than other products on the market at the time. Virgin

Decl. ¶ 7. Exceptional Innovation communicated to Kontron that using state-of-the-art

technology was critical to the hardware products it was developing. Virgin Decl. ¶ 8.

Despite Kontron's promises to deliver state-of-the-art, functional Modules for integration

into Exceptional Innovation's emerging products on Exceptional Innovation's required time

schedule, Kontron woefully failed to deliver. Virgin Decl. ¶ 9. Kontron failed either to deliver

timely or to deliver Modules that worked. Virgin Decl. ¶ 10. Beginning in May 2005, Kontron

began to stall and to inform Exceptional Innovation of problems it was having in producing

working Modules. Virgin Decl. ¶ 11. In the summer and fall of 2005, Kontron shipped only

small quantities of Modules to Exceptional Innovation, which failed due to a variety of technical issues. Virgin Decl. ¶ 12.

Exceptional Innovation rejected non-conforming Modules for many months and conducted extensive in-house testing on the Modules to aid Kontron in diagnosing problems with the Modules. Virgin Decl. ¶ 13. Not until December 2005 did Kontron finally begin to deliver Modules in any substantial quantity. Virgin Decl. ¶ 14. But even then, the Modules still did not work properly. Id. For another four to five months, Exceptional Innovation repeatedly rejected Modules, devoted its resources to diagnosing their issues and failures, and persistently demanded delivery of conforming goods from Kontron. Virgin Decl. ¶ 15. Kontron responded with additional excuses, and delays continued. Virgin Decl. ¶ 16. Finally, in or about April 2006, Kontron started to deliver working Modules, nearly a year after promised. Virgin Decl. ¶ 17. It took Kontron until November 2006 to deliver the quantity of Modules required by the parties' agreement. Virgin Decl. ¶ 18. By then, they had become outdated and were replaced by more advanced technology. Virgin Decl. ¶ 19.

Exceptional Innovation requested to substitute the Modules for more advanced models in light of Kontron's lengthy delays and failures to provide state-of-the art goods, but Kontron refused. Virgin Decl. ¶ 20. Exceptional Innovation paid in excess of $1 million to Kontron for the Modules and the other products that were part of the parties' agreement despite Kontron's failure to perform. Virgin Decl. ¶ 21.

Exceptional Innovation commenced an action in the Court of Common Pleas of Delaware County on June 27, 2007 seeking a declaration that it has no further contractual obligation to Kontron. On July 27, 2007, Kontron removed the case to this Court. Kontron answered the Complaint on August 3, 2007 and filed a Counterclaim purporting to assert six

causes of action against Exceptional Innovation based upon the same underlying dispute.  On

that day, Kontron also sought transfer to the Southern District of California at San Diego.

## III.   LAW AND ANALYSIS

### A.     The Clause Kontron Claims Must Be Enforced Does Not Provide Exclusive Venue In California.

Kontron's argument that the Court should transfer the case because it must enforce a

forum selection clause contained in Kontron's "Terms and Conditions" is a red herring.  Even if

the Court enforces the clause Kontron invokes, that clause neither requires, nor warrants, the

transfer Kontron seeks.  Kontron's "Terms and Conditions" document provides the following:

"Kontron and BUYER irrevocably submit to the jurisdiction of the state and/or federal courts in

San Diego County, California, for any action or proceeding regarding this Agreement."   See

Exhibit 1 to Affidavit of Anthony T. Hallett, at ¶ 19.

At most, if this clause is valid, it has two effects:  (1) consent by the parties to an exercise

of personal jurisdiction by a California court; and (2) a state or federal California court is *an*

appropriate venue.  As Kontron admits it sells products in the United States and worldwide, such

a clause is advantageous in allowing Kontron to bring a lawsuit in a California court against a

party with whom it has contracted, if needed.  Kontron's Answer ¶ 2.  Without this consent,

parties might lack requisite contacts with the State of California to confer personal jurisdiction

there.

But that fact, however, does not prevent a party from bringing suit against Kontron in a

different, appropriate venue.  No reasonable reading of the clause above mandates venue in

California.  The parties could have established exclusive venue if they had desired, but they did

not.  Moreover, Kontron's attempt to argue that the word "irrevocably" equates to exclusivity

distorts the clause.  Using its common meaning, the word "irrevocably" can only mean that,

*whatever* the clause provides, it cannot be undone by either of the parties. At best, then, the parties irrevocably consented to the exercise of personal jurisdiction by a California court in a case brought there and irrevocably agreed that a California court would be an appropriate venue.

> **B.    A Permissive Forum Selection Clause Such as the One at Issue is Not a Substantial Factor in the Analysis for Whether to Transfer Venue Under 28 U.S.C. §1404(a).**

The burden of establishing that a transfer of venue is appropriate under 28 U.S.C. §1404(a) is on the party seeking transfer. Shapiro v. Merrill Lynch & Co., 634 F. Supp. 587, 589 (S.D. Ohio 1986). While the ultimate decision as to whether to transfer venue is within the discretion of the district court, the court must decide on a case-by-case basis the proper "balance [of] the defendant's desire for transfer against the plaintiff's choice of forum" and a "plaintiff's choice of forum is given considerable weight and the balance of convenience, considering all relevant factors, must be strongly in favor of a transfer before such will be granted." Strategic Ambulance, Inc. v. Martinez, No. 1:05:CV-698, 2006 U.S. Dist. LEXIS 9489, at *4-*5 (S.D. Ohio Feb. 24, 2006) (citing Fogel v. Wolfgang, 48 F.R.D. 286, 289 (S.D.N.Y. 1969) and quoting Artisan Dev. v. Mountain States Dev. Corp., 402 F. Supp. 1312, 1314 (S.D. Ohio 1975)).

A forum selection clause may be a factor to which a defendant points in favor of a transfer. However, "[w]here the forum selection clause is permissive, rather than mandatory, it is not a significant factor weighing in favor of the selected forum." Id. at *5 (citing First Solar, LLC v. Rohwedder, Inc., No. 3:04 CV 7518, 2004 U.S. Dist. LEXIS 24600, at *2 (N.D. Ohio Dec. 8, 2004)).

Kontron points to only one factor in support of its request for transfer, the permissive forum selection clause. This single, "not significant" factor cannot outweigh Exceptional Innovation's choice of an Ohio forum. Moreover, other relevant factors weigh in favor of

proceeding in this District. Exceptional Innovation is based here. Virgin Decl. ¶ 3. All of its documents and witnesses relative to this dispute are located in this District. Virgin Decl. ¶ 22. It conducted on-site testing of the defective Kontron Modules at its Westerville facility. Virgin Decl. ¶ 13. This Court has an interest in deciding this case, as it concerns the rights of a local company. The convenience of the parties and witnesses is, thus, served by proceeding in this District. At the very least, the burden on Kontron in proceeding here equals that for Exceptional Innovation in proceeding in California. Where the burdens are in equipoise, Kontron has failed to meet its burden to justify transfer. Strategic Ambulance, 2006 U.S. Dist. LEXIS 9489, at *7. It is not prejudicial to require Kontron to litigate here, as Kontron solicited an agreement with Exceptional Innovation and breached that agreement by failing to deliver goods timely to Exceptional Innovation's Westerville facility and by eventually delivering non-conforming goods.

C.    **Kontron Asserts No Other Basis for Transfer and Apparently Concedes that This Court has Personal Jurisdiction Over It.**

Enforcement of the clause above is the only basis on which Kontron seeks transfer under 28 U.S.C. §1404(a). Kontron does not argue any other facts supporting transfer for Kontron's convenience or that of witnesses. It also does not contest that, but for the purported "exclusive" venue clause discussed above, this Court is an appropriate venue under Federal Rules of Civil Procedure 3(B)(3), 3(B)(6) and 3(E). In fact, now that Kontron has removed the state court action to this Court, it would be precluded from arguing that this venue is improper for any other reason. See Shivers v. Sherman Acquisition, II, LP, No. 4:06CV30, 2006 U.S. Dist. LEXIS 9449, at *4-*5 (N.D. Ohio Mar. 9, 2006) (removal implicitly sanctions venue so as to prevent subsequent transfer on the basis of improper venue).

Kontron also does not dispute that personal jurisdiction exists over it in this District. Indeed, it admits in its Answer that is sells products nationally. Kontron's Answer ¶ 2. It also admits that one of its employee-agents (Jerome Rozek), with whom Exceptional Innovation regularly dealt in connection with the Agreement, had a North Royalton, Ohio address and a phone number with the area code 440 (suburban Cleveland). Kontron Answer ¶ 14; see also Complaint ¶¶ 13, 14. Thus, no concern that this Court ultimately could not decide the case due to lack of personal jurisdiction over Kontron exists.

This case was properly brought in the Court of Common Pleas of Delaware County and should remain in this Court, having been properly removed at Kontron's option. Kontron asserts no valid reason for transfer sufficient to overcome the many factors favoring this District.

## IV.    CONCLUSION

Plaintiff Exceptional Innovation, LLC respectfully requests that this Court deny Defendant Kontron America, Inc.'s Motion to Transfer Venue.

Respectfully submitted,


/s/ Nelson M. Reid
Nelson M. Reid  (0068434), Trial Attorney
BRICKER & ECKLER LLP
100 South Third Street
Columbus, Ohio  43215
Telephone:    (614) 227-2300
Facsimile:    (614) 227-2390
Email:        nreid@bricker.com

OF COUNSEL:

Sommer L. Sheely  (0076071)
BRICKER & ECKLER LLP
100 South Third Street
Columbus, Ohio  43215
Telephone:    (614) 227-2300
Facsimile:    (614) 227-2390
Email:        ssheely@bricker.com

*Attorneys for Plaintiff Exceptional Innovation, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 24, 2007, I caused a true and accurate

copy of the foregoing Plaintiff Exceptional Innovation, LLC's Memorandum in Opposition to

Defendant Kontron America, Inc.'s Motion to Transfer Venue to be served via the Court's ECF

system to the following:

> Philomena M. Dane
> Jessica D. Goldman
> Squire, Sanders & Dempsey LLP
> 1300 Huntington Center
> 41 South High Street
> Columbus, OH 43215
> pdane@ssd.com
> jgoldman@ssd.com
>
> *Attorneys for Defendant Kontron America, Inc.*

> /s/ Nelson M. Reid
> Nelson M. Reid

2145651v1

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

EXCEPTIONAL INNOVATION, LLC,  :
                             :     Case No. 2:07cv724

         Plaintiff,        :

                             :     Judge Sargus

     vs.                        :

                             :     Magistrate Judge Abel

KONTRON AMERICA, INC.,     :

                             :

         Defendant.      :

### DECLARATION OF KYLE VIRGIN

I, Kyle Virgin, hereby declare as follows:

1.     My name is Kyle Virgin and I am over eighteen years of age.

2.     I am employed by Exceptional Innovation, LLC ("Exceptional Innovation"), as Director of Engineering and have held that position for three years.

3.     Exceptional Innovation is based in Westerville, Delaware County.  It designs and sells state-of-the-art digital home entertainment and automation systems.

4.     I have personal knowledge of the dispute between Exceptional Innovation and Kontron America, Inc. ("Kontron") that is the subject of the above-referenced lawsuit.

5.     The case concerns a contract dispute between Exceptional Innovation and Kontron, one of its component vendors.

6.     Kontron sold embedded internal computer modules (the "Modules") to Exceptional Innovation for use in certain of Exceptional Innovation's new hardware devices.

7.     Among the features that were key to Exceptional Innovation's decision to order the Modules was their One Gigabit Ethernet product, which was far more advanced than other products on the market at the time.

8.    Exceptional Innovation communicated to Kontron that using state-of-the-art technology was critical to the hardware products it was developing.

9.    Despite Kontron's promises to deliver state-of-the-art, functional Modules for integration into Exceptional Innovation's emerging products on Exceptional Innovation's required time schedule, Kontron woefully failed to deliver.

10.    Kontron failed either to deliver timely or to deliver Modules that worked.

11.    Beginning in May 2005, Kontron began to stall and to inform Exceptional Innovation of problems it was having in producing working Modules.

12.    In the summer and fall of 2005, Kontron shipped only small quantities of Modules to Exceptional Innovation, which failed due to a variety of technical issues.

13.    Exceptional Innovation rejected non-conforming Modules for many months and conducted extensive in-house testing on the Modules to aid Kontron in diagnosing problems with the Modules.

14.    Not until December 2005 did Kontron finally begin to deliver Modules in any substantial quantity.  But even then, the Modules still did not work properly.

15.    For another four to five months, Exceptional Innovation repeatedly rejected Modules, devoted its resources to diagnosing their issues and failures, and persistently demanded delivery of conforming goods from Kontron.

16.    Kontron responded with additional excuses, and delays continued.

17.    Finally, in or about April 2006, Kontron started to deliver working Modules, nearly a year after promised.

18.    It took Kontron until November 2006 to deliver the quantity of Modules required by the parties' agreement.

19. By then, the Modules had become outdated and were replaced by more advanced technology.

20. Exceptional Innovation requested to substitute the Modules for more advanced models in light of Kontron's lengthy delays and failures to provide state-of-the art goods, but Kontron refused.

21. Exceptional Innovation paid in excess of $1 million to Kontron for the Modules and the other products that were part of the parties' agreement, despite Kontron's failure to perform.

22. All documents within Exceptional Innovation's possession, custody or control that are relevant to this dispute are located in the Southern District of Ohio. All Exceptional Innovation employee or former employee witnesses are located in the Southern District of Ohio.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.

Executed on August 23, 2007.

Kyle Virgin

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 24, 2007, I caused a true and accurate copy of the foregoing Plaintiff Exceptional Innovation, LLC's Memorandum in Opposition to Defendant Kontron America, Inc.'s Motion to Transfer Venue to be served via the Court's ECF system to the following:

Philomena M. Dane
Jessica D. Goldman
Squire, Sanders & Dempsey LLP
1300 Huntington Center
41 South High Street
Columbus, OH 43215
pdane@ssd.com
jgoldman@ssd.com

*Attorneys for Defendant Kontron America, Inc.*

/s/ Nelson M. Reid
Nelson M. Reid

2145651v1

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

EXCEPTIONAL INNOVATION, LLC,          :
                                      :    **Case No. 2:07cv724**
         **Plaintiff,**               :
                                      :    **Judge Sargus**
    **vs.**                           :
                                      :    **Magistrate Judge Abel**
KONTRON AMERICA, INC.,                :
                                      :
         **Defendant.**               :

### CORPORATE DISCLOSURE STATEMENT

Pursuant to the Corporate Disclosure Statement provisions in Local Civil Rule 3.4: Any non-governmental corporate party to a proceeding must file a Corporate Affiliations/Financial Interest statement identifying all of its parent, subsidiary and other affiliate corporations and listing any publicly held company that "controls, is controlled by, or is under common control with a publicly controlled corporation." A party must file the statement upon filing a complaint, answer, motion, response or other pleadings in this Court, whichever occurs first. The obligation to disclose any changes will be continuing throughout the pendency of this case.

In compliance with those provisions, this Corporate Disclosure Statement is filed on behalf of:

Plaintiff Exceptional Innovation, LLC

1.    Is said party a parent, subsidiary or other affiliate of a publicly owned corporation?

_____ Yes          ____X____ No

If the answer is Yes, list below the identity of the parent, subsidiary or other affiliate corporation and the relationship between it and the named party:

N/A

2.    Is there a publicly owned corporation, not a party to the case, that has a financial interest in the outcome?    _____ Yes        ____X____ No

**If the answer is Yes, list the identity of such corporation and the nature of the financial interest.**

<u>N/A</u>

Respectfully submitted,

<u>/s/ Nelson M. Reid</u>
Nelson M. Reid  (0068434), Trial Attorney
BRICKER & ECKLER LLP
100 South Third Street
Columbus, Ohio  43215
Telephone:     (614) 227-2300
Facsimile:     (614) 227-2390
Email:         nreid@bricker.com

OF COUNSEL:

Sommer L. Sheely  (0076071)
BRICKER & ECKLER LLP
100 South Third Street
Columbus, Ohio  43215
Telephone:     (614) 227-2300
Facsimile:     (614) 227-2390
Email:         ssheely@bricker.com

*Attorneys for Plaintiff Exceptional Innovation, LLC*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that the foregoing *Corporate Disclosure Statement* was

filed electronically with the United States District Court for the Southern District of Ohio on the 6th

day of September, 2007.  Parties may access the filing through the Court's ECF System.


/s/ Nelson M. Reid
Nelson M. Reid        (0068434)

2168288v1                                3

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

EXCEPTIONAL INNOVATION, LLC )
                                            )    **Case No. 2:07cv724**
              Plaintiff,                    )
                                            )    **Judge Sargus**
v.                                          )
                                            )    **Magistrate Judge Abel**
KONTRON AMERICA, INC.                       )
                                            )
              Defendant.                    )

---

### DEFENDANT KONTRON AMERICA, INC.'S REPLY BRIEF IN
### SUPPORT OF ITS MOTION TO TRANSFER VENUE

---

In its brief, Exceptional does nothing to rebut the fact that it agreed that California law governs this dispute and that it contracted to litigate this dispute in state or federal court in San Diego County, California. Exceptional has not met its heavy burden of demonstrating that the parties' mandatory forum selection clause designating San Diego County as the forum of choice should not be enforced. Exceptional fails to cite any case—because there is none—that would allow the filing of an anticipatory declaratory relief action in the wrong forum to trump the parties' contractual forum selection on a motion to transfer to the agreed venue. The Court should grant Kontron's motion and allow the Southern District of California to adjudicate Exceptional's breaches of the same contract selecting that forum.

## I.    LAW AND ARGUMENT

### A.    The Forum Selection Clause is Presumptively Valid and Exceptional Has Not Met its Heavy Burden of Rebutting the Clause's Presumptive Validity.

Forum selection clauses, such as the one at issue here, are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). The burden is on

Exceptional to show that a transfer is improper.  See Tieman v. Victaulic Co., 2007 U.S. Dist.

LEXIS 7036 (S.D. Ohio 2007) (granting Section 1404 motion to transfer because plaintiff was

unable to carry its burden to show that forum was so inconvenient that it should not be bound by

the parties' contractual choice of forum).  When a forum selection clause is chosen in an "arm's

length negotiation by experienced and sophisticated businessmen....absent some compelling and

countervailing reason it should be honored by the parties and enforced by the courts." Bremen,

407 U.S. at 12.

      The "Governing Law and Venue" clause included in the Agreement is mandatory and

provides that all actions shall be governed by California law and brought in federal and/or state

courts in San Diego County.  A reasonable reading of the forum selection clause demonstrates

that the parties agreed that venue would be proper only in California.  Indeed, the provision's

language demonstrates that the parties agreed that venue would be proper only in California.

Indeed, the parties *irrevocably submitted* to a California court for the adjudication of any claims

arising from the Agreement.  See Exh. 1 to Hallett Aff., Section 19 of the Terms and Conditions.

The Agreement further provided that it "shall be construed and enforced according to the laws of

the State of California...."  See id.  Under California state law, the only proper venue for this

dispute is San Diego County.  See Cal. Code of Civ. Proc. § 395(a).  Exceptional agreed to the

forum selection clause and it can show no basis why the Court should find it to be invalid or

unenforceable.

      Under Bremen, enforcement is unreasonable only when (1) agreement to the forum-

selection clause was induced by fraud or overreaching, (2) enforcement would contravene a

strong public policy of the forum in which suit is brought, or (3) trial in the contracted forum will

be so gravely difficult and inconvenient that the complaining party will for all practical purposes

be deprived of his day in court. 407 U.S. at 12-19.

Under the Supreme Court's <u>Bremen</u> analysis, the parties' forum selection clause is

presumptively valid and enforceable unless Exceptional meets its heavy burden of showing some

compelling reason that the clause should not be enforced. This Exceptional did not and cannot

do. Indeed, Exceptional fails to even address the <u>Bremen</u> factors and therefore concedes that

they require enforcement of the parties' forum selection clause.

> **1.    The forum selection clause was not induced by fraud or overreaching.**

Exceptional has not claimed, and cannot show, that the Agreement's forum selection

provision was procured by fraud or overreaching. Either party was free to object to the terms of

the Agreement or to negotiate different terms contained therein. Both parties are sophisticated

businesses with no apparent disparity in bargaining power. The "Governing Law and Venue"

clause was set forth in the Terms & Conditions and incorporated multiple times in the Sales

Quotes and on Kontron's invoices. By failing to voice any objection whatsoever, Exceptional

cannot now claim that the forum selection clause resulted from some type of improper conduct

by Kontron. Exceptional fails to satisfy the first <u>Bremen</u> prong.

> **2.    Enforcement of the forum selection clause would not contravene
> public policy.**

Public policy in both the Sixth Circuit and under California law strongly favors enforcing

forum selection clauses. <u>See</u>, <u>e.g.</u>, <u>Interamerican Trade Corp. v. Companhia Fabricadora de</u>

<u>Pecas</u>, 973 F. 2d 487 (6th Cir. 1992); <u>Creditors Collection Bureau v. Access Data, Inc.</u>, 820 F.

Supp. 311, 312 (W.D.K.Y. 1993); <u>Smith, Valentino & Smith, Inc. v. Superior Court of Los</u>

<u>Angeles County</u>, 17 Cal.3d 491, 495-96 (1976) ("No satisfying reason of public policy has been

suggested why enforcement should be denied a forum selection clause appearing in a contract

3

entered into freely and voluntarily by parties who have negotiated at arm's length.") Exceptional

has not and cannot credibly claim that enforcing its contract is contrary to any public policy.

Indeed, the opposite is true. Exceptional failed to meet its burden on the second <u>Bremen</u>

reasonableness consideration.

> **3.     Trial in California will not be so difficult or inconvenient to
> Exceptional that for all practical purposes it will be deprived of its
> day in court.**

Exceptional does not argue that trial in California would deprive Exceptional of its day in

court. That Exceptional is based in Ohio and certain documents and witnesses relevant to this

lawsuit are located in Ohio is not enough to carry the heavy burden of showing that Exceptional

will be so inconvenienced to overcome the agreed forum. Many of the documents and witnesses

relevant to this lawsuit are located in California. While Exceptional may experience some level

of inconvenience by traveling to California for trial, that inconvenience does not deprive

Exceptional of its day in court. <u>See</u> <u>Tieman</u>, 2007 U.S. Dist. LEXIS 7036 at *6 (inconvenience

may only said to be "so difficult" if witnesses actually may be unavailable for trial in one fora or

if records could not be produced in the alternative forum). Exceptional failed to make any

showing whatsoever as to unavailable witnesses or records. And it cannot because the Federal

Rules of Civil Procedure will govern in the Southern District of California. Mere distance, mere

expense, or mere hardship to an individual litigant is insufficient to invalidate a forum selection

clause. <u>See</u> <u>Buckeye Check Cashing of Ariz. V. Lang</u>, 2007 U.S. Dist. LEXIS 12746, *19 (S.D.

Ohio). Exceptional failed to prove the third <u>Bremen</u> factor.

4

**B.**     **The Forum Selection Clause the Parties Agreed to is Mandatory.**

Exceptional erroneously argues that the forum selection clause contained in the

Agreement and agreed upon by the parties is permissive, and thus should be given no weight in

the Court's §1404(a) analysis. Exceptional is wrong.

Exceptional only cites one case, <u>Strategic Ambulance, Inc. v. Martinez</u>, 2006 U.S. Dist.

LEXIS 9489 (S.D. Ohio 2006), in support of its claim that the forum selection clause is

permissive. <u>See</u> Opposition Brief at p. 5. The court in <u>Strategic Ambulance</u> did not even engage

in the permissive/mandatory analysis. In fact, the opinion does not include a reference to the

forum selection clause at issue. This Court, therefore, has no way of knowing how the <u>Strategic</u>

<u>Ambulance</u> clause differs from the clause at issue here.

Moreover, Exceptional ignores and fails to distinguish the United State Supreme Court's

<u>Stewart</u> opinion and the numerous other cases Kontron cites holding that the presence of a forum

selection clause weighs heavily in the transfer analysis and should be enforced absent a strong

showing by the plaintiff that it should be set aside as invalid due to fraud or overreaching. <u>See</u>

Kontron's Brief, pp. 5-9.

The fact that Exceptional agreed to litigate this dispute in the California Courts cannot be

ignored. As the U.S. Supreme Court and the Sixth Circuit have repeatedly recognized, a

commercial defendant has the right to the benefit of its bargain and enforcement of a reasonable

forum selection clause. <u>See</u> <u>Preferred Capital, Inc v. Assocs. In Urology</u>, 453 F.3d 719, 723-724

(6th Cir. 2006) ("Defendant is a commercial entity, and should have realized the implications of

agreeing to a forum selection clause....Having failed to object to the terms of the forum selection

clause, Defendant now claims it is disadvantageous.... While Defendant may be dissatisfied with

the litigation forum, it is not our task to save Defendant from the consequences of an agreement

5

it freely entered into"); see also other cases cited in Kontron's moving papers, pp.9-10 (none of which Exceptional attempts to distinguish).

Based on a reasonable reading of the forum selection clause contained in the Agreement and established case law, this Court should find that the clause in the Agreement is mandatory and enforceable against Exceptional.

**C.     The Section 1404 Factors Strongly Favor Transfer To The Agreed Forum.**

The presence of a mandatory forum selection clause, in addition to other factors, militates heavily in favor of transfer. In support of its argument against transfer, Exceptional quotes selectively from Strategic Ambulance. While distinguishable, the parts that Exceptional ignores are the most relevant to this case.

For example, Strategic Ambulance states: "The factors to be considered under 28 U.S.C. § 1404(a) are similar to those weighed by courts in determining *forum non conveniens* motions; however, transfers under § 1404(a) may be granted 'upon a lesser showing of inconvenience.'" 2006 U.S. Dist. LEXIS 9489 at *3 (citation omitted). As shown in Kontron's initial motion, both from a public and private perspective this Court is an inconvenient forum.

First, the contractual forum is more convenient for Kontron. Kontron proposed a San Diego County venue for any future dispute with Exceptional because of Kontron's connections to and the Agreement's nexus with California. See Affidavit of Anthony Hallett attached to Kontron's Motion to Transfer ("Hallett Aff.") at ¶ 15. Kontron's principal place of business is in San Diego County, California. Hallett Aff., ¶16. Many of the documents and witnesses relevant to the dispute between Kontron and Exceptional are located in San Diego County. Hallett Aff., ¶18. Many of the computer modules that Kontron delivered to Exceptional under the Agreement were assembled in San Diego County. Hallett Aff., ¶17. Exceptional sent payments to Kontron

in San Diego County under the Agreement. Hallett Aff., ¶19. And even Exceptional concedes

that, "At the very least, the burden on Kontron in proceeding here equals that for Exceptional

Innovation in proceeding in California." Exceptional's Opposition Brief, p.6.

In addition and most compelling, Exceptional expressly agreed to a California forum:

Kontron and Exceptional "irrevocably submit to the jurisdiction of the state and/or federal courts

in San Diego County, California for any action or proceeding regarding this Agreement."

Exhibit 1 to Hallett Aff., § 19. Commenting on the role that such a clause plays within Section

1404 considerations, the Supreme Court has held: "The presence of a forum selection clause

such as the parties entered into in this case will be a significant factor that figures centrally in the

district court's calculus." Stewart Org., Inc. v. Rioch Corp., 487 U.S. 22, 29 (1988). Indeed, the

party opposing the enforcement of a forum selection clause bears the heavy burden of

overcoming the weight accorded the clause. Wm. R. Hague, Inc. v. Sandburg, 468 F. Supp. 2d

952, 963 (S.D. Ohio 2006); Inghram v. Universal Indus. Gases, Inc., 2006 U.S. Dist. LEXIS

7730, *19 (ED Tenn. 2006) (party opposing transfer sought under forum selection clause bears

the burden of making a clear showing that enforcement of the contract forum selection clause

would be unjust or unreasonable). Exceptional does not even attempt to overcome its burden and

therefore concedes that the clause is enforceable.

Exceptional instead argues that its choice to ignore the forum selection clause and file

this case in Ohio anyway should be "given considerable weight." Exceptional Opposition Brief,

p.5 (citing Strategic Ambulance). But Exceptional again selectively quotes that case. Strategic

Ambulance goes on to say that "a plaintiff's choice of forum is not given considerably greater

weight than other factors." 2006 U.S. Dist. LEXIS 9489 at *5 (citation omitted). Strategic

Ambulance also emphasizes that "'trial court retains discretion to determine the weight to be

given the plaintiff's choice of forum on a case-by-case basis.'" Id. at *5 (citation omitted).

Further, among the factors the Court should consider is whether the plaintiff filed an anticipatory

suit or has engaged in forum shopping.[1] Id. at *6.

Because the Agreement's forum selection clause is entitled to deference under controlling

law, Kontron respectfully submits that the Court should transfer this case pursuant to 28 U.S.C.

§ 1404(a).

### D.    Venue in This Court is Improper Because of the Forum Selection Clause

Because the mandatory forum selection clause is valid and enforceable and Exceptional

has utterly failed to carry its burden to override the effect of the clause to which it agreed, venue

in this Court is improper.  In an attempt to divert the Court from its Section 1404 analysis and the

case law supporting transfer, Exceptional cites Shivers v. Sherman Acquisition, II, LP, 2006 U.S.

Dist. LEXIS 9449 (N.D. Ohio).  Shivers, however, is inapplicable to this case because it involves

a transfer analysis under 28 U.S.C. § 1406(a) ("Section 1406"), not Section 1404(a).  Shivers,

however, is inapplicable.

Unlike here, Shivers involved a transfer under 28 U.S.C. § 1406(a), not § 1404(a).  2006

U.S. Dist. LEXIS at *4-5.  A subsequent case citing Shivers recognized the distinction between

transfer pursuant to Section 1406 and transfer pursuant to Section 1404.  See Floyd v. Swift

Trans. Corp., 2006 U.S. Dist. LEXIS 62814, *6 (E.D. Tenn.) (noting that after removal

"defendant may seek a transfer pursuant to 28 U.S.C. § 1404(a)").

---

[1] In fact, Strategic Ambulance distinguishes the circumstances there from the case before this Court when it states:
"On the other hand, this is not a case in which Defendants [(the parties opposing transfer)] have filed an action for
only declaratory judgment with the obvious purpose of ensuring that any lawsuit between the parties would be in
Defendants' preferred forum."  2006 U.S. Dist. LEXIS 9489 at *9 (citations omitted).  Exceptional, however, did
exactly that by filing its anticipatory declaratory judgment suit in an Ohio court.  Accordingly, Exceptional is easily
distinguished from Strategic Ambulance as that court plainly observes.

8

As important, <u>Shivers</u> did not involve a contractual forum selection clause. Accordingly, <u>Shivers</u> has no relevance to a Section 1404(a) motion to transfer venue to a contractually chosen forum. Because Kontron seeks a transfer pursuant to Section 1404, based on the mandatory forum selection clause, it is proceeding appropriately and a transfer is warranted.

## II.    CONCLUSION

Exceptional has failed to demonstrate why this Court should override the parties' forum selection clause and deny a transfer of this case to the contractually agreed upon forum. Exceptional should not be permitted to escape it commercial bargain to litigate this dispute in California by filing an anticipatory declaratory relief in Ohio. Exceptional has simply failed to meet its heavy burden to justify invalidating the parties' forum selection clause. Kontron respectfully requests the Court transfer this case to the United States District Court for the Southern District Court of California pursuant to 28 U.S.C. § 1404(a).

Respectfully submitted,

s/ Philomena M. Dane
Philomena M. Dane (0044064)
Jessica D. Goldman (0077049)
SQUIRE, SANDERS & DEMPSEY, LLP
1300 Huntington Center
41 South High Street
Columbus, Ohio 43215
(614) 365-2700
(614) 365-2499
pdane@ssd.com
jgoldman@ssd.com

Attorneys for Defendant Kontron America, Inc.

9



## CERTIFICATE OF SERVICE

I certify that, on September 7, 2007, I caused this Reply Brief in Support of Motion to

Transfer to be served via the Court's ECF system to the following individual:

Nelson M. Reid
Sommer L. Sheely
Bricker & Eckler LLP
100 South Third Street
Columbus, Ohio 43215

Attorneys for Plaintiff

s/Philomena M. Dane
One of the Attorneys for Defendant

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

FILED
OCT 17 2007
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___ DEPUTY

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**

EXCEPTIONAL INNOVATION, LLC

**DEFENDANTS**

KONTRON AMERICA, INC, et al

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Delaware
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Nelson Marlin Reid
100 S Third Street
Columbus, OH 43215-4291

**ATTORNEYS (IF KNOWN)**

'07 CV 2041 LAB WMc

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT** (For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☒4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☒5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

## 28 U.S.C. 1441

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prisoner Conditions | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☐ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☒ 5 Transferred from another district (specify) Southern Dist. of OHIO  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23   DEMAND $ ___   Check YES only if demanded in complaint: JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):** JUDGE ___   Docket Number ___

DATE   October 17, 2007     SIGNATURE OF ATTORNEY OF RECORD