1  Vladimir Belo (State Bar No. 192217)
   vbelo@bricker.com
2  BRICKER & ECKLER
   100 South Third Street
3  Columbus, Ohio 43215-4291
   Telephone:  614-227-2300
4  Facsimile:  614-226-8812

5  Jeffrey Wertheimer (State Bar No. 120378)
   jwertheimer@rutan.com
6  Christopher Heikaus Weaver (State Bar No. 231907)
   cheikausweaver@rutan.com
7  RUTAN & TUCKER, LLP
   611 Anton Boulevard, Fourteenth Floor
8  Costa Mesa, California 92626-1931
   Telephone:  714-641-5100
9  Facsimile:   714-546-9035

10 Attorneys for Plaintiff and Counter-Defendant
   EXCEPTIONAL INNOVATION, LLC
11

12                UNITED STATES DISTRICT COURT

13                SOUTHERN DISTRICT OF CALIFORNIA

14 | EXCEPTIONAL INNOVATION, LLC, | Case No. 3:07-CV-02041-LAB-LSP
15 |        Plaintiff,            |
                                  | **STIPULATION RE FILING FIRST**
16 |        vs.                   | **AMENDED COMPLAINT**
17 | KONTRON AMERICA, INC.,       |
18 |        Defendant.            |
19 |                              |
   | AND RELATED CROSS-ACTIONS    |
20

21
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

1   It is STIPULATED by the parties through their respective attorneys of record that
Plaintiff and Counter-defendant may file a First Amended Complaint, a copy of which is
attached as Exhibit A.

It is further STIPULATED that the Defendant and Counter-claimant waives notice
and service of the First Amended Complaint and that it shall have 15 days from the filing
of this stipulation to file and serve its answer to the First Amended Complaint.

Dated: March 17, 2008
RUTAN & TUCKER, LLP
JEFFREY WERTHEIMER
CHRIS HEIKAUS WEAVER

By: _____
Chris Heikaus Weaver
Attorneys for Plaintiff and Counter-
Defendant EXCEPTIONAL
INNOVATION, LLC

Dated: March 17, 2008
SOLOMON WARD SEIDENWURM AND
SMITH, LLP

By: _____
Elizabeth Ann Mitchell
Attorneys for Defendant and
Counter-Claimant KONTRON
AMERICA, INC.

1  Vladimir Belo (State Bar No. 192217)
   vbelo@bricker.com
2  Bricker & Eckler
   100 South Third Street
3  Columbus, Ohio 43215-4291
   Telephone:  614-227-2300
4  Facsimile:  614-226-8812

5  Jeffrey Wertheimer (State Bar No. 120378)
   jwertheimer@rutan.com
6  Christopher Heikaus Weaver (State Bar No. 231907)
   cheikausweaver@rutan.com
7  RUTAN & TUCKER, LLP
   611 Anton Boulevard, Fourteenth Floor
8  Costa Mesa, California 92626-1931
   Telephone:  714-641-5100
9  Facsimile:  714-546-9035

10 Attorneys for Plaintiff and Counter-Defendant
   EXCEPTIONAL INNOVATION, LLC
11

12                UNITED STATES DISTRICT COURT

13                SOUTHERN DISTRICT OF CALIFORNIA

14 EXCEPTIONAL INNOVATION, LLC,        Case No. 3:07-CV-02041-LAB-LSP

15         Plaintiff,
                                       **FIRST AMENDED COMPLAINT OF
16    vs.                              PLAINTIFF EXCEPTIONAL
                                       INNOVATION, LLC**
17 KONTRON AMERICA, INC.,
                                       **DEMAND FOR JURY TRIAL**
18         Defendant.

19 AND RELATED CROSS-ACTIONS.
20

21       Now comes Plaintiff Exceptional Innovation, LLC ("Exceptional Innovation"), by

22 and through counsel, and for its First Amended Complaint against Defendant Kontron

23 America, Inc. ("Kontron") states the following:

24                                  PARTIES

25       1.    Plaintiff Exceptional Innovation is now and was at all times an Ohio limited

26 liability company with its principal place of business in Westerville, Delaware County,

27 Ohio. Plaintiff's members are residents of Ohio and Florida.

28       2.    Upon information and belief, Kontron is now and was at all relevant times a

EXHIBIT __4__, PAGE __2__

1 | Delaware corporation with its principal place of business in Poway, San Diego County,
2 | California.

## JURISDICTION AND VENUE

3. Jurisdiction over this matter is conferred on the Court by 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, excluding interest and costs. There is complete diversity of citizenship between the parties.

4. The Court has personal jurisdiction over Kontron by virtue of its presence in this judicial district, and because, among other things, the activities complained of herein occurred in part in this judicial district and Defendant conducts business in this judicial district.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Kontron resides in this district.

## STATEMENT OF FACTS

6. This case concerns a contract dispute between Exceptional Innovation, a final product manufacturer, and Kontron, one of its component vendors.

7. Exceptional Innovation is, in part, in the business of designing and selling state-of-the-art digital home entertainment and automation systems. These systems offer user convenience and efficiency by integrating various home entertainment, security, lighting, and other systems onto a single network. In the course of its business, Exceptional Innovation designs and sells both software and hardware.

8. Kontron is in the business of selling embedded standard and custom computer technology. Kontron's products are components intended for integration into other systems. The relevant Kontron product to this action is a particular type of embedded internal computer module, which Exceptional Innovation expected to use in certain new hardware devices.

9. At a trade show in or about September 2004, Exceptional Innovation's President and Chief Executive Officer, Seale Moorer, was approached by Matthias Huber, Kontron's representative, who offered basic information about the nature of Kontron's

1　products.

2　　10.　After the trade show, Mr. Moorer asked Kyle Virgin, Hardware Design
3　Engineer for Exceptional Innovation, to explore further whether Kontron's technology
4　may be an appropriate solution for integration into Exceptional Innovation's emerging
5　hardware products.

6　　11.　As a result, Mr. Virgin made some information requests on Kontron's
7　website.

8　　12.　Mr. Virgin informed Kontron, among other things, of the nature of the
9　solution he was seeking, the nature of Exceptional Innovation's product lines, and
10　Exceptional Innovation's anticipated production timetable for the new hardware devices.

11　　13.　Shortly thereafter, Kontron instructed its local agent, Jerome Rozek, to
12　contact Exceptional Innovation to work toward developing an appropriate solution.

13　　14.　Upon information and belief, during the entire time Exceptional Innovation
14　dealt with Mr. Rozek, he maintained an office as Kontron's employee and agent in North
15　Royalton, Ohio, and listed both his office and mobile telephone numbers as within the 440
16　area code (suburban Cleveland). Mr. Rozek's email address was at all relevant times
17　jerome.rozek@us.kontron.com.

18　　15.　In late 2004 and early 2005, Exceptional Innovation viewed and tested
19　various sample products sent by Kontron both in Ohio and during visits to Kontron in
20　California. Mr. Rozek also met with Exceptional Innovation in its Delaware County
21　facility on four or five separate occasions.

22　　16.　A series of products Kontron offered in late 2004 and early 2005 was not
23　acceptable for Exceptional Innovation's needs. However, in April 2005, Kontron
24　presented Exceptional Innovation with a module Exceptional Innovation felt would
25　eventually meet its needs, both in terms of technology and timeframe. This module is
26　known by the Kontron name ETX Express (hereinafter "the Modules").

27　　17.　Among the features that were key to Exceptional Innovation's decision to
28　order the Modules was the one gigabit ethernet product, which was far more advanced than

EXHIBIT  A , PAGE 4

1  other products on the market at the time. Exceptional Innovation communicated to
2  Kontron that using state-of-the-art technology was critical to the hardware products it was
3  developing.
4      18.   Kontron also promised it would have the Modules ready by June 2005,
5  which fit Exceptional Innovation's planned production timeframe.
6      19.   On or about May 2005, Exceptional Innovation submitted two purchase
7  requests to Kontron for approximately $1.5 million worth of several Kontron products,
8  including an order for 1000 Modules worth approximately $912,000. (True and correct
9  copies of the purchase requests are attached hereto as Exhibit A.)
10     20.   The purchase requests were accepted by Kontron, forming a binding contract
11 for the goods ordered therein (the "Contract").
12     21.   Consistent with Kontron's representations, the Contract indicated the
13 "required date" for the Modules was June 15, 2005. The Contract also contained the
14 following notation: "300 units requested ASAP. The rest to follow within the next 12
15 months based upon demand." Kontron did not indicate that it would have any problem
16 meeting these delivery deadlines.
17     22.   In fact, Kontron seriously misrepresented the date on which it could perform
18 by delivering working Modules.
19     23.   Immediately after accepting the contracting, Kontron began to stall,
20 repeatedly informing Exceptional Innovation of problems it was having producing working
21 Modules.
22     24.   In the summer and fall of 2005, Kontron shipped only small quantities of
23 Modules to Exceptional Innovation. These Modules repeatedly failed due to a variety of
24 technical issues. Indeed, the initial quantities of modules lacked even the one gigabit
25 ethernet capability that Kontron had promised, thus rendering them virtually useless.
26     25.   For the 15 month time period from April 2005 through July 2006, Kontron
27 produced a continuous series of defective Modules. Desperate for working modules to fill
28 orders, Mr. Virgin and others at Exceptional Innovation devoted substantial time on a daily

EXHIBIT  A , PAGE  5

basis to working with Kontron to de-bug the Modules; testing, rejecting and returning the few, faulty Modules Kontron did ship; and demanding performance under the Contract.

26. Among other problems, Kontron's modules repeatedly demonstrated problems with the speed, the BIOS, and the dynamic fan. Frequently the Modules were packaged so poorly that they arrived damaged beyond repair. The Modules that made it through the shipping unscathed were inevitably returned as defective goods or scavenged in an attempt to create a working Module that could be use at trade shows.

27. In June 2006, Mr. Huber of Kontron sent a letter to Exceptional Innovation conceding that the Kontron Modules were faulty. He further admitted that due to the faulty construction, each Module would have to be individually repaired and reconfigured, causing further delay. The first 300 working modules were not delivered until approximately August 2006, over one year after the initially promised delivery date of June 2005.

28. By the time Kontron delivered the quantity of Modules required by the Contract they had become outdated by faster technology. In light of the numerous problems and the delay in delivery of over a year, in late 2007 Exceptional Innovation asked Kontron to substitute the Modules for more advanced models but Kontron refused.

29. To date, Exceptional Innovation has paid in excess of $1 million to Kontron for the Modules and the other products that were part of the Contract. This payment despite the fact that Kontron was over one year late in delivering the Modules.

30. Nonetheless, Kontron is now demanding in excess of $200,000 in additional payments from Exceptional Innovation. As set forth herein, Exceptional Innovation has declined to pay any additional sums for the Modules.

31. Kontron materially breached the Contract by its lengthy and disruptive failures to deliver working, state-of-the-art Modules in a timely manner.

32. Exceptional Innovation has been damaged by Kontron's breaches. These damages include but are not limited to:

- Exceptional Innovation expended significant time and funds attempting to

EXHIBIT A , PAGE 6

1  help Kontron cure defects in the Modules; and

2  • Kontron's failure to timely deliver the Modules contributed to delays in
3  Exceptional Innovation's production schedule; and

4  • Kontron's lengthy delays left Exceptional Innovation unable to fill customer
5  orders; and

6  • The poor performance of Kontron and its modules has hurt Exceptional
7  Innovation's reputation; and

8  • Exceptional Innovation is now left with a product that does not fulfill its
9  original goal of building its new hardware devices with state-of-the-art
10 technology possible, and as a result it will be required to re-tool its product
11 in order to accommodate properly constructed modules that it must purchase
12 from another manufacturer.

13                          FIRST CAUSE OF ACTION
14                          (DECLARATORY JUDGMENT)

15  33.  Exceptional Innovation realleges and incorporates herein each and every
16 allegation set forth above.

17  34.  Kontron materially breached the Contract by engaging in the conduct as set
18 forth above.

19  35.  By virtue of Kontron's breaches, Exceptional Innovation is excused from
20 further performance under the Contract, including payment of any additional sums.

21  36.  Thus, there is a real and justiciable controversy between the parties as to
22 whether Exceptional Innovation has any further obligation to remit payment to Kontron in
23 light of Kontron's material breaches of the Contract.

24  37.  Under Ohio Rev. Code § 2721.03 and California Code of Civil Procedure
25 § 1060, Exceptional Innovation is entitled to a declaration construing the parties' rights
26 and obligations under the Contract.

27  38.  Speedy relief is necessary to preserve Exceptional Innovation's rights that
28 may otherwise be impaired or lost.

39. Exceptional Innovation is entitled to a declaration that (1) Kontron materially breached the Contract and (2) Exceptional Innovation is excused from further performance under the Contract as a result of said breach and thus has no liability to Kontron.

## SECOND CAUSE OF ACTION
### (BREACH OF CONTRACT – LATE DELIVERY/NONCONFORMING GOODS)

40. Exceptional Innovation realleges and incorporates herein each and every allegation set forth above.

41. Exceptional Innovation has fully performed its obligations under the Contract, except to the extent they were excused.

42. Kontron materially breached the Contract by engaging in the conduct as set forth above.

43. Exceptional Innovation promptly notified Kontron that its performance was unacceptable.

44. As a direct and proximate result of Kontron's breach of the Contract, Exceptional Innovation has suffered damages in an amount to be proven at the time of trial.

## THIRD CAUSE OF ACTION
### (BREACH OF CONTRACT – EXPRESS WARRANTY)

45. Exceptional Innovation realleges and incorporates herein each and every allegation set forth above.

46. Exceptional Innovation has fully performed its obligations under the Contract, except to the extent they were excused.

47. Kontron included an express warranty provision in the Terms and Conditions that it contends in the Counter-claim were part of the parties' Contract.

48. Exceptional Innovation disputes that the express warranty provision forms part of the parties' agreement. However, to the extent it does, Kontron breached the provision by shipping Modules that failed due to a variety of technical reasons and which Kontron was unable to fix for almost a year. Exceptional Innovation was forced to devote

1 | substantial resources of its own to correcting the problems with Kontron's Modules.

2 |     49.    Exceptional Innovation promptly notified Kontron that its performance was
3 | unacceptable.

4 |     50.    As a direct and proximate result of Kontron's breach of warranty,
5 | Exceptional Innovation has suffered damages in an amount to be proven at the time of
6 | trial.

## FOURTH CAUSE OF ACTION
## (BREACH OF IMPLIED WARRANTIES)

9 |     51.    Exceptional Innovation realleges and incorporates herein each and every
10 | allegation set forth above.

11 |     52.    Kontron is a merchant of electronics goods, such as the Modules and other
12 | units that Exceptional Innovation purchased. Therefore, the parties' Contract includes the
13 | implied warranty of merchantability (Cal. Comm. Code § 2314(1)).

14 |     53.    At the time the parties reached agreement, Exceptional Innovation intended
15 | to use the Modules for a particular purpose. Kontron knew or had reason to know of this
16 | particular purpose. Exceptional Innovation relied on Kontron's skill and expertise to select
17 | and furnish goods suitable for its particular purpose. Kontron, at the time the parties
18 | reached agreement, knew or had reason to know that Exceptional Innovation was relying
19 | on Kontron's skill and expertise. Therefore, the parties' Contract incorporates the implied
20 | warranty of fitness for a particular purpose (Cal. Comm. Code § 2315).

21 |     54.    Kontron breached the implied warranty of merchantability by failing in a
22 | timely fashion to ship Modules that could pass without objection in the trade under the
23 | contract description and that were fit for the ordinary purposes for which such goods are
24 | used.

25 |     55.    Kontron breached the implied warranty of fitness for a particular purpose by
26 | providing Modules that were not fit for the particular purpose they were intended.

27 |     56.    Exceptional Innovation promptly notified Kontron that its performance was
28 | unacceptable.

EXHIBIT A, PAGE 9

57. As a direct and proximate result of Kontron's breach of warranty, Exceptional Innovation has suffered damages in an amount to be proven at the time of trial.

WHEREFORE, Exceptional Innovation, LLC hereby demands judgment and relief against Defendant Kontron America, Inc., as follows:

A. For a declaration that Kontron materially breached the Contract, and Exceptional Innovation is excused from any further performance or liability to Kontron under the Contract;

B. For monetary damages according to proof;

C. For attorneys' fees and expenses; and

D. For costs and such other remedy as the Court deems just and proper.

Dated: March 18, 2008

RUTAN & TUCKER, LLP
JEFFREY WERTHEIMER
CHRISTOPHER HEIKAUS WEAVER

By: _____
Jeffrey Wertheimer
Attorneys for Plaintiff and Counter-Defendant EXCEPTIONAL INNOVATION, LLC

## JURY DEMAND

Plaintiff Exceptional Innovation, LLC hereby demands a jury trial as to all issues so triable.

Dated: March 18, 2008

RUTAN & TUCKER, LLP
JEFFREY WERTHEIMER
CHRISTOPHER HEIKAUS WEAVER

By: _____
Jeffrey Wertheimer
Attorneys for Plaintiff and Counter-Defendant EXCEPTIONAL INNOVATION, LLC

EXHIBIT  A , PAGE  10

# PROOF OF SERVICE BY E-MAIL

**STATE OF CALIFORNIA, COUNTY OF ORANGE**

I am employed by the law office of Rutan & Tucker, LLP in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 611 Anton Boulevard, Fourteenth Floor, Costa Mesa, California 92626-1931. My electronic notification address is lcauble@rutan.com.

On March 19, 2008, at   I served on the interested parties in said action the within:

**STIPULATION RE FILING FIRST AMENDED COMPLAINT**

by transmitting a true copy of the foregoing document to the e-mail addresses set forth as stated below:

| | |
|---|---|
| Elizabeth A. Mitchell, Esq.<br>Solomon Ward Seidenwurm & Smith, LLP<br>Wells Fargo Plaza<br>401 B Street, Suite 1200<br>San Diego, CA 92101<br>email: mitchell@swsslaw.com | Attorneys for Defendant and Counter-Claimant Kontron America, Inc. |
| Vladimir P. Belo, Esq.<br>Bricker & Eckler LLP<br>100 South Third Street<br>Columbus, OH 43215-4291<br>email: vbelo@bricker.com | Co-Counsel for Plaintiff and Counter-Defendant Exceptional Innovation, LLC |

Executed on March 19, 2008, at Costa Mesa, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Linda Cauble
(Type or print name)

_____
(Signature)

711/026480-
893363.01 a03/18/08