Vladimir Belo (State Bar No. 192217)
vbelo@bricker.com
Bricker & Eckler
100 South Third Street
Columbus, Ohio 43215-4291
Telephone:   614-227-2300
Facsimile:    614-226-8812

Jeffrey Wertheimer (State Bar No. 120378)
jwertheimer@rutan.com
Summer Young Agriesti (State Bar No. 232883)
syoung@rutan.com
RUTAN & TUCKER, LLP
611 Anton Boulevard, Fourteenth Floor
Costa Mesa, California 92626-1931
Telephone:   714-641-5100
Facsimile:    714-546-9035

Attorneys for Plaintiff and Counter-Defendant
EXCEPTIONAL INNOVATION, LLC

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXCEPTIONAL INNOVATION, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>KONTRON AMERICA, INC.,<br><br>Defendant. | Case No. 3:07-CV-02041-LAB-LSP<br><br>**FIRST AMENDED COMPLAINT OF PLAINTIFF EXCEPTIONAL INNOVATION, LLC**<br><br>**DEMAND FOR JURY TRIAL** |
| AND RELATED CROSS-ACTIONS. | |

Now comes Plaintiff Exceptional Innovation, LLC ("Exceptional Innovation"), by and through counsel, and for its First Amended Complaint against Defendant Kontron America, Inc. ("Kontron") states the following:

PARTIES

1.   Plaintiff Exceptional Innovation is now and was at all times an Ohio limited liability company with its principal place of business in Westerville, Delaware County, Ohio.  Plaintiff's members are residents of Ohio and Florida.

2.   Upon information and belief, Kontron is now and was at all relevant times a

1  Delaware corporation with its principal place of business in Poway, San Diego County,
2  California.

## JURISDICTION AND VENUE

3.  Jurisdiction over this matter is conferred on the Court by 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, excluding interest and costs. There is complete diversity of citizenship between the parties.

4.  The Court has personal jurisdiction over Kontron by virtue of its presence in this judicial district, and because, among other things, the activities complained of herein occurred in part in this judicial district and Defendant conducts business in this judicial district.

5.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Kontron resides in this district.

## STATEMENT OF FACTS

6.  This case concerns a contract dispute between Exceptional Innovation, a final product manufacturer, and Kontron, one of its component vendors.

7.  Exceptional Innovation is, in part, in the business of designing and selling state-of-the-art digital home entertainment and automation systems. These systems offer user convenience and efficiency by integrating various home entertainment, security, lighting, and other systems onto a single network. In the course of its business, Exceptional Innovation designs and sells both software and hardware.

8.  Kontron is in the business of selling embedded standard and custom computer technology. Kontron's products are components intended for integration into other systems. The relevant Kontron product to this action is a particular type of embedded internal computer module, which Exceptional Innovation expected to use in certain new hardware devices.

9.  At a trade show in or about September 2004, Exceptional Innovation's President and Chief Executive Officer, Seale Moorer, was approached by Matthias Huber, Kontron's representative, who offered basic information about the nature of Kontron's

products.

10. After the trade show, Mr. Moorer asked Kyle Virgin, Hardware Design Engineer for Exceptional Innovation, to explore further whether Kontron's technology may be an appropriate solution for integration into Exceptional Innovation's emerging hardware products.

11. As a result, Mr. Virgin made some information requests on Kontron's website.

12. Mr. Virgin informed Kontron, among other things, of the nature of the solution he was seeking, the nature of Exceptional Innovation's product lines, and Exceptional Innovation's anticipated production timetable for the new hardware devices.

13. Shortly thereafter, Kontron instructed its local agent, Jerome Rozek, to contact Exceptional Innovation to work toward developing an appropriate solution.

14. Upon information and belief, during the entire time Exceptional Innovation dealt with Mr. Rozek, he maintained an office as Kontron's employee and agent in North Royalton, Ohio, and listed both his office and mobile telephone numbers as within the 440 area code (suburban Cleveland). Mr. Rozek's email address was at all relevant times jerome.rozek@us.kontron.com.

15. In late 2004 and early 2005, Exceptional Innovation viewed and tested various sample products sent by Kontron both in Ohio and during visits to Kontron in California. Mr. Rozek also met with Exceptional Innovation in its Delaware County facility on four or five separate occasions.

16. A series of products Kontron offered in late 2004 and early 2005 was not acceptable for Exceptional Innovation's needs. However, in April 2005, Kontron presented Exceptional Innovation with a module Exceptional Innovation felt would eventually meet its needs, both in terms of technology and timeframe. This module is known by the Kontron name ETX Express (hereinafter "the Modules").

17. Among the features that were key to Exceptional Innovation's decision to order the Modules was the one gigabit ethernet product, which was far more advanced than

1  other products on the market at the time.  Exceptional Innovation communicated to
2  Kontron that using state-of-the-art technology was critical to the hardware products it was
3  developing.
4      18.   Kontron also promised it would have the Modules ready by June 2005,
5  which fit Exceptional Innovation's planned production timeframe.
6      19.   On or about May 2005, Exceptional Innovation submitted two purchase
7  requests to Kontron for approximately $1.5 million worth of several Kontron products,
8  including an order for 1000 Modules worth approximately $912,000.  (True and correct
9  copies of the purchase requests are attached hereto as Exhibit A.)
10     20.   The purchase requests were accepted by Kontron, forming a binding contract
11 for the goods ordered therein (the "Contract").
12     21.   Consistent with Kontron's representations, the Contract indicated the
13 "required date" for the Modules was June 15, 2005.  The Contract also contained the
14 following notation: "300 units requested ASAP.  The rest to follow within the next 12
15 months based upon demand."  Kontron did not indicate that it would have any problem
16 meeting these delivery deadlines.
17     22.   In fact, Kontron seriously misrepresented the date on which it could perform
18 by delivering working Modules.
19     23.   Immediately after accepting the contracting, Kontron began to stall,
20 repeatedly informing Exceptional Innovation of problems it was having producing working
21 Modules.
22     24.   In the summer and fall of 2005, Kontron shipped only small quantities of
23 Modules to Exceptional Innovation.  These Modules repeatedly failed due to a variety of
24 technical issues.  Indeed, the initial quantities of modules lacked even the one gigabit
25 ethernet capability that Kontron had promised, thus rendering them virtually useless.
26     25.   For the 15 month time period from April 2005 through July 2006, Kontron
27 produced a continuous series of defective Modules.  Desperate for working modules to fill
28 orders, Mr. Virgin and others at Exceptional Innovation devoted substantial time on a daily

basis to working with Kontron to de-bug the Modules; testing, rejecting and returning the few, faulty Modules Kontron did ship; and demanding performance under the Contract.

26. Among other problems, Kontron's modules repeatedly demonstrated problems with the speed, the BIOS, and the dynamic fan. Frequently the Modules were packaged so poorly that they arrived damaged beyond repair. The Modules that made it through the shipping unscathed were inevitably returned as defective goods or scavenged in an attempt to create a working Module that could be use at trade shows.

27. In June 2006, Mr. Huber of Kontron sent a letter to Exceptional Innovation conceding that the Kontron Modules were faulty. He further admitted that due to the faulty construction, each Module would have to be individually repaired and reconfigured, causing further delay. The first 300 working modules were not delivered until approximately August 2006, over one year after the initially promised delivery date of June 2005.

28. By the time Kontron delivered the quantity of Modules required by the Contract they had become outdated by faster technology. In light of the numerous problems and the delay in delivery of over a year, in late 2007 Exceptional Innovation asked Kontron to substitute the Modules for more advanced models but Kontron refused.

29. To date, Exceptional Innovation has paid in excess of $1 million to Kontron for the Modules and the other products that were part of the Contract. This payment despite the fact that Kontron was over one year late in delivering the Modules.

30. Nonetheless, Kontron is now demanding in excess of $200,000 in additional payments from Exceptional Innovation. As set forth herein, Exceptional Innovation has declined to pay any additional sums for the Modules.

31. Kontron materially breached the Contract by its lengthy and disruptive failures to deliver working, state-of-the-art Modules in a timely manner.

32. Exceptional Innovation has been damaged by Kontron's breaches. These damages include but are not limited to:

- Exceptional Innovation expended significant time and funds attempting to

|   |   |
|---|---|
| 1 | help Kontron cure defects in the Modules; and |
| 2 | • Kontron's failure to timely deliver the Modules contributed to delays in |
| 3 | Exceptional Innovation's production schedule; and |
| 4 | • Kontron's lengthy delays left Exceptional Innovation unable to fill customer |
| 5 | orders; and |
| 6 | • The poor performance of Kontron and its modules has hurt Exceptional |
| 7 | Innovation's reputation; and |
| 8 | • Exceptional Innovation is now left with a product that does not fulfill its |
| 9 | original goal of building its new hardware devices with state-of-the-art |
| 10 | technology possible, and as a result it will be required to re-tool its product |
| 11 | in order to accommodate properly constructed modules that it must purchase |
| 12 | from another manufacturer. |

### FIRST CAUSE OF ACTION
### (DECLARATORY JUDGMENT)

33. Exceptional Innovation realleges and incorporates herein each and every allegation set forth above.

34. Kontron materially breached the Contract by engaging in the conduct as set forth above.

35. By virtue of Kontron's breaches, Exceptional Innovation is excused from further performance under the Contract, including payment of any additional sums.

36. Thus, there is a real and justiciable controversy between the parties as to whether Exceptional Innovation has any further obligation to remit payment to Kontron in light of Kontron's material breaches of the Contract.

37. Under Ohio Rev. Code § 2721.03 and California Code of Civil Procedure § 1060, Exceptional Innovation is entitled to a declaration construing the parties' rights and obligations under the Contract.

38. Speedy relief is necessary to preserve Exceptional Innovation's rights that may otherwise be impaired or lost.

39. Exceptional Innovation is entitled to a declaration that (1) Kontron materially breached the Contract and (2) Exceptional Innovation is excused from further performance under the Contract as a result of said breach and thus has no liability to Kontron.

## SECOND CAUSE OF ACTION
## (BREACH OF CONTRACT – LATE DELIVERY/NONCONFORMING GOODS)

40. Exceptional Innovation realleges and incorporates herein each and every allegation set forth above.

41. Exceptional Innovation has fully performed its obligations under the Contract, except to the extent they were excused.

42. Kontron materially breached the Contract by engaging in the conduct as set forth above.

43. Exceptional Innovation promptly notified Kontron that its performance was unacceptable.

44. As a direct and proximate result of Kontron's breach of the Contract, Exceptional Innovation has suffered damages in an amount to be proven at the time of trial.

## THIRD CAUSE OF ACTION
## (BREACH OF CONTRACT – EXPRESS WARRANTY)

45. Exceptional Innovation realleges and incorporates herein each and every allegation set forth above.

46. Exceptional Innovation has fully performed its obligations under the Contract, except to the extent they were excused.

47. Kontron included an express warranty provision in the Terms and Conditions that it contends in the Counter-claim were part of the parties' Contract.

48. Exceptional Innovation disputes that the express warranty provision forms part of the parties' agreement. However, to the extent it does, Kontron breached the provision by shipping Modules that failed due to a variety of technical reasons and which Kontron was unable to fix for almost a year. Exceptional Innovation was forced to devote

1 | substantial resources of its own to correcting the problems with Kontron's Modules.

2 |     49.    Exceptional Innovation promptly notified Kontron that its performance was
3 | unacceptable.

4 |     50.    As a direct and proximate result of Kontron's breach of warranty,
5 | Exceptional Innovation has suffered damages in an amount to be proven at the time of
6 | trial.

FOURTH CAUSE OF ACTION

(BREACH OF IMPLIED WARRANTIES)

9 |     51.    Exceptional Innovation realleges and incorporates herein each and every
10 | allegation set forth above.

11 |     52.    Kontron is a merchant of electronics goods, such as the Modules and other
12 | units that Exceptional Innovation purchased. Therefore, the parties' Contract includes the
13 | implied warranty of merchantability (Cal. Comm. Code § 2314(1)).

14 |     53.    At the time the parties reached agreement, Exceptional Innovation intended
15 | to use the Modules for a particular purpose. Kontron knew or had reason to know of this
16 | particular purpose. Exceptional Innovation relied on Kontron's skill and expertise to select
17 | and furnish goods suitable for its particular purpose. Kontron, at the time the parties
18 | reached agreement, knew or had reason to know that Exceptional Innovation was relying
19 | on Kontron's skill and expertise. Therefore, the parties' Contract incorporates the implied
20 | warranty of fitness for a particular purpose (Cal. Comm. Code § 2315).

21 |     54.    Kontron breached the implied warranty of merchantability by failing in a
22 | timely fashion to ship Modules that could pass without objection in the trade under the
23 | contract description and that were fit for the ordinary purposes for which such goods are
24 | used.

25 |     55.    Kontron breached the implied warranty of fitness for a particular purpose by
26 | providing Modules that were not fit for the particular purpose they were intended.

27 |     56.    Exceptional Innovation promptly notified Kontron that its performance was
28 | unacceptable.

57.     As a direct and proximate result of Kontron's breach of warranty, Exceptional Innovation has suffered damages in an amount to be proven at the time of trial.

WHEREFORE, Exceptional Innovation, LLC hereby demands judgment and relief against Defendant Kontron America, Inc., as follows:

A.     For a declaration that Kontron materially breached the Contract, and Exceptional Innovation is excused from any further performance or liability to Kontron under the Contract;

B.     For monetary damages according to proof;

C.     For attorneys' fees and expenses; and

D.     For costs and such other remedy as the Court deems just and proper.

Dated: April 7, 2008

RUTAN & TUCKER, LLP
JEFFREY WERTHEIMER
SUMMER YOUNG AGRIESTI

By: _____/s/_____
Summer Young Agriesti
Attorneys for Plaintiff and Counter-Defendant EXCEPTIONAL INNOVATION, LLC

## JURY DEMAND

Plaintiff Exceptional Innovation, LLC hereby demands a jury trial as to all issues so triable.

Dated: April 7, 2008

RUTAN & TUCKER, LLP
JEFFREY WERTHEIMER
SUMMER YOUNG AGRIESTI

By: _____/s/_____
Summer Young Agriesti
Attorneys for Plaintiff and Counter-Defendant EXCEPTIONAL INNOVATION, LLC

# PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is Rutan & Tucker, LLP, 611 Anton Boulevard, Fourteenth Floor, Costa Mesa, California 92626-1931.

On April 7, 2008, I served the following described as:

## FIRST AMENDED COMPLAINT OF PLAINTIFF EXCEPTIONAL INNOVATION, LLC

on all parties identified for Notice Of Electronic Filing generated by the Court's CM/ECF system in this case on this date in the following manner:

| | |
|---|---|
| Elizabeth A. Mitchell, Esq. | Vladimir P. Belo, Esq. |
| Solomon Ward Seidenwurm & Smith, LLP | Bricker & Eckler LLP |
| Wells Fargo Plaza | 100 South Third Street |
| 401 B Street | Columbus, Ohio 43215-4291 |
| Suite 1200 | Tel: (614) 227-8885 |
| San Diego, California 92101 | Fax: (614) 227-2390 |
| Tel: (619) 238-4828 | *Co-Counsel for Plaintiff and Counter-Defendant* |
| Fax: (619) 615-7928 | *EXCEPTIONAL INNOVATION, LLC* |
| *Attorneys for Defendant and Counter Claimant* | |
| *KONTRON AMERICA, INC.* | |

[✓]   **(BY ELECTRONIC SERVICE)** by causing the document to be served via the Court's ECF Filing System.

[✓]   **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

EXECUTED on April 7, 2008, at Costa Mesa, California.

Michelle Perciavalle
(Type or print name)                           (Signature)

332/026480-0001
897106.01 a04/02/08